October 24, 2019

**VIA ECF**

The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 240
New York, NY 10007

      Re: *Relevent Sports, LLC v. United States Soccer Federation, Inc.*, No. 19-cv-08359 (VEC)

Dear Judge Caproni:

      Pursuant to the Court's Order (ECF No. 10), the parties submit this letter in advance of the Initial Pretrial Conference scheduled for November 1, 2019 at 10:00 a.m.

**Plaintiff's Description of the Case.** Plaintiff Relevent Sports, LLC ("Relevent"), a promoter of soccer events around the world, seeks (1) to enjoin Defendant United States Soccer Federation, Inc. ("USSF") from continuing to participate in an anticompetitive agreement with Fédération Internationale de Football Association ("FIFA") and others under the FIFA umbrella; and (2) treble damages resulting from USSF's participation in this illegal conspiracy. Specifically, USSF has entered into an illegal agreement with FIFA and others not to sanction any official season soccer matches between international soccer clubs ("Official Season International Soccer Game Events") in the U.S and to otherwise restrict the output of international soccer games in the U.S.[1] USSF has admitted to this illegal agreement to restrict output, including *after* Relevent filed this action.[2]

      As the self-declared international governing body for soccer, FIFA has granted USSF the "exclusive authority to sanction international matches played in the United States."[3] As part of its acceptance and enforcement of FIFA's authority in the U.S., USSF has agreed to comply with FIFA's rules, policies, and directives. One such rule is that all international soccer matches, including Official Season International Soccer Game Events, must be "sanctioned" by USSF.

      As USSF recently told a New York state court, "[i]n October [2018], FIFA's decision-making body, the FIFA Council, issued a ruling that official league matches between professional soccer teams should only take place within their home country. USSF is bound to adhere to that decision . . . ."[4] In accordance with FIFA's policy, USSF has refused to sanction the Official Season International Soccer Game Events that Relevent has sought to promote and host in the U.S. USSF has done so, at least in part, to benefit its economic partner Soccer United Marketing, LLC

---

[1] Unlike "friendly" (or exhibition) matches, the results of which have no meaningful impact on the participants, Official Season International Soccer Game Events would count towards the competing clubs' official league or tournament records.

[2] Ronald Blum, *Promoter files 2nd lawsuit vs US Soccer over sanctioning*, AP.COM (Sept. 9, 2019), https://www.apnews.com/495c681030fb485089549eaf3e63f4e5.

[3] Mem. of Law in Supp. of Resp.'s Cross-Mot. to Compel Arbitration and Dismiss at 4, *Relevent Sports, LLC v. USSF et al.*, No. 154104/2019 (N.Y. Sup. Ct. May 17, 2019) (Dkt. No. 48).

[4] *Id.* at 1.

("SUM"). Because high quality international professional soccer leagues, clubs, and players face the risk of FIFA-imposed penalties resulting from participating in an unsanctioned event, Relevent has effectively been blocked from promoting and hosting Official Season International Soccer Game Events on U.S. soil, and output has been nakedly restrained in the U.S. without any offsetting procompetitive effect. USSF has also conspired with FIFA to restrict the output of other international soccer game events in the U.S. in order to benefit SUM. Through these illegal conspiracies, USSF has tortiously interfered, and continues to tortiously interfere, with Relevent's business relations in violation of state law.

USSF's participation in this conspiracy to punish leagues, clubs, and players that participate in unsanctioned events, and to otherwise limit the output of international soccer matches in the U.S., are—collectively and individually—*per se* illegal group boycotts and naked restrictions of output in violation of Section 1 of the Sherman Act. USSF's claim that it is following FIFA's directive provides no defense to the *per se* rule; it is well-settled that "[i]t is the *type* of restraint [a defendant] agreed to impose that determines whether the *per se* rule . . . is appropriate," not "a particular defendant's role in the scheme." *United States v. Apple, Inc.*, 791 F.3d 290, 322 (2d Cir. 2015) (emphasis added). And a horizontal agreement to reduce output, such as the one engaged in here, is *per se* unreasonable under the law. *Id.* at 322-23 ("[e]limination, by joint collaborative action, of discounters from access to the market is a per se violation of the Act") (collecting Supreme Court cases); Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and their Application, (4th ed. 2019) ¶¶1906d, 1910a (a "naked" output restriction "formed with the objectively intended purpose or likely effect of . . . decreasing marketwide output in the short run, with output measured by quantity or quality" is *per se* unlawful). Tellingly, USSF does not even try to offer any procompetitive justification for its actions. And FIFA, a private body, has neither antitrust immunity nor the power to grant any such immunity to USSF.

