UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RELEVENT SPORTS, LLC,

                              Plaintiff,

   -against-

UNITED STATES SOCCER FEDERATION, INC.,

                             Defendant.

No. 19-cv-08359 (VEC) (BCM)

---

**DEFENDANT UNITED STATES SOCCER FEDERATION, INC.'S
SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO COMPEL
ARBITRATION OR IN THE ALTERNATIVE TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| III. | THIS COURT LACKS PERSONAL JURISDICTION OVER FIFA | 2 |
| | A. FIFA Has Not Purposefully Directed Suit-Related Conduct At The U.S. | 3 |
| | B. Relevent's Implausible Theory about a "Conspiracy" Involving U.S. Soccer, FIFA, and Others Is Insufficient to Confer Personal Jurisdiction over FIFA | 7 |
| IV. | FIFA IS INDISPENSABLE TO THIS ACTION | 7 |
| | A. This Court Cannot Grant Adequate Relief to Relevent Absent FIFA | 8 |
| | B. Rule 19(b)'s Remaining Factors Confirm that FIFA Is Indispensable | 9 |
| V. | CONCLUSION | 10 |

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*BRB International S.A. v. Weinstein Co. LLC*,
  No. 17-cv-2065, 2018 WL 1111060 (S.D.N.Y. Feb. 27, 2018) .................................................. 10

*Broker Genius, Inc. v. Seat Scouts LLC*,
  No. 17-cv-8627 (SHS), 2019 WL 4054003 (S.D.N.Y. Aug. 27, 2019) ...................................... 8

*Charles Schwab Corp. v. Bank of America Corp.*,
  883 F.3d 68 (2d Cir. 2018) .................................................................................................... 5, 6

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................................................................... 3

*Errico v. Stryker Corp.*,
  281 F.R.D. 182 (S.D.N.Y. 2012) ............................................................................................. 10

*Freedom, N.Y., Inc. v. United States*,
  No. 86 Civ. 1363, 1986 WL 6163 (S.D.N.Y. May 27, 1986) ...................................................... 9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ................................................................................................................... 3

*Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*,
  No. 11 CIV. 420 RJH, 2012 WL 204102 (S.D.N.Y. Jan. 24, 2012) .......................................... 6

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
  No. 11 MDL 2262 NRB, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015).................................... 7

*In re Platinum & Palladium Antitrust Litigation*,
  No. 1:14-cv-9391-GHW, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ................................. 3

*Kraebel v. New York City Department of Housing Preservation & Development*,
  No. 90 CIV. 4391 (CSH), 1994 WL 132239 (S.D.N.Y. Apr. 14, 1994) ............................... 9, 10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013) .................................................................................................. 4, 5

*Mazzio v. Kane*,
  No. 14-CV-616 ARR MDG, 2014 WL 2866040 (E.D.N.Y. June 24, 2014) ............................ 9

*Mehr v. Fédération Internationale de Football Association*,
  115 F. Supp. 3d 1035 (N.D. Cal. 2015).................................................................................. 3, 5

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) .................................................................................................. 6

*Meyer v. Kalanick*,
  291 F. Supp. 3d 526 (S.D.N.Y. 2018) ............................................................................ 1, 10

*Meyer v. Kalanick*,
  No. 15 Civ. 9796, 2016 WL 3509496 (S.D.N.Y. June 19, 2016) ....................................... 9, 10

*Paycom Billing Services, Inc. v. Mastercard International, Inc.*,
  467 F.3d 283 (2d Cir. 2006) .................................................................................................. 7

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008) .............................................................................................................. 8

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*,
  277 F. Supp. 3d 521 (S.D.N.Y. 2017) .................................................................................... 3

*Stauffacher v. Bennett*,
  969 F.2d 455 (7th Cir. 1992) ................................................................................................. 7

*U.S. Bank National Association v. Bank of America N.A.*,
  916 F.3d 143 (2d Cir. 2019) .......................................................................................... 3, 4, 6

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................................ 1, 4, 5, 6

*Waldman v. Palestine Liberation Organization*,
  835 F.3d 317 (2d Cir. 2016) .................................................................................................. 5

**RULES**

Fed. R. Civ. P. 19(b)(2) ............................................................................................................ 10

Fed. R. Civ. P. 19(b)(4) ............................................................................................................ 10

