UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RELEVENT SPORTS, LLC,

                Plaintiff,

        v.

UNITED STATES SOCCER FEDERATION, INC.,

                Defendant.

Case No. 1:19-cv-08359-VEC

**PLAINTIFF RELEVENT SPORTS, LLC'S SUPPLEMENTAL BRIEF
IN ACCORDANCE WITH THE COURT'S ORDER OF MAY 21, 2020**

**TABLE OF CONTENTS**

                                                                                                                                               **Page**

I.     This Court May Exercise Personal Jurisdiction Over FIFA ............................................... 1

        A.     Statutory Bases for this Court's Jurisdiction Over FIFA ........................................ 1

                  (1)     FIFA is Subject to Jurisdiction Under this Circuit's Schwab Conspiracy Theory ...................................................................................................... 1

                  (2)     The Clayton Act's Nationwide Service Provision Also Confers Specific Jurisdiction ............................................................................................... 3

                  (3)     New York's Long-Arm Statute Also Confers Specific Jurisdiction Over FIFA ........................................................................................................ 4

        B.     Exercising Personal Jurisdiction Over FIFA Comports with Due Process ............. 5

II.    FIFA Is Not an Indispensable Party ...................................................................................... 8

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agency Rent a Car Sys. v. Grand Rent a Car Corp.*,
    98 F.3d 25 (2d Cir. 1996) ...................................................................................................5

*Allianz Glob. Inv'rs GmbH v. Bank of Am. Corp.*,
    2020 WL 2085875 (S.D.N.Y. Apr. 30, 2020)............................................................ *passim*

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*,
    2016 U.S. Dist. LEXIS 18330 (S.D.N.Y. Feb. 11, 2016)..........................................................8

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018)................................................................................................1, 2, 7

*Contant v. Bank of Am. Corp.*,
    385 F. Supp. 3d 284 (S.D.N.Y. 2019).......................................................................2, 6, 7, 8

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005)...................................................................................................3

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019)....................................................................................................5

*Dennis v. JPMorgan Chase & Co.*,
    343 F. Supp. 3d 122 (S.D.N.Y. 2018).....................................................................................3

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013)..................................................................................................1, 4

*Eades v. Kennedy, PC Law Offices*,
    799 F.3d 161 (2d Cir. 2015)....................................................................................................8

*Exxon Mobil Corp. v. Schneiderman*,
    316 F. Supp. 3d 679 (S.D.N.Y. 2018).....................................................................................5

*Fed. Ins. Co. v. SafeNet, Inc.*,
    758 F. Supp. 2d 251 (S.D.N.Y. 2010).....................................................................................9

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
    2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) .......................................................................4

*Fraser v. Major League Soccer, LLC*,
    7 F. Supp. 2d 73 (D. Mass 1998) .........................................................................................10

*Freeman v. HSBC Holdings PLC*,
    413 F. Supp. 3d 67 (E.D.N.Y. 2019) .................................................................................4

*Licci v. Lebanese Canadian Bank*,
    732 F.3d 161 (2d Cir. 2013)...............................................................................................6

*MasterCard Int'l v. FIFA*,
    2006 WL 2320408 (S.D.N.Y. Aug. 10, 2006), *vacated on other grounds*, 239
    F. App'x 625 (2d Cir. 2007) ..............................................................................................5

*Meyer v. Kalanick*,
    2016 WL 3509496 (S.D.N.Y. June 20, 2016) .................................................................8, 9

*In re Platinum & Palladium Antitrust Litig.*,
    2020 WL 1503538 (S.D.N.Y. Mar. 29, 2020) .................................................................2, 4

*Related Cos., L.P. v. Ruthling*,
    2017 WL 6507759 (S.D.N.Y. Dec. 18, 2017) ....................................................................4

*RV Skincare Brands LLC v. Digby Invs. Ltd.*,
    394 F. Supp. 3d 376 (S.D.N.Y. 2019).................................................................................5

