

March 2, 2020
Page 2

Re: Imminent Risk of U.S. Antitrust Liability

Dear Messrs. Infantino and Montagliani:

This firm represents Relevent Sports, LLC ("Relevent") in *Relevent Sports, LLC v. United States Soccer Federation, Inc.*, an antitrust action pending in the United States District Court for the Southern District of New York in which the Fédération Internationale de Football Association ("FIFA") is an unnamed co-conspirator. It has come to my client's attention that, in defiance of U.S. antitrust law, the FIFA Stakeholders Committee (the "Committee") recently recommended that the members of FIFA amend the FIFA Statutes to further strengthen, and more strongly enforce, their anticompetitive agreement to prohibit official league matches by FIFA-affiliated leagues from being played outside of a league's home territory (the "Recommendation").[1] My client further understands that the FIFA Council will consider the Recommendation at its March 20, 2020 meeting.

I therefore am writing on behalf of Relevent to advise FIFA and its constituent members, including the Confederation of North, Central American and Caribbean Association Football ("CONCACAF"), of the significant and increased antitrust risks they may face in the event the Recommendation is adopted and applied in the United States. These increased U.S. antitrust risks include the possibility of treble damages exposure to injured private litigants like Relevent and enforcement by the U.S. Department of Justice or other U.S. government agencies because the Recommendation is a geographic market division agreement by competing members of FIFA that

---

[1] FIFA issued a press release just last week detailing the Committee's recommendation: "[W]ith regard to matches and competitions with an international dimension, the committee endorsed the principle set out by the FIFA Council that official domestic matches should take place on the territory of the member association concerned. Regulations on this matter will be submitted to the FIFA Council." Press Release, FIFA, Football stakeholders agree further steps in the reform of the transfer system (Feb. 27, 2020), https://www fifa.com/who-we-are/news/football-stakeholders-agree-further-steps-in-the-reform-of-the-transfer-system.



eliminates competitive entry by FIFA-affiliated foreign leagues who wish to conduct official season matches in the U.S.

The Recommendation to increase the enforcement of FIFA's "sporting principle," announced in 2018, "that official league matches must be played within the territory of the respective member association"[2] is, in Relevent's view, a violation of U.S. antitrust law if it is enforced to prevent foreign leagues' official season matches from being played in the U.S. Indeed, this anticompetitive agreement has already been adhered to by one of FIFA's members, the United States Soccer Federation ("USSF"). Specifically, in May 2019, USSF stated it would comply with this FIFA principle when it declined to sanction an official league match between two LigaPro Serie A (Ecuador) teams.[3] Similarly, the Real Federación Española de Fútbol ("RFEF") stated that it was adhering to the FIFA sporting principle in November 2019, when it refused to approve the staging of an official LaLiga (Spain) match in Miami, Florida. That action is the subject of ongoing litigation in Spain.

It is clear the Recommendation is specifically designed to target the U.S. market in order to further increase the enforcement of FIFA's unlawful market division agreement because a number of FIFA–affiliated foreign teams and leagues have recently expressed their competitive desire to offer regular season matches in the U.S.[4] Indeed, just this week, Don Garber, the Commissioner of Major League Soccer, publicly stated that he opposes the idea of foreign leagues' official matches being played in the U.S., a position which he apparently advocated at the recent FIFA Stakeholders meeting.[5]

This is precisely the type of market division agreement among actual or potential competitors that the U.S. antitrust laws declare to be per se unlawful.[6] As the U.S. Federal Trade Commission (FTC) explains on its website:

> Plain agreements among competitors to divide sales territories or assign customers are almost always illegal. The arrangements are essentially agreements not to compete: "I won't sell in your market if you don't sell in mine." The FTC uncovered such an

---

[2] Press Release, FIFA, FIFA Council makes key decisions for the future of football development (Oct. 26, 2018), https://www.fifa.com/who-we-are/news/fifa-council-makes-key-decisions-for-the-future-of-football-development.

[3] USSF did so despite the fact that the match had been approved by LigaPro Serie A, the Ecuadorian Football Federation and Confederación Sudamericana de Fútbol (CONMEBOL).

[4] Just last week Serie A (Italy) CEO Luigi De Siervo expressed his league's desire to host matches in the U.S. Jeff Carlisle, *FIFA urged to ban staging of league games in other countries*, ESPN.COM (Feb. 27, 2020), https://www.espn.com/soccer/blog-fifa/story/4061817/fifa-urged-to-ban-staging-of-league-games-in-other-countries.

[5] Jeff Carlisle, *MLS' Don Garber against staging league games in other countries*, ESPN.COM (Feb. 26, 2020), https://www.espn.com/soccer/major-league-soccer/story/4061460/mls-don-garber-against-staging-league-games-in-other-countries.

[6] *See U.S. v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972) ("One of the classic examples of a per se violation of [U.S. antitrust law] is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition."); *N. Pac. Ry. Co. v. U.S.*, 356 U.S. 1, 5 (1958) ("Among the practices which courts have heretofore deemed to be unlawful in and of themselves are . . . [the] division of markets . . . .") (citation omitted).


agreement when two chemical companies agreed that one would not sell in North America if the other would not sell in Japan.[7]

And the Antitrust Division of the U.S. Department of Justice ("DOJ") has identified such per se unlawful market division agreements as the type of violations that it may investigate. Indeed, the DOJ has stated that "market allocation . . . ha[s] been found to be unambiguously harmful."[8]

My client encourages you to share this letter with your outside U.S. antitrust counsel to ensure that you are properly advised on the requirements of U.S. antitrust law before the FIFA Council exacerbates the serious legal risks for FIFA and those of its members who participate in any agreement to divide up geographic markets—including the U.S. market—among FIFA's affiliated professional leagues and teams.

Respectfully,

Jeffrey L. Kessler

cc: Susie Fiore
Eric M. Meiring
Jonathan J. Amoona

---

[7] Federal Trade Commission, *Market Division or Customer Allocation*, FTC.GOV, https://www.ftc.gov/tips-advice/competition-guidance/guide-antitrust-laws/dealings-competitors/market-division-or.

[8] U.S. DEP'T OF JUSTICE ANTITRUST DIVISION, AN ANTITRUST PRIMER FOR FEDERAL LAW ENFORCEMENT PERSONNEL at 2 (Revised September 2018), https://www.justice.gov/atr/page/file/1091651/download.