**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RELEVENT SPORTS, LLC,

                                        Plaintiff,

         -against-

FÉDÉRATION INTERNATIONALE DE FOOTBALL
ASSOCIATION and UNITED STATES SOCCER
FEDERATION, INC.,

                                        Defendants.

No. 19-cv-08359 (VEC) (BCM)

**ORAL ARGUMENT**
**REQUESTED**

**DEFENDANT UNITED STATES SOCCER FEDERATION, INC.'S REPLY IN**
**SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

<u>Page</u>

I.     INTRODUCTION ..................................................................................................1

II.    ARGUMENT .......................................................................................................1

    A.     Relevent Has Not Alleged An Unlawful Horizontal Agreement............................1

          1.     FIFA's Rules and Policies Are Not "Direct Evidence" Of An Agreement.......................................................................................2

          2.     Relevent Has Not Pleaded Circumstantial Evidence Of An Agreement.......................................................................................4

    B.     Relevent's Reliance On The *Per Se* Theory Underscores Fundamental Flaws.....................................................................................................5

    C.     Relevent Still Has Not Alleged A Vertical Agreement ....................................6

    D.     Relevent Fails To Allege A Cognizable Relevant Market....................................8

          1.     Relevent's Gerrymandered Geographic Market Fails .............................8

          2.     Relevent's Alleged Product Market Is Implausibly Narrow......................8

          3.     Relevent Has Not Pleaded Anticompetitive Effects ..................................9

    E.     Absent FIFA, Dismissal Of All Claims Against U.S. Soccer Is Warranted..........10

    F.     The Covenant Not To Sue To Which Relevent Agreed Bars Its Claim ...............10

III.    CONCLUSION................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ace Arts, LLC v. Sony/ATV Music Publishing, LLC,*
   56 F. Supp. 3d 436 (S.D.N.Y. 2014) ...................................................................... 6

*AD/SAT, Division of Skylight Inc. v. Associated Press,*
   181 F.3d 216 (2d Cir. 1999) ................................................................................ 5

*All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund,*
   596 F. Supp. 2d 630 (E.D.N.Y. 2009) ................................................................ 4

*American Needle, Inc. v. National Football League,*
   560 U.S. 183 (2010) ........................................................................................... 4

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.,*
   909 F. Supp. 162 (S.D.N.Y. 1995) ..................................................................... 9

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.,*
   985 F. Supp. 2d 612 (S.D.N.Y. 2013) ................................................................ 8

*Cenedella v. Metropolitan Museum of Art,*
   348 F. Supp. 3d 346 (S.D.N.Y. 2018) .......................................................... 2, 6

*Chapman v. New York State Division for Youth,*
   546 F.3d 230 (2d Cir. 2008) ................................................................................ 9

*Commercial Data Servers v. International Business Machines, Corp.,*
   166 F. Supp. 2d 891 (S.D.N.Y. 2001) ................................................................ 8

*Concord Associates, L.P. v. Entertainment Properties Trust,*
   817 F.3d 46 (2d Cir. 2016) .................................................................................. 8

*Cung Le v. Zuffa, LLC,*
   216 F. Supp. 3d 1154 (D. Nev. 2016) ................................................................ 9

*Equal Employment Opportunity Commission v. Peabody Western Coal Co.,*
   610 F.3d 1070 (9th Cir. 2010) .......................................................................... 10

*Gatt Communications, Inc. v. PMC Associates, L.L.C.,*
   711 F.3d 68 (2d Cir. 2013) .................................................................................. 5

*Heerwagen v. Clear Channel Communications,*
   435 F.3d 219 (2d Cir. 2006) ................................................................................ 8

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) ........................................................................... 8, 9

*In re NCAA Athletic Grant-in-Aid Cap Antitrust Litigation*,
   958 F.3d 1239 (9th Cir. 2020), *cert. granted*, _ S. Ct. _ (2020) ................................. 6

*International Boxing Club of New York, Inc. v. United States*,
   358 U.S. 242 (1959) ......................................................................................... 9

*LaFlamme v. Société Air France*,
   702 F. Supp. 2d 136 (E.D.N.Y. 2010) ................................................................ 5

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007) ......................................................................................... 5

*Los Angeles Memorial Coliseum Commission v. National Football League*,
   726 F.2d at 1381 (9th Cir. 1984) ...................................................................... 7

