**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL     (1946-1956)
SIMON H. RIFKIND     (1950-1995)
LOUIS S. WEISS       (1927-1950)
JOHN F. WHARTON      (1927-1977)

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3061

WRITER'S DIRECT FACSIMILE
(212) 492-0061

WRITER'S DIRECT E-MAIL ADDRESS
cboehning@paulweiss.com

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
SCOTT A. BARSHAY
PAUL M. BASTA
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
MARK S. BERGMAN
DAVID M. BERNICK
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
BRIAN BOLIN
ANGELO BONVINO
ROBERT A. BRITTON
DAVID W. BROWN
WALTER BROWN*+
SUSANNA M. BUERGEL
JESSICA S. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
RACHAEL G. COFFEY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
MEREDITH DEARBORN*+
ARIEL J. DECKELBAUM
KAREN L. DUNN
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
ANDREW J. FOLEY
ANDREW J. FORMAN*
VICTORIA S. FORRESTER
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
MELINDA HAAG*
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
MICHELE HIRSHMAN
JARRETT R. HOFFMAN
ROBERT E. HOLO
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
WILLIAM A. ISAACSON*
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
KYLE J. KIMPLER

ALEXIA D. KORBERG
ALAN W. KORNBERG
DANIEL J. KRAMER
CAITH KUSHNER
DAVID K. LAKHDHIR
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
RANDY LUSKEY*+
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. MCCOLM
JEAN M. MCLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
LINDSAY B. PARKS
ANDREW M. PARLEN
DANIELLE C. PENHALL
CHARLES J. PESANT
JESSICA E. PHILLIPS*
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANIE S. RHEE*
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM*
CULLEN L. SINCLAIR
AUDRA J. SOLOWAY
SCOTT M. SONTAG
SARAH STASNY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
BRETTE TANNENBAUM
RICHARD C. TARLOWE
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
KRISHNA VEERARAGHAVAN
JEREMY M. VEIT
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
JOHN WEBER
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
AUSTIN WITT
MARK B. WLAZLO
ADAM WOLLSTEIN
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR
+ADMITTED ONLY TO THE CALIFORNIA BAR

April 7, 2021

**By ECF**

The Honorable Valerie E. Caproni
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

   *Relevent Sports, LLC* v. *Fédération Internationale de Football Association et al.*,
     No. 1:19-cv-8359 (VEC)

Dear Judge Caproni:

   We represent Fédération Internationale de Football Association ("FIFA") in the above-referenced matter and write in response to Plaintiff's supplemental authority letter dated March 29, 2021 (ECF No. 80), concerning *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, No. 19-368 (U.S. Mar. 25, 2021).

   Contrary to Plaintiff's arguments, *Ford Motor* provides no support for its assertion of personal jurisdiction over FIFA in this case. *Ford Motor* involved two separate suits brought in Montana and Minnesota. In the Montana action, the estate of a Montana resident killed while driving her Ford vehicle in Montana sued on various theories, including design defect. In the Minnesota action, a Minnesota resident who suffered serious brain damage while a passenger in a vehicle being driven in Minnesota sued on various theories, including products liability. *Ford Motor*, slip op. at 2–3. In addition to having dealerships in Montana and Minnesota (36 and 84 Ford dealerships, respectively), Ford engaged in a variety of other conduct in Montana and Minnesota— including advertising, selling repair parts, and servicing used Ford vehicles—designed to

encourage the purchase of Ford products, including the purchase of used Ford vehicles. *Id.* at 2–4, 11–12. Ford nonetheless argued that there was an insufficient relationship between its conduct in Montana and Minnesota and the plaintiffs' claims, because the specific cars at issue had been manufactured and initially sold outside those two states. *See id.* at 3. The Supreme Court rejected this argument and concluded that Ford's in-forum conduct—by which Ford had "systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs alleged malfunctioned and injured them"—did indeed "relate[] to" the plaintiffs' claims. *Id.* at 12. In so holding, the Court rejected a "causation-only approach" to specific personal jurisdiction under which the defendant's in-forum conduct would have to be, in every case, the but-for cause of the plaintiff's claims. *See id.* at 8. The Supreme Court cautioned, however: "That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* at 8–9.