Moreover, USSF's wild claim that it might risk expulsion from FIFA if it were to sanction Relevent's Official Season International Soccer Game Events is bluster. USSF's Bylaws provide that it is only obligated to comply with FIFA rules "to the extent permitted by governing law."[5] Accordingly, if this Court finds this FIFA policy violates the antitrust laws, USSF is under no requirement to follow it. And FIFA has never objected to this USSF Bylaw, as it recognizes that it cannot require its members to violate the law. In fact, USSF has previously declined to comply with a FIFA policy that it determined would be a violation of U.S. antitrust law, without any consequence from FIFA. *Fraser v. Major League Soccer, L.L.C.*, 7 F. Supp. 2d 73, 75 & n.1 (D. Mass. 1998) (class of players withdrew antitrust claim against USSF after it "entered into a stipulation [to] never [] pay nor request a transfer fee payment for an out-of-contract player" despite FIFA rule entitling clubs to transfer fee). In the extraordinarily unlikely event that FIFA tries to punish USSF for complying with an order of this Court, Relevent—presumably with USSF—would file an antitrust lawsuit against FIFA that would bring a halt to any such action. Simply put, USSF's claim that its antitrust violation should be permitted because its co-conspirator might punish it for complying with a court order should not be countenanced.

The injunctive relief sought in this action would require USSF to cease wielding its sanctioning process in violation of the U.S. antitrust laws. Contrary to USSF's assertions, such relief is well within the Court's authority, and "[t]here is no requirement that a plaintiff name . . . all co-conspirators as long as their existence is set forth in the complaint." *Trugman-Nash, Inc. v.*

---

[5] BYLAWS OF THE UNITED STATES SOCCER FEDERATION INC., 1 Bylaw 103 § 1 (2019).

*New Zealand Dairy Bd.*, 942 F. Supp. 905, 917 n.6 (S.D.N.Y. 1996) (quotation marks omitted).

Finally, neither arbitration nor the 2016 settlement agreement between the parties bars Relevent's claims. The antitrust and state tort claims asserted are not subject to arbitration because, among other reasons, as USSF well knows, the purported agreement to arbitrate disputes before FIFA extends only to FIFA's own statutes and regulations—"[FIFA] is not in a position to rule on issues of U.S. law." Award, *Stillitano v. USSF & FIFA*, CAS 2010/A/2241 (July 12, 2011); *ChampionsWorld v. USSF*, 726 F. Supp. 2d 961, 969-70 (N.D. Ill. 2010) ("FIFA does not have, or claim to have, authority to interpret acts of Congress."). Nor do Relevent's antitrust or tortious interference claims fall within the scope of the covenant not to sue contained in the 2016 settlement agreement, as that covenant does not, by its own terms, apply to the claims here which challenge anticompetitive agreements with FIFA and other conspirators to reduce the output of international soccer matches in the U.S. Instead, as USSF explains, the covenant applies to its "jurisdiction over the sanctioning of international matches." *Infra*. More fundamentally, even if the covenant could somehow apply to these antirust claims, it would be void as a matter of public policy, as courts will not enforce agreements to waive claims against future antitrust violations by a private party like USSF. *See, e.g., In re Am. Express Merchants' Litig.*, 667 F.3d 204, 214 (2d. Cir. 2012).

**Defendant's Description of the Case.**[6] This dispute arises out of Relevent's dissatisfaction with a FIFA directive prohibiting official league soccer matches from taking place outside of the league's home territory. U.S. Soccer is implicated only because Relevent sought to organize an unprecedented official league match between two foreign soccer teams on U.S. soil. As Relevent's complaint admits, beyond U.S. Soccer, Relevent also needed the approval of the foreign federation and two confederations for such a match to be played. Given U.S. Soccer's obligations as a FIFA national association member, it had no choice but to deny Relevent's application. Relevent urges that this should be considered not only a conspiracy between U.S. Soccer and FIFA, but a *horizontal* conspiracy (i.e., an agreement between competitors) that constitutes a *per se* violation of the antitrust laws. But a national governing body complying with the rules of an international federation regarding where foreign teams can play matches is not an unlawful "agreement," let alone a horizontal agreement under Section 1 of the Sherman Act for which *per se* scrutiny would be appropriate.