I. **INTRODUCTION**

Relevent challenges a FIFA rule that requires all leagues affiliated with FIFA to play their league matches in their home countries. FIFA's rule has been in existence for decades, long before Relevent was incorporated, and it applies globally to all 211 FIFA national federations around the world. While Relevent's claimed injury is its inability to stage official foreign league matches in the United States, that is at best a U.S.-based effect of an application of FIFA's global rule. Relevent does not (and cannot) allege that its injury flows in any way from conduct that FIFA purposefully directed *at* the United States. That is dispositive on the question of whether personal jurisdiction exists over FIFA, as the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), and its Second Circuit progeny require that a nonresident purposefully direct its conduct *at the forum* and that those forum contacts give rise to the plaintiff's alleged injury.

The fact that the soccer matches Relevent seeks to promote would be played in the U.S. (as opposed to China, Germany, or any other country where the rule applies) does not transform FIFA's global rule into conduct that FIFA purposefully directed at the United States. Conferring jurisdiction on this basis would allow Relevent's decisions over where to stage soccer matches to dictate where FIFA could be sued. That would directly contravene the Supreme Court's admonition that specific personal jurisdiction must "arise out of contacts the defendant *himself* creates with the forum"—not a plaintiff's contacts with the forum. *Walden*, 571 U.S. at 284–85 (emphasis in original). Relevent has not and cannot allege the minimum contacts for this Court to exercise personal jurisdiction over FIFA.[1]

---

[1] The lack of personal jurisdiction, of course, is not the only bar to FIFA's joinder in this action. Relevent is obligated to arbitrate all disputes with FIFA. *See* Decl. of L. Buterman, Ex. 1, FIFA Stat. Art. 57(1). Thus, beyond the jurisdictional hurdles, any attempt to join FIFA would be infeasible on this basis. *See* Mot. at 23; *Meyer v. Kalanick*, 291 F. Supp. 3d 526, 535 (S.D.N.Y. 2018). Moreover, the fact that Relevent can seek to resolve its dispute with FIFA in arbitration demonstrates that Relevent has an adequate venue.

Although FIFA cannot be joined, Relevent's complaint establishes that FIFA is an indispensable party. All of the Rule 19(b) factors make this clear, but what is most telling is that a judgment without FIFA would not provide complete relief. As Relevent alleges, so long as FIFA's rule remains, it will not be able to obtain the requisite approvals from other federations and Confederations. Compl. ¶¶ 59–60. A recent decision by the Madrid Commercial Court dismissing a case brought by Relevent's partner, La Liga, seeking to force the Spanish national federation (RFEF) to sanction the very FC Barcelona-Girona FC match that Relevent sought to hold in Miami, demonstrates this. FIFA is central and indispensable to Relevent's case.

## II.   FACTUAL BACKGROUND

To stage an international soccer match, promoters like Relevent must act through a FIFA Match Agent (here, Relevent's Executive Chairman, Mr. Stillitano) to obtain approval from: (i) each team's national association(s); (ii) the corresponding regional confederation(s); (iii) the host country's national association; and (iv) the host country's regional confederation. Ex. 2, FIFA Regs. Governing Int'l Matches ("RGIM"), Art. 8. FIFA's approval also is required; it can reject applications not compliant with its regulations. *Id*. Art. 6(4); Ex. 1, FIFA Stat. Arts. 71(4), 73. U.S. Soccer's approval is just one of many required to stage an international match in the U.S.

The FIFA rule at issue—Article 73 of the FIFA Statutes—is decades old and provides that leagues affiliated with FIFA must play official matches in the league's home territory absent "exceptional circumstances" like a natural disaster. *See* Ex. 1, FIFA Stat. Art. 73. Relevent admits that the national associations whose approvals are required must follow this rule or otherwise face "discipline," "suspension or expulsion from FIFA." Compl. ¶¶ 32, 60, 77, 88.