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*,
    366 F. Supp. 3d 516 (S.D.N.Y. 2018).................................................................................7

*In re SSA Bonds Antitrust Litig.*,
    420 F. Supp. 3d 219 (S.D.N.Y. 2019).................................................................................3

*Sullivan v. Barclays PLC*,
    2017 WL 685570 (S.D.N.Y. Feb. 21, 2017).......................................................................7

*Tae H. Kim v. Ji Sung Yoo*,
    776 F. Appx 16 (2d Cir. 2019).......................................................................................9, 10

*Walden v. Fiore*,
    571 U.S. 277 (2014)............................................................................................................7

**Statutes**

15 U.S.C. § 22..............................................................................................................................3, 5

N.Y. C.P.L.R. § 302(a)(1)................................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 4(k)(1)(C) ...............................................................................................................3

Fed. R. Civ. P. 19 ...........................................................................................................1, 8, 9, 10

FIFA.COM, *Canada, Mexico, and USA selected as hosts of the 2026 FIFA World Cup* (June 13, 2018), https://www.fifa.com/who-we-are/news/canada-mexico-and-usa-selected-as-hosts-of-the-2026-fifa-world-cuptm ............................................................ 6

Jeff Carlisle, *FIFA urged to ban staging of league games in other countries*, ESPN.COM (Feb. 27, 2020), https://www.espn.com/soccer/blog-fifa/story/4061817/fifa-urged-to-ban-staging-of-league-games-in-other-countries ............................................................................................................................ 7

Richard Sandomir, *Fox and Telemundo to Show World Cup Through 2026 as FIFA Extends Contracts*, N.Y. TIMES (Feb. 12. 2015), https://www.nytimes.com/2015/02/13/sports/soccer/fox-and-telemundo-to-show-world-cup-through-2026-as-fifa-extends-contracts.html ................................................ 3

USSF's Cross-Mot. to Compel Arb. & Dismiss, *Relevent Sports, LLC v. USSF*, No. 154104/2019 (N.Y. Sup. Ct. May 17, 2019) .......................................................... 2

Plaintiff Relevent Sports, LLC ("Relevent") hereby submits this supplemental brief pursuant to the Court's May 21, 2020 Order. As set forth below, this Court has personal jurisdiction over FIFA and could order its joinder under Rule 19, but need not do so because FIFA is neither necessary nor indispensable to this action.[1]

## I. This Court May Exercise Personal Jurisdiction Over FIFA

At this stage, Relevent need only make a *prima facie* jurisdictional showing based on its well-pled allegations.[2] *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013). In addition to proper service of process, this jurisdictional showing requires: (1) "a statutory basis for personal jurisdiction that renders such service of process effective"; and (2) that "the exercise of personal jurisdiction . . . comport[s] with constitutional due process principles." *Allianz Glob. Inv'rs GmbH v. Bank of Am. Corp.*, 2020 WL 2085875, at *2 (S.D.N.Y. Apr. 30, 2020). Absent a "full-blown evidentiary hearing," district courts "construe the pleadings [] in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 722 F.3d at 85.

### A. Statutory Bases for this Court's Jurisdiction Over FIFA

As set forth below, this Court may exercise specific jurisdiction over FIFA pursuant to (1) the *Schwab* conspiracy theory of jurisdiction; (2) the Clayton Act's nationwide service of process provision; and/or (3) New York's long-arm statute.