*MacDermid Printing Solutions LLC v. Cortron Corp.*,
   833 F.3d 172 (2d Cir. 2016) .............................................................................. 9

*Major League Baseball Properties, Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008) ........................................................................ 6, 10

*Meyer v. Kalanick*,
   174 F. Supp. 3d 817 (S.D.N.Y. 2016) ............................................................... 7

*North American Soccer League v. United States Soccer Federation, Inc.*,
   883 F.3d 32 (2d Cir. 2018) ........................................................................ 2, 3, 6

*United States v. Apple*,
   791 F.3d 290 (2d Cir. 2015) .............................................................................. 7

*United States v. Topco Associates*,
   405 U.S. 596 (1972) ......................................................................................... 4

## I.      INTRODUCTION

Relevent's fifty-page opposition is full of conclusory arguments about a worldwide "market division" conspiracy encompassing FIFA, U.S. Soccer, and hundreds of unnamed FIFA national associations, leagues, and teams.  But Relevent still cannot point to any pleaded *facts* plausibly suggesting that FIFA, U.S. Soccer, and "others" entered into an anticompetitive agreement, or made "a conscious commitment to a common scheme designed to achieve an unlawful objective."   Order at 10 (citations omitted).   Relevent still cannot answer the basic question of who, other than FIFA and U.S. Soccer, participated in this supposedly vast conspiracy, or how various entities within FIFA's vertical structure compete "horizontally."

Understanding these fatal flaws, Relevent resorts to misdirection.   Relevent badly mischaracterizes Second Circuit law to argue the 2018 FIFA directive itself is "direct evidence" of an agreement.  It also claims that press statements relating to a proposed (but unadopted) FIFA rule *in 2020* are somehow "circumstantial evidence" of an agreement *in 2018*.  And, seeking to avoid examination of its market definition, Relevent claims that the *per se* rule applies—even though it is plainly inapplicable since Relevent is challenging the rules of a sports federation.

Beyond conclusory arguments about a global "market division agreement," the only conduct complained of remains U.S. Soccer's compliance with a FIFA policy interpreting a longstanding FIFA rule.  As the Court previously held, that is not sufficient to allege an unlawful agreement.  *See id.* at 13-15.  Relevent's amended complaint should be dismissed, with prejudice.

## II.      ARGUMENT

### A.      Relevent Has Not Alleged An Unlawful Horizontal Agreement

Relevent contends that its allegations "plainly satisfy the 'competitor' element of the alleged horizontal market division agreement."  Opp. at 29.  But there are still no allegations that actually explain how U.S. Soccer, other FIFA national associations, or other FIFA-affiliated

leagues and teams compete horizontally with each other.  The only allegations Relevent points to are tautological; they are conclusory statements that the unnamed leagues and teams "would otherwise compete with each other" absent the "agreement."  *See id.* (citing Am. Compl. ¶ 167). Merely stating that these unnamed entities are "competitors" is not the same as plausibly alleging how they do, in fact, compete.  *See* Order at 16 n. 13.

Relevent next contends that it adequately identified the participants of the conspiracy—not because it actually named any single entity other than FIFA and U.S. Soccer, but because it alleges that "all" FIFA-affiliated Confederations, associations, leagues, and teams participated.  Opp. at 30.  Again, Relevent "makes no attempt to identify [] which, if any, of the six regional confederations, over two hundred national associations, and countless leagues and teams Defendant[s] allegedly conspired."  Order at 16.  This is fatal.  *See Cenedella v. Metro. Museum of Art*, 348 F. Supp. 3d 346, 358-59 (S.D.N.Y. 2018) (dismissing complaint "devoid of facts indicating who agreed with whom, to what, and when").  And it certainly is not enough where the only national associations, leagues, and teams that are identified (the Ecuadorian Federation, La Liga, FC Barcelona, and Girona FC) supported Relevent's attempts to stage official foreign league matches in the U.S.—conduct *inconsistent* with the alleged global "market-division" conspiracy.

### 1.    FIFA's Rules and Policies Are Not "Direct Evidence" Of An Agreement

Because it cannot identify any actual agreement among the "co-conspirators," Relevent relies on FIFA's "pronouncements and written rules" as "direct evidence" of a horizontal agreement.  *See* Opp. at 32.  This is a non-starter.  The existence of FIFA's unilateral directive and the longstanding FIFA Statutes that underlie it are not themselves evidence of an agreement, much less a horizontal one.  In contending otherwise, Relevent badly misstates the Second Circuit's holding in *North American Soccer League v. U.S. Soccer Federation, Inc.*, 883 F.3d 32 (2d Cir. 2018) ("*NASL*"), a case in which Relevent's counsel also brought conspiracy claims against U.S.