Whatever the long-term impact of *Ford Motor* on questions of personal jurisdiction, it certainly is not an invitation to assert jurisdiction over FIFA here. Simply put, Plaintiff's claim plainly does not "relate to" FIFA's alleged contacts with New York. This is aptly demonstrated by the salient facts of *Ford Motor* itself, which could not be further from Plaintiff's bare-bones and speculative jurisdictional allegations.

In *Ford Motor*, the Supreme Court emphasized at length the ways in which Ford had "systematically served" the market in which the very vehicles at issue allegedly malfunctioned, establishing a "strong 'relationship among the defendant, the forum, and the litigation.'" *Id.* at 12 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Specifically, Ford had "advertised, sold, and serviced [the plaintiffs'] two car models in both States for many years," *id.*, through dozens of dealerships in both states, and had in fact sold more than two thousand 1994 Crown Victorias—the "very type of car" involved in the Minnesota lawsuit—in Minnesota. *Id.* at 3–4. Moreover, Ford took steps to encourage repairs and resales of its cars within both states, "fostering an ongoing relationship between Ford and its customers" there. *Id.* at 2. As a result, Ford was subject to personal jurisdiction in Montana and Minnesota because the plaintiffs' claims ***related to*** Ford's contacts with those states.

By contrast, Plaintiff here does not allege ***any*** connection between FIFA and New York sufficient to establish that Plaintiff's claim is ***related to*** FIFA's contacts with New York. Plaintiff alleges that FIFA has had occasional commercial dealings in New York—for example, FIFA allegedly entered into contracts with television broadcasters in New York.[1] But Plaintiff's antitrust claim against FIFA has nothing whatsoever to do with any of these alleged dealings. Tellingly, Plaintiff's letter offers no explanation for how FIFA's supposed "litany of contacts with New York" (ECF No. 80

---

[1] Although Plaintiff's allegations are accepted as true on this motion to dismiss, FIFA's media rights agreements are entered into in Switzerland and subject to Swiss law. That is hardly a surprise, given that Switzerland is FIFA's corporate home.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Valerie E. Caproni 3

at 1) ***relate to*** its claim.  Instead, Plaintiff alleges that guidance emphasizing a longstanding sporting principle applicable ***worldwide***, which was approved at a FIFA Council meeting ***in Rwanda***, supposedly influenced a match between two ***Spanish*** football teams and, ultimately, had an indirect effect on Plaintiff in New York.  *Ford Motor* offers no support for this Rube Goldberg theory of personal jurisdiction.

*Ford Motor* also does not affect governing Second Circuit case law on personal jurisdiction.  As FIFA explained in its opening brief, the Second Circuit does not require a causal connection between the defendant's in-forum conduct and the plaintiff's claims in every case; rather, such a connection is required only when the defendant's contacts with the forum are tenuous.  (*See* ECF No. 69 at 14 (citing *SPV Osus Ltd.* v. *UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018).)  That is entirely consistent with *Ford Motor*: the Second Circuit has not adopted a "causation-only" approach, but one in which causation can bolster "minimum contacts" that are otherwise weak.

But ultimately, the effect—if any—of *Ford Motor* on Second Circuit case law is a question for another day and another case.  Plaintiff's antitrust claim does not "relate to" FIFA's contacts with New York under any standard.  Exercising personal jurisdiction over FIFA in this case would require the Court to adopt the "anything goes" approach that the Supreme Court expressly disclaimed in *Ford Motor*.  Thus, Plaintiff's claim against FIFA should be dismissed for lack of personal jurisdiction.[2]

Respectfully submitted,

*/s/ H. Christopher Boehning*

H. Christopher Boehning

cc:   All Counsel of Record (via ECF)

---

[2] We note that *Ford Motor* addressed only the minimum requirements of due process under the U.S. Constitution.  As FIFA explained in its motion to dismiss, Plaintiff's antitrust claim does not "aris[e] from" FIFA's New York conduct as required by the New York long-arm statute, CPLR § 302(a), and nothing in *Ford Motor* affects that state-law requirement.