U.S. Soccer is a non-profit that governs and promotes the growth and development of soccer in the United States. Since 1914, U.S. Soccer has been recognized by FIFA as the national association responsible for administering and overseeing the sport in this country. It is one of myriad national associations within FIFA's global governing framework: FIFA sits atop as the international federation that governs soccer globally; below it lie six regional confederations that oversee the sport at the continental level; and under each confederation are numerous national associations like U.S. Soccer tasked with administering the sport at the national level. U.S. Soccer also is designated as the National Governing Body ("NGB") for soccer in the U.S. under the Ted Stevens Olympic & Amateur Sports Act, 36 U.S.C. §§ 220501, *et seq.*

As both a FIFA national association and the NGB for soccer in the United States, U.S. Soccer was—and is—legally obliged to follow the FIFA directive at the heart of this dispute.

---

[6] Following the initial exchange of the parties' respective descriptions of the case, Relevent supplemented its description of the case with a significant amount of additional argumentative statements. Rather than respond in substance here, U.S. Soccer will address those matters, to the extent necessary, in the briefing on its forthcoming motion to dismiss.

Compliance is mandated by FIFA's statutes, regulations, and directives, and also the Olympic & Amateur Sports Act, which requires U.S. Soccer be a member of FIFA and comply with its rules. *See* 36 U.S.C. § 220522(a)(6). U.S. Soccer's failure to abide by these obligations would endanger its status as a FIFA national association, risking suspension or even expulsion from FIFA, which would in turn violate the legal mandate under the Olympic & Amateur Sports Act that U.S. Soccer remain a member of FIFA. *See id.* This would jeopardize the participation by the U.S. national teams in FIFA's world championship tournaments and the Olympics, including the eligibility of the top-ranked U.S. Women's National Soccer Team to play in the 2020 Tokyo Olympics.

This dispute thus really begins and ends with FIFA. Yet for various reasons, Relevent has chosen not to sue FIFA. Instead, Relevent has attempted to shoehorn its challenge to a unilateral FIFA directive into a Section 1 claim against U.S. Soccer, on the theory that U.S. Soccer's obligatory compliance with a FIFA directive amounts to an anticompetitive horizontal "agreement" to "boycott" professional soccer clubs and players that play in international official league matches from FIFA-affiliated competitions. But by attempting to circumvent the impediments to suing FIFA and trying to plead a *per se* conspiracy case, numerous insurmountable problems arise.

The threshold one is that Relevent, which can only organize matches through its FIFA-licensed Match Agent Agreement, has agreed to arbitrate disputes with a FIFA national association like U.S. Soccer before FIFA's arbitral bodies and the Court of Arbitration for Sport. Next is a covenant not to sue found in a 2016 settlement agreement between Relevent and U.S. Soccer, which precludes the claims that Relevent asserts here—those challenging U.S. Soccer's jurisdiction over the sanctioning of international matches. Relevent also cannot escape the fact that U.S. Soccer, in denying it a sanction to stage a foreign official league match, is merely complying with a FIFA decision, one to which U.S. Soccer is legally bound. Under these circumstances, there can be no violation of Section 1.

A further critical shortcoming of Relevent's case is that this Court cannot provide the ultimate relief that Relevent seeks. No order compelling U.S. Soccer to sanction a foreign official league match can change the FIFA directive underlying Relevent's alleged injury, which FIFA implemented unilaterally to protect the development of the sport by its national associations in their respective nations. Regardless of whether U.S. Soccer sanctions the unprecedented matches that Relevent seeks to promote, Relevent still must obtain approval from the respective teams' league, the affected federations and confederations (which include at least four additional entities not party to this case), and most prominently, FIFA itself. Relevent's case, in form and substance, is misdirected at U.S. Soccer. And at bottom, it is without merit.

**Contemplated Motions**

Relevent: Following resolution of USSF's motion to dismiss, Relevent intends to file an early motion for summary judgment on *per se* antitrust liability and injunctive relief based on USSF's admission that it has agreed with FIFA and others to prohibit Official Season International Soccer Game Events in the U.S. This case presents the rare circumstance where such a pre-discovery motion is appropriate, as it would provide an early resolution of one of Relevent's core claims, which is based on undisputed facts and the application of the *per se* rule. This resolution would significantly narrow the scope of discovery to Relevent's remaining claims and damages.