## III.   THIS COURT LACKS PERSONAL JURISDICTION OVER FIFA

FIFA cannot be joined because this Court lacks personal jurisdiction. While adequate

2

minimum contacts between a nonresident and a forum sufficient to confer personal jurisdiction may rest on general or specific jurisdiction, FIFA "is undisputed[ly] … a Swiss association" with "its principal place of business … in Zurich, Switzerland." *Mehr v. FIFA*, 115 F. Supp. 3d 1035, 1048 (N.D. Cal. 2015). Accordingly, there is no case for general personal jurisdiction over FIFA, as it lacks the requisite "constant and pervasive" affiliations "to render [it] essentially at home" in the U.S. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).[2]

Specific jurisdiction, the other basis for personal jurisdiction, rests on "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Relevent must show that: (1) FIFA "purposefully directed its conduct into the forum State"—here, the U.S.; (2) its claims "arise out of or relate to … [FIFA's] forum conduct"; and (3) jurisdiction over FIFA would be reasonable. *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (citations omitted). There is no basis for specific jurisdiction over FIFA.

### A. FIFA Has Not Purposefully Directed Suit-Related Conduct At The U.S.

Relevent's attempt to establish specific jurisdiction over FIFA fails at the first step of the test. Relevent's case is a challenge to a long-standing FIFA rule that applies globally. Relevent cannot allege any conduct by FIFA that was purposefully directed at the United States.

Purposeful direction requires Relevent to show that FIFA "'took intentional, and allegedly tortious actions expressly aimed at the [U.S.].'" *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 589 (S.D.N.Y. 2017) (citations omitted). Referred to as the "effects

---

[2] Relevent must also establish that personal jurisdiction is proper over FIFA under the forum's state law—here, New York. But the Court need not analyze whether jurisdiction would be proper under New York's long-arm statute. Where personal jurisdiction over a nonresident defendant violates Due Process, as it would here, New York law's more stringent requirements prohibit it as well. *See In re Platinum & Palladium Antitrust Litig.*, No. 1:14-cv-9391-GHW, 2017 WL 1169626, at *44 (S.D.N.Y. Mar. 28, 2017).

test," the purposeful direction concept looks to whether conduct by a nonresident defendant exhibits "in-forum effects harmful to the plaintiff." *Id.* (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013)).  If there are such "in-forum effects," then "personal jurisdiction *may* be constitutionally permissible if the defendant *expressly aimed* its conduct at the forum." *Id.* (emphasis added).  It is insufficient, however, "to show simply that a defendant's actions caused an 'effect' in the forum state where the defendant has *not* 'expressly aimed its conduct at the forum.'" *U.S. Bank Nat'l Ass'n*, 916 F.3d at 151 (citations omitted).

In *Walden v. Fiore*, the Supreme Court held that the proper inquiry into whether a nonresident defendant purposefully directed its conduct at the forum requires focusing on the contacts that the nonresident "*himself* creates with the forum" and not "contacts between the plaintiff (or third parties) and the forum[.]" 571 U.S. at 284.  There, the nonresident defendant, a DEA agent, confiscated cash from a Nevada couple as they passed through the Atlanta airport. *Id*. at 279–81.  The Court held that there was no personal jurisdiction over the DEA agent in Nevada.

Critically, the Court held that the defendant's "knowledge of [the plaintiffs'] 'strong forum connections' ... combined with [the fact] that [the plaintiffs] suffered foreseeable harm in Nevada"—*i.e.*, the inability to access their cash in Nevada—was insufficient to establish that the defendant purposefully directed its conduct at the forum. *Id*. at 289.  By focusing on the defendant's knowledge of the plaintiffs' connections to the forum and the foreseeability of harm there, the court below "impermissibly allow[ed] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.*  "Such reasoning," the Court clarified, "improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis." *Id.*  Following *Walden*, the Second Circuit has consistently rejected attempts to establish specific jurisdiction based on a defendant's mere knowledge of the plaintiff's

4

forum-related contacts and that harm would likely be suffered by plaintiff in the forum. *See, e.g.*, *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335–44 (2d Cir. 2016); *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83–84 (2d Cir. 2018).

Here, Relevent has not alleged and cannot allege any conduct purposefully directed by FIFA at the United States. Notwithstanding Relevent's implausible allegations of a *per se* unlawful "agreement" between U.S. Soccer, FIFA, and unnamed "others," Relevent's real grievance is with U.S. Soccer's unilateral decision to adhere to FIFA's rule requiring official league matches to be played in the league's home country. The underlying rule, found in Article 73 of the current FIFA Statutes, is one that applies equally to all 211 FIFA members worldwide, long predates Relevent, and thus could not be alleged to be "expressly aimed" at the United States. *Cf. Mehr*, 115 F. Supp. 3d at 1051 (allegation that FIFA "requires its members, such as U.S. Soccer, to 'follow FIFA's rules' … is not sufficient to show that FIFA has availed itself of the privilege of conducting activities in California").