#### (1) FIFA is Subject to Jurisdiction Under this Circuit's *Schwab* Conspiracy Theory

The Second Circuit has held that an entity may be subject to specific jurisdiction in an antitrust case based on its alleged participation in a conspiracy in restraint of trade where, as here, "(1) a [Section 1] conspiracy existed; (2) the [potential] defendant participated in the conspiracy; and (3) a co-

---

[1] Capitalized terms herein have the same meaning as in the Complaint (Dkt. 31) and Relevent's Opposition (Dkt. 35).
[2] While Relevent believes the Complaint allegations are sufficient to establish specific personal jurisdiction over FIFA, in the event the Court does not agree and also finds that FIFA is an indispensable party, leave to amend is requested to plead additional jurisdictional allegations, including the additional allegations set forth in this brief.

conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018) (citation omitted).[3]  This Court has "observe[d] that the *Schwab* standard for conspiracy jurisdiction is extraordinarily broad." *In re Platinum & Palladium Antitrust Litig.*, 2020 WL 1503538, at *24 (S.D.N.Y. Mar. 29, 2020) (jurisdiction can be "based on the actions of a co-conspirator who is entirely unknown to that defendant").

Here, the Court may exercise specific jurisdiction over FIFA based on the actions of its alleged co-conspirator, USSF.  *First*, Relevent has alleged a conspiracy in which USSF, FIFA, and others have colluded to restrict the output of International Soccer Game Events in the U.S. in violation of the Sherman Act.  Compl. ¶¶ 74-107, 124-133.  *Second*, it is indisputable that, as alleged, FIFA participated in the conspiracy—indeed, FIFA has implemented it by, among other things, promulgating and enforcing the anticompetitive FIFA Policy barring Official Season International Soccer Game Events from being played outside of the participating clubs' home territory, and USSF has stated that FIFA was a full participant in enforcing this anticompetitive agreement in the U.S.[4] *E.g.*, Compl. ¶¶ 84, 89.  *Third*, it is alleged that USSF engaged in specific, repeated, and concrete actions within the U.S. as part of the conspiracy with FIFA by blocking promoters, including Relevent—a New York company—from hosting such events.  Compl. ¶¶ 90-107.  USSF's substantial in-forum contacts easily satisfy this test, as FIFA's mere "aware[ness] of [its] co-conspirator[']s in-forum overt acts" is sufficient to establish specific jurisdiction.  *Cf. Contant*, 385 F. Supp. 3d at 292-93, 295; *Allianz*, 2020 WL 2085875, at *6.

---

[3] This theory of jurisdiction does not depend on an agency relationship, requiring "only that [the defendant] participated in the conspiracy . . . ."  *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 292 (S.D.N.Y. 2019) (citing *Schwab*, 883 F.3d at 87).

[4] USSF's Cross-Mot. to Compel Arb. & Dismiss at 10, 24, *Relevent Sports, LLC v. USSF*, No. 154104/2019 (N.Y. Sup. Ct. May 17, 2019) (Dkt. 48) (May 5 Event sanction denied after "[USSF] confirmed with the legal department of FIFA that the position of FIFA has not changed . . . .").

### (2) The Clayton Act's Nationwide Service Provision Also Confers Specific Jurisdiction

Because Relevent alleges violations of the Sherman and Clayton Acts, the Clayton Act's nationwide service of process provision confers specific jurisdiction over FIFA. *See* 15 U.S.C. § 22; Fed. R. Civ. P. 4(k)(1)(C) (service establishes jurisdiction when authorized by federal statute); *Allianz*, 2020 WL 2085875, at *3. This Circuit limits the provision's scope "only to suits where venue is proper—the judicial district where the corporation is an inhabitant, may be found, or transacts business . . . .'" *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 230 (S.D.N.Y. 2019) (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005)).

Venue is proper here because FIFA indisputably "transacts business" in New York, defined as "the practical, everyday [] commercial concept of doing business or carrying on business of any substantial character," *i.e.*, with "some amount of business continuity and certainly more than a few isolated and peripheral contacts with the particular judicial district." *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 198-99 (S.D.N.Y. 2018). Among other things, FIFA registers and oversees authorized Match Agents in New York, including maintaining Charlie Stillitano's Match Agent license, with knowledge that he works for Relevent, a New York company; USSF, as the authorized affiliate of FIFA, collects sanctioning fees for FIFA-sanctioned soccer events in New York; and USSF has acted on behalf of FIFA in authorizing scores of matches in the U.S.—including in New York—since 2013, including six International Soccer Game Events played at Yankee Stadium alone, most recently in July 2019. *See* Compl. ¶¶ 3 & n.2, 33, 79, 97. And, by 2022, FIFA will have generated $1 billion from its longstanding broadcasting agreements with New York-based FOX and NBCUniversal (Telemundo).[5]