Soccer and claimed that a marketing agreement between U.S. Soccer and SUM was probative of an anticompetitive agreement.  There, the Second Circuit could not have been more clear that "organizational decisions do not inherently constitute § 1 concerted action."  *Id.* at 40.  The Court explained that even for membership organizations comprised *entirely* of horizontal competitors (which FIFA obviously is not), a § 1 claim still requires "that association members, in their individual capacities, consciously commit[] themselves to a common scheme."  *Id.*  There must be an "agreement [between the members of the organization] *to agree* to vote a particular way" on a rule or policy.  *Id.* at 39 (emphasis added).  Because the plaintiff had not alleged an antecedent agreement among members of U.S. Soccer's board to vote a certain way, the professional league standards the board enacted "[were] not [themselves] direct evidence of concerted action."  *Id.*

Relevent also wrongly suggests that the Second Circuit in *NASL* "made clear that … rules and policies, to which … members must adhere, can constitute direct evidence of concerted action in violation of the antitrust laws."  Opp. at 33.  The dicta cited by Relevent says no such thing.  The Second Circuit was remarking that it remained unclear whether the plaintiff was challenging certain provisions of U.S. Soccer's standards or the standards as a whole.  For the U.S. Soccer board's promulgation of the standards to constitute direct evidence of an agreement, the plaintiff would, at a minimum, need to challenge the standards "in totality."  *NASL*, 883 F.3d at 41.  Section 1 would still require an antecedent, anticompetitive agreement among U.S. Soccer's board members underlying their promulgation of the standards.  *See id.* at 39-41.  U.S. Soccer's standards were not "direct evidence of a conspiracy" because the plaintiff had failed to allege such an "agreement to agree."  *Id.* at 39-40.  Relevent's effort to distort *NASL* is not surprising because all it points to is U.S. Soccer's unilateral compliance with FIFA's directive (as is legally required of U.S. Soccer by the Ted Stevens Act).  Relevent cannot allege an actionable "agreement to agree."

The abject failure to allege an agreement is also why Relevent's reliance on authorities like *United States v. Topco Associates*, 405 U.S. 596 (1972), *American Needle v. NFL*, 560 U.S. 183 (2010), and the DOJ letter are beside the point.  It was incumbent upon Relevent to plausibly allege some sort of agreement for those authorities to be relevant, but it failed to do so.

2.    Relevent Has Not Pleaded Circumstantial Evidence Of An Agreement

None of Relevent's "plus factors" plausibly suggest the existence of an agreement. Relevent first relies on a statement by MLS Commissioner Don Garber that "'the respective leagues' in the World League Forum" believed that a rule FIFA was scheduled to consider in 2020 (but did not adopt) "was not 'in their best interest.'"  Opp. at 34 (citing Am. Compl. ¶¶ 44, 51).  A 2020 statement, about a proposed rule that FIFA did not adopt, tells the Court nothing about whether there was a preceding agreement underlying a FIFA directive issued *two years earlier*— in 2018.  The statement—made "on behalf" of other unidentified leagues (*id*. at 31)—also says nothing about the FIFA confederations and national associations that were allegedly part of the agreement.

Mr. Garber's and others' participation on the FIFA Stakeholders' Committee also is not circumstantial evidence of an agreement.  *Id*. at 31, 34.  The 2018 FIFA directive challenged by Relevent was issued by the FIFA Council and not the FIFA Stakeholders' Committee, which as Relevent admits has no rule-making authority.  The "frequent communication" between "league and team participants" referenced by Relevent (*id*. at 35), is unsupported by any allegations and otherwise do not bear on whether an underlying "agreement" precipitated the FIFA Council's issuance of the 2018 directive.  *See All Star Carts & Vehicles, Inc. v. BFI Can. Income Fund*, 596 F. Supp. 2d 630, 640 (E.D.N.Y. 2009) (allegations of "Defendants' participation in meetings, conversations and communications" insufficient to survive motion to dismiss).