The issue of purported Ted Stevens Act immunity on which USSF contemplates basing its

4

early summary judgment motion is purely a legal question of statutory interpretation and thus does not provide a basis for the requested phased discovery. What's more, such immunity has been rejected as a matter of law in cases involving professional soccer, as the Ted Stevens Act only applies to amateur competitions and the Olympics—not professional sports games. *ChampionsWorld LLC v. U.S. Soccer Federation,* 726 F. Supp. 2d 961, 975 (N.D. Ill. 2010).

U.S. Soccer: U.S. Soccer's forthcoming motion to dismiss will seek dismissal in favor of arbitration, as Relevent has agreed to arbitrate any disputes with U.S. Soccer before FIFA's arbitral bodies. U.S. Soccer will also move to dismiss on the following bases: (i) Relevent's claims are barred by a covenant not to sue in a 2016 settlement agreement between U.S. Soccer and Relevent; (ii) Relevent's failure to join FIFA as a necessary and indispensable party under Federal Rule of Civil Procedure 19; (iii) Relevent's failure to plead injury-in-fact and antitrust injury; and (iv) Relevent's failure and inability to plead a cognizable claim under Section 1 of the Sherman Act.

In the event U.S. Soccer's motion to dismiss does not fully dispose of this matter, U.S. Soccer intends to seek leave to file an early motion for summary judgment on at least the following narrow yet dispositive ground: that the Olympic & Amateur Sports Act immunizes U.S. Soccer's alleged conduct from antitrust scrutiny. Limited discovery is required for this motion to establish that Congress intended and conferred upon U.S. Soccer, as the relevant NGB, the authority to govern both professional and amateur soccer in the U.S. Relevent's suggestion that discovery is unnecessary to resolve this issue is incorrect, as the complete legislative history of the Olympic & Amateur Sports Act was not before the court in the *ChampionsWorld* case. It is for this reason that U.S. Soccer will seek to have this issue addressed on a motion for summary judgment rather than on the pleadings.

### Basis for Subject Matter Jurisdiction

Relevent: This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 because the claims arise under laws of the U.S. which regulate commerce and protect commerce against illegal restraints and monopolies: Section 4 of the Clayton Act (15 U.S.C. § 15), Section 16 of the Clayton Act (15 U.S.C. § 26), and Section 1 of the Sherman Act (15 U.S.C. § 1) and supplemental jurisdiction over Relevent's state-law tort claims pursuant to 28 U.S.C. § 1367.

U.S. Soccer: This Court lacks subject matter jurisdiction over Relevent's claims as they are subject to arbitration. *Harris v. TD Ameritrade Inc.,* 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018).

### Prospects for Settlement

Relevent: Relevent is willing to consider settlement if USSF is open to a resolution that permits fair and open competition in the relevant market. Relevent only seeks relief from USSF and does not require any relief from FIFA or others. USSF is capable of agreeing to comply with U.S. antitrust laws, notwithstanding any FIFA policy, just as it did in *Fraser (supra).*

U.S. Soccer: Given that U.S. Soccer alone is incapable of affording Relevent adequate and complete relief, U.S. Soccer does not currently envision any prospect of settlement. Were U.S. Soccer enjoined from denying Relevent the sanction that it seeks, Relevent would *still* be precluded from promoting international official league matches as (i) FIFA will not approve of such matches; (ii) the teams' league, federations, and confederations may also refuse approval given FIFA's directive; and (iii) absent FIFA's approval, Relevent would be incapable of securing professional teams to play official league matches on foreign soil.

*[signature]*

Jeffrey L. Kessler
Jonathan J. Amoona
Angela A. Smedley
Adam I. Dale
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
jamoona@winston.com
asmedley@winston.com
aidale@winston.com

*Counsel for Relevent Sports, LLC*

Respectfully submitted,

*[signature]*

Lawrence E. Buterman
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
lawrence.buterman@lw.com

Russell F. Sauer, Jr.
LATHAM & WATKINS LLP
355 South Grand Avenue
Suite 100
Los Angeles, CA 90071
Tel: (213) 485-1234
Fax: (213 891-9763
russell.sauer@lw.com

Christopher S. Yates
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600
Fax: (415) 395-8095
chris.yates@lw.com

*Attorneys for Defendant United States Soccer Federation, Inc.*