The fact that Relevent chose to try to stage soccer matches in the U.S. is inconsequential. That establishes at most U.S.-based *effects* as a result of U.S. Soccer's adherence to FIFA's rule. Such forum effects, however, do not make FIFA's rule, or its application to the facts here, conduct that FIFA purposefully directed at the United States. To conclude otherwise would be to commit the very error the Supreme Court corrected in *Walden*, by making *Relevent's* connections to the U.S. decisive, when it is the nonresident's conduct—here, FIFA—"that must form the necessary connection with the forum State that is the basis for jurisdiction over him." *Walden*, 571 U.S. at 286; *see Licci*, 732 F.3d at 173 (a plaintiff cannot show a defendant's actions caused an "effect" in the forum where the defendant has not "expressly aimed its conduct at the forum").

The FIFA Council's October 26, 2018 guidance, issued in response to requests by the

Spanish federation (RFEF), Concacaf, and U.S. Soccer regarding the application of FIFA's longstanding rule to Relevent's desired matches, fares no better. *See* Compl. ¶ 86. Permitting jurisdiction over FIFA on this basis would be another variant of the error identified in *Walden*, as it would subject FIFA to specific jurisdiction based on where Relevent wants to stage matches, or "chose to be," when it suffered its alleged injury. 571 U.S. at 290. The requisite jurisdictional contacts are those that FIFA must create with "the 'forum State itself,' not simply with persons who reside there." *U.S. Bank Nat'l Ass'n*, 916 F.3d at 150 (quoting *Walden*, 571 U.S. at 285).

Finally, even if Relevent were to allege that FIFA could have known that an application of its longstanding rule would implicate matches in the U.S., that would still be insufficient. Mere knowledge of a plaintiff's forum connections and the foreseeability of harm in the forum cannot satisfy the minimum contacts inquiry. *See Walden*, 571 U.S. at 289. FIFA's longstanding global rule applies equally to all 211 member federations around the globe, and FIFA's mere knowledge that compliance with its rule would cause some effect in the U.S. (and all other countries around the world) would still fail to establish that FIFA purposefully directed its conduct at the United States. *See id.*; *see also Charles Schwab*, 883 F.3d at 87 (allegations that a group of banks "knew that the brunt of th[e] injury" stemming from their alleged manipulation of LIBOR rates "would be felt by plaintiffs like Schwab in California" were insufficient to establish that the banks purposefully directed their conduct at California).[3]

---

[3] While Relevent's inability to allege purposeful direction is itself adequate grounds to deny specific jurisdiction over FIFA, Relevent cannot satisfy the remaining requirements either. Absent conduct purposefully directed at the U.S., Relevent cannot establish that its injury arises out of any forum-related contacts by FIFA. *See U.S. Bank Nat'l Ass'n*, 916 F.3d at 151. And while "the [C]ourt's analysis ends" when FIFA's contacts are deemed insufficient, *Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*, No. 11 CIV. 420 RJH, 2012 WL 204102, at *5 (S.D.N.Y. Jan. 24, 2012), there is no argument that exercising jurisdiction over FIFA would be reasonable under any of the five relevant factors. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). The burden upon FIFA, an entity located in Switzerland, would be substantial and create logistical difficulties for all parties. It would also render this Court the global arbiter of FIFA's rules—rules promulgated by a foreign entity and applied indiscriminately around the world. There is also little doubt that the most efficient and convenient method

B.  **Relevent's Implausible Theory about a "Conspiracy" Involving U.S. Soccer, FIFA, and Others Is Insufficient to Confer Personal Jurisdiction over FIFA**

Relevent previously alluded to a conspiracy theory of personal jurisdiction over FIFA premised upon the Complaint's fatally flawed claim of an "agreement" between FIFA, U.S. Soccer, and "other" unnamed co-conspirators to "comply" with FIFA's rule. Opp'n at 26. That theory is a non-starter. "The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough." *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992).