---

[5] Richard Sandomir, *Fox and Telemundo to Show World Cup Through 2026 as FIFA Extends Contracts*, N.Y. TIMES (Feb. 12. 2015), https://www.nytimes.com/2015/02/13/sports/soccer/fox-and-telemundo-to-show-world-cup-through-2026-as-fifa-extends-contracts.html.

Venue is also proper because this is the home District of Relevent, which has suffered injury to its business here as a result of the conspiracy participated in by FIFA with knowledge that it would have anticompetitive effects and cause injury in this District.  Compl. ¶¶ 13, 99, 133; *see also, e.g.*, *Related Cos., L.P. v. Ruthling*, 2017 WL 6507759, at *9 (S.D.N.Y. Dec. 18, 2017) (specific jurisdiction based on effects of collusive actions in New York and the U.S.); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2016 WL 1268267, at *4-6 (S.D.N.Y. Mar. 31, 2016) (same).  For all of these reasons, the Clayton Act's service provision permits jurisdiction over FIFA here.  *Dorchester*, 722 F.3d at 85.

**(3)    New York's Long-Arm Statute Also Confers Specific Jurisdiction Over FIFA**

Finally, New York's long-arm statute also provides this Court with jurisdiction over FIFA based on its business activity in the state.  This statute permits courts to "exercise jurisdiction over any non-domiciliary [] who . . . in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1).  As the Eastern District explained in *Freeman v. HSBC Holdings PLC*, "[i]t is well established under this long-arm statute that the activities of a co-conspirator . . . may be imputed to an out-of-state tortfeasor for jurisdictional purposes under an agency rational[e]." 413 F. Supp. 3d 67, 79 (E.D.N.Y. 2019) (finding personal jurisdiction over a foreign defendant).[6]  Accordingly, USSF's actions—as FIFA's co-conspirator—to block New York promoters' efforts to organize Official Season International Soccer Game Events should be imputed to FIFA under this framework.

Here, there is a substantial relationship between FIFA's business activities in New York— including its licensing of Match Agents, the sanctioning of International Soccer Game Events, and

---

[6] As this Court has explained, the New York statute recognizes the agency theory of jurisdiction where, as here, "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control or at the request or on behalf of the out-of-state defendant." *Platinum & Palladium*, 2020 WL 1503538, at *22 n.24; *compare with* Compl. ¶¶ 77-89.

USSF's denials of FIFA sanctions to New-York-based promoters—and Relevent's asserted claims. This is more than sufficient under the New York long-arm statute, as even a limited connection with the forum can confer jurisdiction. *See RV Skincare Brands LLC v. Digby Invs. Ltd.*, 394 F. Supp. 3d 376, 381 (S.D.N.Y. 2019) (Caproni, J.) ("Courts have consistently held that proof of *one* purposeful transaction in New York is sufficient to trigger Section 302(a)(1), as long as there is a substantial relationship between the transaction and the claim asserted.") (emphasis added); *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 697 (S.D.N.Y. 2018) (Caproni, J.) (conferring jurisdiction based on a single meeting in New York where conspiracy was formalized). Indeed, this District previously rejected FIFA's attempt to avoid its jurisdiction. *MasterCard Int'l v. FIFA*, 2006 WL 2320408 (S.D.N.Y. Aug. 10, 2006), *vacated on other grounds*, 239 F. App'x 625, 626 (2d Cir. 2007).