A seat on the FIFA Council itself would not be enough either, as "participation in a trade

4

association alone does not give rise to a plausible inference of illegal agreement." *LaFlamme v. Société Air Fr.*, 702 F. Supp. 2d 136, 148 (E.D.N.Y. 2010).  There must be facts "tending to show that association members, *in their individual capacities*, consciously committed themselves to a common scheme designed to achieve an unlawful objective." *AD/SAT*, *Div. of Skylight Inc. v. Assoc. Press*, 181 F.3d 216, 234 (2d Cir. 1999) (emphasis added).  Beyond "market division" labels, Relevent can only point to an organizational directive (the FIFA Policy) and adherence by some FIFA members.  This Court already held that is insufficient.  *See* Order at 13.

Relevent's final pieces of "circumstantial evidence" also fail.  The conclusion that "each league and National Association is alleged to have a common motive to join the horizontal market division agreement to protect its own allocated territory from official season games competition" (Opp. at 35) is undermined by Relevent's allegations that at least two "participants"—the Spanish league (La Liga) and the Ecuadorian National Association—had the opposite motive and supported Relevent's efforts to stage their official league matches in the U.S.[1]  *Id.*  Equally implausible is Relevent's dismissal of these facts as examples of conspiracy participants who opted to cheat but were ultimately "force[d] into compliance."  *Id.*  These facts only confirm the implausibility of the claimed "horizontal market division agreement."  *See* Order at 16 n.14.

## B.    Relevent's Reliance On The *Per Se* Theory Underscores Fundamental Flaws

Relevent's attempt to force its Section 1 claim into the narrow realm of *per se* illegality only demonstrates that its claim fails.  The Supreme Court firmly shut the door on *per se* treatment of vertical restraints.  *See, e.g.*, *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 882 (2007).  *Per se* treatment is now reserved for an exceedingly limited subset of horizontal

---

[1] Relevent's arguments about the economic interests of the national associations, leagues, and teams that sought to stage games in the U.S. confirm that it is not an efficient enforcer of the antitrust laws.  Per Relevent's theory, it is those national associations, leagues and teams that would be directly harmed by the FIFA directive.  Any harm to Relevent would be derivative.  *See Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 78-79 (2d Cir. 2013).

agreements "so manifestly anticompetitive that … would almost invariably tend to restrict competition and decrease output." *Cenedella*, 348 F. Supp. 3d at 360.  Relevent still has not plausibly pleaded that the FIFA policy or U.S. Soccer's compliance with it resulted from a *horizontal* agreement.  And merely saying there was a "market division agreement," absent supporting factual allegations, does not change the vertical relationship between FIFA, its national associations, leagues, and teams into a *horizontal* one.  This "precludes [the supposed conspiracy] from fitting into the recognized category of *per se* violations for horizontal restraints on trade." *Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC*, 56 F. Supp. 3d 436, 488 (S.D.N.Y. 2014).

Even if Relevent could allege some horizontal component here (it cannot), antitrust precedent is clear that the rule of reason applies.  That is particularly true in cases addressing rules of sports organizations, like here, where Relevent's challenge is to the rules and decisions of the governing body of a sport.  *See, e.g.*, *NASL*, 883 F.3d at 41 ("Regulation of league sports is a textbook example of when the rule of reason applies.").[2]

### C.      Relevent Still Has Not Alleged A Vertical Agreement

While Relevent uses the "market division" label liberally, it does not seriously dispute that its Amended Complaint still complains of a vertical "agreement" between FIFA and each of its national associations, leagues, and teams "to adhere" to FIFA's rules.  That is evident in the few, non-conclusory instances where Relevent fairly describes the conduct being challenged.  *See, e.g.*, Opp. at 4 ("USSF and its members agree to adhere to all FIFA rules and policies") (citing Am. Compl. ¶ 35 & n.12); *id.* at 5 ("As a condition of their FIFA affiliation, each National Association, including USSF, and its member leagues and teams agree to adhere to the market division policy.") (citing Am. Compl. ¶¶ 4-6, 98); *id.* at 29, 43, 44 (same).  Such "admitted compliance with the

---

[2] *See also In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 958 F.3d 1239, 1247 (9th Cir. 2020), *cert. granted*, _ S. Ct. _ (2020); *MLB Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 334 (2d Cir. 2008).

FIFA directive, without additional factual allegations, is insufficient." Order at 13.