Relevent's attempt to invoke personal jurisdiction on this basis fails at the threshold because it has not—and cannot—allege any sort of Section 1 conspiracy among U.S. Soccer, FIFA, and the unnamed "others." *See* Mot. at 25–28. Relevent's alleged horizontal "conspiracy"—the mere compliance by a FIFA national association with a directive issued by its international governing body—is not a conspiracy at all. *See id.*; *Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 292 (2d Cir. 2006) (banks' mere enforcement of Mastercard rules do not amount to concerted action or a horizontal "agreement among acquiring banks").

Absent a cognizable conspiracy, allegations of which are thoroughly lacking in Relevent's Complaint, "this theory is simply inapplicable." *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *29 (S.D.N.Y. Oct. 20, 2015) (rejecting conspiracy theory of jurisdiction given plaintiffs' failure to "plausibly allege a conspiracy").

IV.  **FIFA IS INDISPENSABLE TO THIS ACTION**

Though FIFA cannot be joined, it is indispensable to this action. Notwithstanding its

---

for obtaining relief and resolving this controversy is for Relevent to pursue its dispute directly with FIFA, through arbitration, as Relevent agreed to do. *See* Mot. at 25; Reply at 10.

7

conclusory labels of a horizontal "conspiracy" involving an "agreement" between U.S. Soccer and other unnamed FIFA federations to "comply" with FIFA's rule, Relevent's fundamental gripe is with FIFA's rule requiring a league to play its official league matches in its home country. There are, of course, important reasons for this rule, including that it promotes, among other things, the growth of domestic leagues around the world. Under Rule 19's "highly practical" inquiry and the relevant factors under Rule 19(b), there is no question that FIFA is an indispensable party.

### A.     This Court Cannot Grant Adequate Relief to Relevent Absent FIFA

While all four of Rule 19(b)'s factors demonstrate that FIFA is indispensable, the third factor—whether a judgment rendered in FIFA's absence would be adequate—best illustrates why FIFA is indispensable. Absent FIFA, this Court is powerless to affect the FIFA rule that precludes Relevent's matches and, therefore, cannot afford Relevent what it hopes to achieve with this lawsuit—the ability to stage official league soccer matches outside the league's home territory.

None of that would change if this Court were to enter judgment against U.S. Soccer alone. A sanction from U.S. Soccer is only one of *five* approvals necessary for Relevent's desired matches to go forward. *See* Compl. ¶ 87 n. 35; Ex. 2, FIFA RGIM Arts. 8 § 2, 11 § 2, App. B (describing the required approvals). Each of the outstanding approvals serves as a further bar to complete relief for Relevent, especially because, as Relevent alleges, the other necessary FIFA federations and Confederations will not approve matches "in violation of FIFA rules" for fear of "discipline" including "expulsion from FIFA." Compl. ¶¶ 59–60.

Relevent also has already implemented precisely the kind of piecemeal litigation aimed at collectively dismantling FIFA's rule that is inimical to Rule 19's purpose of ensuring that disputes are settled "by wholes" by "avoiding multiple litigation." *Broker Genius, Inc. v. Seat Scouts LLC*, No. 17-cv-8627 (SHS), 2019 WL 4054003, at *8 (S.D.N.Y. Aug. 27, 2019) (quoting *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008)). On March 6, 2020, the Madrid Commercial

Court dismissed La Liga's lawsuit seeking to force approval by the Spanish national soccer federation (RFEF) of some of the same matches at issue here. *See generally* Ex. 3. The order recognizes FIFA's clear direction that "the match cannot be authorized," and holds that RFEF did not abuse its authority when rejecting matches of this nature. *Id*. at 15–16. The practical result of the *La Liga v. RFEF* order is that even if U.S. Soccer is ordered to approve Relevent's matches, *they will still not go forward*, because RFEF is not required to—and will not—approve them.[4] The outcome in that case has therefore rendered any judgment that this Court could enter in FIFA's absence wholly futile. *See* Compl. ¶¶ 87 n.5, 93. The existing piecemeal litigation underscores the centrality of FIFA to this underlying dispute. *See Freedom, N.Y., Inc. v. U.S.*, No. 86 Civ. 1363, 1986 WL 6163, at *3 (S.D.N.Y. May 27, 1986) (a party is indispensable since "this law suit will offer no resolution of the contentions it has raised" in its absence); *Mazzio v. Kane*, No. 14-CV-616 ARR MDG, 2014 WL 2866040, at *7 (E.D.N.Y. June 24, 2014) (party indispensable when its absence would likely result in additional lawsuits).