### B. Exercising Personal Jurisdiction Over FIFA Comports with Due Process

Whether specific jurisdiction over a defendant is consistent with due process depends on the relationship between the entity, the forum, and the litigation. *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019). Due process is satisfied where a defendant (1) has "minimum contacts with the [forum] and [exercising jurisdiction] comports with traditional notions of fair play and substantial justice"; and (2) "should [] reasonably foresee[] being haled into court there." *Agency Rent a Car Sys. v. Grand Rent a Car Corp.*, 98 F.3d 25, 32 (2d Cir. 1996) (internal citations and quotations omitted).

Where, as here, venue is proper, the Clayton Act provides that the appropriate forum to consider for purposes of the "minimum contacts" due process analysis is the entire United States. *See* 15 U.S.C. § 22. In conducting the minimum contacts analysis, "the court must decide if the [] entity has purposefully directed [its] activities at the forum and the litigation arises out of or relates to those activities." *Allianz*, 2020 WL 2085875, at *2. As this Court recently explained:

> Minimum contacts supporting specific jurisdiction may exist when a defendant "purposefully avails itself of the privilege of conducting activities within the forum [], thus invoking the benefits and protections of its laws." Specific jurisdiction may be premised on a defendant's

5

actions that are "expressly aimed" at the forum []. Specific jurisdiction may also exist where a defendant's connection to the forum [] arises from participation in a conspiracy connected to the forum [] by a co-conspirator's acts in furtherance of the conspiracy . . . sometimes termed "conspiracy jurisdiction."

*Contant*, 385 F. Supp. 3d at 291-92 (citations omitted). FIFA's national contacts satisfy due process in *all* of these ways.

FIFA "purposefully avail[ed] itself of the privilege of conducting activities" within the U.S. As discussed *supra*, it licenses and continuously monitors all U.S.-based Match Agents, who are required participants in organizing the International Soccer Game Events at issue here. Moreover, as USSF argued, "FIFA's approval is required" for such an Event in the U.S., and FIFA "can reject applications that do not comply with its regulations." USSF Reply Br. at 7. FIFA authorized hundreds of FIFA-sanctioned matches in the U.S. between 2013 and 2019 alone, with USSF acting as its agent, and USSF has collected "levies" in exchange for a FIFA sanction. Compl. ¶¶ 10, 16, 78-83. Further, according to its 2018 Financial Report, between 2016 and 2018, FIFA provided nearly $3 million in funding for soccer development in the U.S. By 2022, FIFA will have generated $1 billion from its U.S. broadcasting agreements (*see* n.5 *supra*) and it plans to host the 2026 World Cup in the U.S.[7]

FIFA is alleged to have "expressly aimed" its anticompetitive actions at the U.S. and is subject to specific jurisdiction on that basis, even *if* the pertinent conduct took place entirely outside the U.S., because that conduct had "in-forum effects harmful to the plaintiff." *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 173 (2d Cir. 2013). There can be no dispute that the anticompetitive conduct by FIFA, USSF, and others at the heart of the alleged conspiracy was expressly aimed at the U.S.: the FIFA Policy underlying Relevent's claims was promulgated by FIFA in direct response to USSF, CONCACAF, and the Spanish Federation's request for a declaration of FIFA's position, which was

---

[7] *Canada, Mexico, and USA selected as hosts of the 2026 FIFA World Cup*, FIFA.COM (June 13, 2018), https://www.fifa.com/who-we-are/news/canada-mexico-and-usa-selected-as-hosts-of-the-2026-fifa-world-cuptm.

prompted by Relevent's announcement of its intention to host official La Liga matches in the U.S. Compl. ¶¶ 84-86; *compare Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 565 (S.D.N.Y. 2018) *with Sullivan v. Barclays PLC*, 2017 WL 685570, at *45 (S.D.N.Y. Feb. 21, 2017). Indeed, FIFA President Gianni Infantino stated with respect to the Policy that he "would prefer to a see great MLS game in the U.S. rather than La Liga being in the U.S." Compl. ¶ 85.