Relevent has not alleged a "plausible claim of an unlawful hybrid vertical agreement." Opp. at 43. *Meyer v. Kalanick*, 174 F. Supp. 3d 817 (S.D.N.Y. 2016) is of no help to Relevent. There, the plaintiff plausibly alleged that Uber drivers agreed with Uber's CEO to charge *specific* prices, "with the clear understanding that *all other Uber* drivers are agreeing to charge the same fares." *Id.* at 824 (emphasis added). The plaintiff also alleged that these vertical price-fixing agreements were "organized and facilitated by" the CEO of Uber, who, as "an occasional Uber driver," was "also a member of the *horizontal* conspiracy." *Id.* (emphasis added).

Initially, the vertical "hybrid" paradigm in *Meyer* cannot be mapped onto Relevent's claim because FIFA—the sole international governing body for the sport—does not compete horizontally with anyone. That is a defining feature of the "hybrid" vertical agreements found in *Meyer* and the other cases Relevant tries to invoke.[3] The critical "vertical agreements" between FIFA and each of its national associations, leagues, and teams, are missing as well. Relevent does not allege anything other than unilateral decisions to adhere to FIFA's rules. And the allegations about La Liga's and the Ecuadorian national association's efforts to stage official league matches in the U.S. defeat the required uniformity of vertical "agreements" among FIFA and others. *See* Order at 16 n.14. Finally, Relevent's conjecture that the FIFA directive was "enforced" by U.S. Soccer "in coordination with threats by FIFA to impose penalties for, and a group boycott of, any team or league that participated in unsanctioned games" (Opp. at 44) cannot obviate the more "obvious rational reasons why [U.S. Soccer] would comply with the FIFA Directive without being

---

[3] In *United States v. Apple*, 791 F.3d 290, 325 (2d Cir. 2015), Apple was the "vertical organizer" of the price-fixing conspiracy amongst horizontal e-book publishers, but also "agreed to participate in the horizontal conspiracy." In *L.A. Memorial Coliseum Commission v. NFL*, the Court found a "horizontal" attribute to the "NFL's structure" as an "organization of 28 competitors." 726 F.2d 1381, 1391 (9th Cir. 1984). No such relationship exists between FIFA and the confederations, national associations, leagues, and teams supposedly part of the "conspiracy" here.

part of an agreement to do so"—such as avoiding "action that could result in all U.S. men's soccer players and teams being deemed ineligible for World Cup play."  Order at 14 n.11.

### D.    Relevent Fails To Allege A Cognizable Relevant Market

Relevent's failure to allege an unlawful agreement means that the Court can dismiss the claim without addressing the alleged market definition.  But Relevent has not alleged a cognizable relevant market either.  The tell-tale is Relevent's suggestion that the Court avoid analyzing the issue altogether because it can be "fact intensive."  *See* Opp. 38-39 & n.14.  That is wrong; courts routinely dismiss complaints (like Relevent's) that fail to allege cognizable relevant markets.[4]

#### 1.    Relevent's Gerrymandered Geographic Market Fails

Rather than defend its "national" market, Relevent just argues (Opp. at 39) that Defendants' identification of more appropriate geographic markets means that market definition is a fact issue. But Relevent has the burden to plead a plausible relevant market.  Its alleged "national" geographic market cannot be reconciled with the fact that (i) men's top-tier official season professional soccer games are inherently local or regional products, or that (ii) the market for broadcasts of such games is global.  Numerous "courts have held that the market for certain entertainment services … is local or regional."  *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 228 (2d Cir. 2006). Others dismiss complaints for "fail[ing] to allege any facts explaining why the relevant geographic market is domestic rather than worldwide."  *Com. Data Servers v. IBM*, 166 F. Supp. 2d 891, 897 (S.D.N.Y. 2001).  Relevent does not attempt to reconcile these flaws.

#### 2.    Relevent's Alleged Product Market Is Implausibly Narrow

Relevent also does little to defend its alleged product market, which is limited to only men's

---

[4] *See, e.g.*, *Concord Assocs., L.P. v. Entm't Props. Trust*, 817 F.3d 46, 53-54 (2d Cir. 2016); *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 621 (S.D.N.Y. 2013); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018).

professional regular season soccer matches.  It is not enough for an antitrust plaintiff to simply

allege that a self-defined product market is "unique" or not "interchangeable" with other products.

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 171 (S.D.N.Y. 1995).