U.S. Soccer is just one of hundreds of FIFA constituents bound by the FIFA rule central to Relevent's grievance. Relevent cannot obtain adequate relief without FIFA, and that makes FIFA indispensable in this action. *See Kraebel v. New York City Dep't of Hous. Pres. & Dev.*, No. 90 CIV. 4391 (CSH), 1994 WL 132239, at *3 (S.D.N.Y. Apr. 14, 1994); *Freedom*, 1986 WL 6163, at *3; *Meyer v. Kalanick*, No. 15 Civ. 9796, 2016 WL 3509496, at *2 (S.D.N.Y. June 19, 2016).

### B. Rule 19(b)'s Remaining Factors Confirm that FIFA Is Indispensable

The three other Rule 19(b) considerations also weigh in favor of dismissal.

First, a judgment for Relevent in FIFA's absence will prejudice FIFA and U.S. Soccer

---

[4] *See* Ex. 2, FIFA RGIM Art. 11 § 2 (prescribing that the teams' National Associations' approval come *first*, followed by the Confederations, and *then* the host country).

because it would implicate (i) the legality of FIFA's longstanding rule; (ii) FIFA's governing authority over its members; and (iii) U.S. Soccer's corresponding obligations, both as a FIFA member and as the National Governing Body for soccer under the Ted Stevens Act, to comply with the rules of its international federation. *See Errico v. Stryker Corp.*, 281 F.R.D. 182, 187–88 (S.D.N.Y. 2012). This intractable situation for U.S. Soccer is "precisely what Rule 19 seeks to avoid." *BRB Int'l S.A. v. Weinstein Co. LLC*, No. 17-cv-2065, 2018 WL 1111060, at *1 (S.D.N.Y. Feb. 27, 2018). The prejudice to FIFA also makes it indispensable. *See Meyer*, 2016 WL 3509496, at *3 ("Uber [is indispensable as it] has an interest in defending the legality and continued use of [its] pricing algorithm and its contracts with drivers[.]"); *Kraebel*, 1994 WL 132239, at *3 (absent party necessary since its "procedures are challenged by implication in this lawsuit").

Second, this Court cannot mitigate the prejudice to U.S. Soccer or FIFA. *See* Fed. R. Civ. P. 19(b)(2). The Court will have inserted itself into soccer governance globally and subjected U.S. Soccer to obligations that conflict with its Congressionally-mandated requirement to comply with FIFA's rules under the Ted Stevens Act—all because Relevent attempted to litigate a grievance that fundamentally rests with FIFA in a forum where FIFA cannot be joined.

Third, dismissal will not prejudice Relevent because it has an adequate, and far more efficient, remedy to obtain relief: arbitration with FIFA. Fed. R. Civ. P. 19(b)(4); *see also Meyer*, 291 F. Supp. 3d at 536 ("[Plaintiff] has an adequate remedy … if the action were dismissed for nonjoinder: namely arbitration.").

## V. CONCLUSION

FIFA is an indispensable party to this litigation that cannot be joined given Relevent's agreement to arbitrate claims against FIFA and the lack of personal jurisdiction over FIFA. The Court should reject Relevent's attempt to make the U.S. courts the global arbiter of rules of International Federations such as FIFA and dismiss this action with prejudice.

| | |
|---|---|
| June 1, 2020 | Respectfully submitted, |
| | LATHAM & WATKINS LLP |
| | By: */s/ Lawrence E. Buterman* |
| | Lawrence E. Buterman<br>LATHAM & WATKINS LLP<br>885 Third Avenue<br>New York, New York 10022<br>Tel: (212) 906-1200<br>Fax: (212) 751-4864<br>lawrence.buterman@lw.com |
| | Christopher S. Yates (admitted *pro hac vice*)<br>LATHAM & WATKINS LLP<br>505 Montgomery Street<br>Suite 2000<br>San Francisco, CA 94111<br>Tel: (415) 391-0600<br>Fax: (415) 395-8095<br>chris.yates@lw.com |
| | *Attorneys for Defendant United States Soccer Federation, Inc.* |