It is well established that a defendant can also "purposefully avail itself of a forum by directing its agents or distributors to take action there." *Schwab*, 883 F.3d at 84. Two members of the FIFA Stakeholders Committee, which recently took steps to further the anticompetitive conspiracy by recommending an amendment to the FIFA Statutes to further entrench and more forcefully implement the FIFA Policy, are U.S.-based former USSF President Carlos Cordeiro and New York-based MLS Commissioner Don Garber. According to public reports, the proposed amendment was "in response to efforts by sports promoter Relevent Sports to hold a La Liga Match in the United States" and is scheduled to be considered by the FIFA Council—which includes one New York-based member, former USSF President Sunil Gulati—at a meeting this summer.[8]

Due process is also satisfied by imputing USSF's U.S. contacts to FIFA, its co-conspirator, through the conspiracy theory of jurisdiction. *Contant*, 385 F. Supp. 3d at 293 (citing *Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("conspiracy jurisdiction is best conceived of as an example of the well-established principle that 'a defendant's contacts with the forum [] may be intertwined with his transactions or interactions with . . . other parties'")). FIFA is connected to the U.S. through its participation in the conspiracy with USSF, which has engaged in numerous overt acts in furtherance of the conspiracy within this country and District. *See* Compl. ¶¶ 77-107. For example, when USSF denied Relevent's application to sanction the May 5 Event, USSF stated it had conferred with FIFA in

---

[8] Jeff Carlisle, *FIFA urged to ban staging of league games in other countries*, ESPN.COM (Feb. 27, 2020), https://www.espn.com/soccer/blog-fifa/story/4061817/fifa-urged-to-ban-staging-of-league-games-in-other-countries.

making its decision. *See* n.4 *supra*. Indeed, FIFA's involvement in, and awareness of, its co-conspirator USSF's numerous overt acts in the U.S. and contacts with this state are sufficient for FIFA to reasonably foresee being haled into this Court, and thus support a *prima facie* showing of jurisdiction. *Allianz*, 2020 WL 2085875, at *6 (allegations sufficient to infer that foreign co-conspirator knew of New York-based activity); *Contant*, 385 F. Supp. 3d at 294-95 (same).

Where, as here, "minimum contacts exist, the defendant has to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 169 (2d Cir. 2015). Exercising jurisdiction over FIFA would be reasonable since: (1) the burden on FIFA is minimal, as it is a global organization with significant resources and representatives in the U.S.; (2) New York has a "strong interest" in providing redress for a New York company, such as Relevent; (3) the plaintiff has a strong interest in obtaining relief, as consumer choice and the livelihood of soccer promoters across the U.S. is threatened by the anticompetitive FIFA Policy; (4) this is the only U.S. action over these issues and is the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies embodied in the antitrust laws would be advanced. *See Contant*, 385 F. Supp. 3d at 296.

In sum, personal jurisdiction over FIFA is grounded in statute and comports with due process. Joinder is therefore permitted under Rule 19.

**II.     FIFA Is Not an Indispensable Party**

Although the Court may order FIFA's joinder under Rule 19, USSF has not come close to making the "extraordinary showing" that it is required. *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, 2016 U.S. Dist. LEXIS 18330, at *13 (S.D.N.Y. Feb. 11, 2016) (Caproni, J.). As set forth in Relevent's Opposition (21-26), this Court can grant Relevent complete relief without FIFA; FIFA has not claimed any interest in this action; nonjoinder will not impede FIFA's ability to protect its interests; and there is no risk of inconsistent legal obligations due to FIFA's absence. Moreover, it is black-letter law that

8

"in a suit to enjoin a conspiracy, not all conspirators are necessary parties." *Meyer v. Kalanick*, 2016 WL 3509496, at *3 (S.D.N.Y. June 20, 2016). FIFA is therefore neither a "necessary" nor "indispensable" party and need not be joined. *See id.*; *see also* Opp'n at 20-27.