But that is all Relevent does.  *See, e.g.*, Am. Compl. ¶¶ 94-96.  Relevent does not explain why the

supposedly unique traits of men's professional regular season soccer matches—the "high stakes,"

"the best players," and the "strongest lineups" (*id.* ¶ 96)—are not shared by soccer matches

excluded from the product definition, such as National Team games and other prestigious

tournament games like the Champion's League or Relevent's own tournament.  In fact, Relevent

alleges the opposite—boasting that its own exhibition games and tournaments out-drew and out-

earned official regular season matches in the United States.  *See id.* ¶¶ 17-18; Compl. ¶¶ 53-54.[5]

Regardless, Relevent must do more than highlight the differences between potential

substitutes.  *See Hicks*, 897 F.3d at 1121-22.  It must plead particularized facts to suggest that

consumers of men's regular season matches do not view other professional soccer matches or other

sporting events as reasonable substitutes.  *See Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230,

237-39 (2d Cir. 2008).  It failed to do so.  Relevent's alleged product market, which is "contorted

to meet [Relevent's] litigation needs," is implausible.  *Hicks*, 897 F.3d at 1121.

### 3.    Relevent Has Not Pleaded Anticompetitive Effects

Relevent also attempts to sidestep its failure to plead anticompetitive effects by claiming

that it is also a fact issue.  Opp. at 42.  But anticompetitive effects—*i.e.*, an increase in prices,

reduction in quality, or decrease in output—must be plausibly alleged.  *See MacDermid Printing*

*Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 182 (2d Cir. 2016).  There was no decrease in the output

---

[5] *Cf. Cung Le v. Zuffa, LLC*, 216 F. Supp. 3d 1154 (D. Nev. 2016) and *Int'l Boxing Club of N.Y., Inc. v. United States*, 358 U.S. 242 (1959), which found markets for championship fights in MMA fighting and boxing, are both sports where common experience establishes that championship fights draw star fighters and the highest viewership.

of the product here—men's professional *regular season* soccer games, as the two matches at issue went forward, just not in the United States.  And Relevent's inability to profit from them is not harm to competition.  *See Salvino*, 542 F.3d at 308.

### E.    Absent FIFA, Dismissal Of All Claims Against U.S. Soccer Is Warranted

Without FIFA, there would be no reason to maintain Relevent's claims against U.S. Soccer. Relevent's claims are a challenge to *FIFA* rules, with which U.S. Soccer is legally required to comply.  Order at 4.  Relevent obviously wants to maintain a damages claim against U.S. Soccer, but Rule 19 contemplates the potential for such an inequitable result, and requires courts to determine whether "equity and good conscience" require dismissal of a remaining party.  Here, it would be inequitable and "profoundly unfair" to require U.S. Soccer to continue defending Relevent's claims regarding FIFA's rules when U.S. Soccer is powerless to change them.  *See E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1084 (9th Cir. 2010).

### F.    The Covenant Not To Sue To Which Relevent Agreed Bars Its Claim

Relevent does not deny that, in its 2016 settlement agreement with U.S. Soccer, it covenanted to never assert "any Claim" that "challeng[es] U.S. Soccer's jurisdiction over International Games."  Opp. at 49-50; Mot. Ex. 8 (2019 Agreement) Art. 4.  Instead, it argues that by "acknowledg[ing]" that U.S. Soccer is the only U.S. body that can sanction an international game, its claims do not "challeng[e] [U.S. Soccer's] jurisdiction."  Opp. at 49.  But that is *exactly what Relevent is doing*.  Relevent is directly challenging as illegal U.S. Soccer's sanctioning authority over international games on FIFA's "behalf." Am. Compl. ¶¶ 54, 60, 70, 84, 98, 101, 182.  Relevent cannot sidestep the covenant not to sue by simply affixing an antitrust label to its claims.

## III.    CONCLUSION

The Court should dismiss Relevent's Amended Complaint with prejudice.

March 8, 2021                                  Respectfully submitted,


                                               **LATHAM & WATKINS LLP**


                                               By:  */s/ Christopher S. Yates*

                                               Christopher S. Yates (admitted *pro hac vice*)
                                               505 Montgomery Street
                                               Suite 2000
                                               San Francisco, CA 94111
                                               Tel: (415) 391-0600
                                               Fax: (415) 395-8095
                                               chris.yates@lw.com

                                               Lawrence E. Buterman
                                               885 Third Avenue
                                               New York, New York 10022
                                               Tel: (212) 906-1200
                                               Fax: (212) 751-4864
                                               lawrence.buterman@lw.com

                                               *Attorneys for Defendant United States Soccer*
                                               *Federation, Inc.*

11