USSF obfuscates the issue at the heart of Relevent's claims by arguing that the Court cannot provide "complete nor adequate relief" without FIFA because "Relevent cannot count on approvals from the other required 'Confederations [and] National Associations' or participation from the requisite FIFA-affiliated players" "so long as FIFA's rule remains." Reply at 7-8. But Relevent is not asking the Court to direct anyone to participate in International Soccer Game Events; the antitrust relief it seeks is for USSF to be barred from enforcing the anticompetitive FIFA Policy, allowing *the market* to dictate which entities or individuals participate in such Events. *See* Compl. ¶ 149; Opp'n at 21-24.

USSF's contention that FIFA is necessary because it has an interest in this action fails to respond to the controlling authority requiring that FIFA *itself*—not USSF—take some action to claim FIFA's interest in this case. *See* Opp'n at 24. Indeed, USSF's own authority (Reply at 9), when quoted in full, provides: "Although an absentee is not obliged to intervene, *Rule 19 plainly requires the absentee to claim an interest in the litigation*." *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 259 (S.D.N.Y. 2010) (emphasis added; citations omitted). But "such a claim is conspicuously absent here." *Id*. USSF attempts to sidestep the lack of resulting inconsistent obligations by ignoring that its claimed sources of inconsistency are anything but: the Ted Stevens Act *requires* that NGBs like USSF conduct themselves independently from outside influence in the performance of their duties, and USSF's Bylaws expressly permit it to disregard FIFA policies that are inconsistent with U.S. law. *See* Opp'n at 25. The two out-of-circuit cases USSF relies upon (Reply at 9-10) have no bearing on these facts.

However, should the Court determine that FIFA is necessary but joinder is not feasible, it would still be USSF's burden to establish that FIFA is "indispensable" under Rule 19(b) such that

9

considerations of "equity and good conscience" weigh in favor of dismissal rather than proceeding in FIFA's absence. *See Tae H. Kim v. Ji Sung Yoo*, 776 F. Appx 16, 20 (2d Cir. 2019). Rule 19(b) provides the following factors for making this determination: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. The balance of the equities in this case strongly militate against dismissal.

As discussed *supra*, this Court is capable of rendering an adequate and complete judgment in FIFA's absence, and the prejudicial impact of issuing such a judgment is minimal. Indeed, the prejudice USSF projects for itself and FIFA (MTD at 24-25) is illusory—once the Policy is held to be contrary to U.S. law, USSF is automatically freed by its own Bylaws of any obligation to comply with it. Compl. ¶ 76 (quoting USSF Bylaw § 103 (USSF is only "obliged" to comply with FIFA rules "to the extent permitted by governing law")).[9] The same is true for FIFA: its "ability to govern its national associations and the sport" (MTD at 25) will not be impacted any more than it is today, as FIFA has always accepted the fact that USSF's Bylaws exempt it from complying with any FIFA rules that are contrary to U.S. law. However, even if credited, such minor claims of prejudice would be significantly outweighed by the fact that there is no forum other than a U.S. district court that may adjudicate Relevent's federal antitrust claim. USSF's suggested arbitral fora are unavailing, as issues of U.S. federal antitrust law are outside their purview. Opp'n at 9-13. Equitable considerations thus decidedly favor proceeding here even if the Court determines that joinder of FIFA is necessary but not feasible.

---

[9] In fact, as previously noted (Opp'n at 21-22)—and not disputed by USSF—in *Fraser v. Major League Soccer, LLC*, USSF showed that it was able to afford complete U.S. antitrust relief to a plaintiff challenging its participation in an anticompetitive FIFA rule by entering into a stipulation that it would not comply with the challenged rule. 7 F. Supp. 2d 73, 75 n.1 (D. Mass 1998). FIFA was not made a party to that case.

10

| | |
|---|---|
| June 1, 2020 | Respectfully submitted, |
| | By:  *s/Jeffrey L. Kessler* |

                                                    Jeffrey L. Kessler
Jonathan J. Amoona
Angela A. Smedley
Adam I. Dale
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
jamoona@winston.com
asmedley@winston.com
aidale@winston.com

*Counsel for Relevent Sports, LLC*