

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

**JEFFREY L. KESSLER**
Partner
(212) 294-4698
JKessler@winston.com

June 23, 2021

**VIA ECF**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square, Room 240
New York, NY 10007

   **Re:** *Relevent Sports, LLC v. Fédération Internationale de Football Association and United States Soccer Federation, Inc.*, **No. 19-cv-08359-VEC**

Dear Judge Caproni:

  This firm represents Plaintiff Relevent Sports, LLC ("Relevent") in the above-captioned action. We write to respectfully submit for the Court's consideration the Supreme Court's recent, unanimous decision in *National Collegiate Athletic Ass'n v. Alston*, No. 20–512 (June 21, 2021), attached hereto as **Exhibit A**, which was discussed during the parties' June 15 oral argument. This supplemental authority is relevant to resolving the pending motions to dismiss. ECF Nos. 65, 68. Specifically, the *Alston* Court affirmed 9-0 that organizational rules promulgated and enforced by a multi-tiered membership-based sports governing body that restrict the competitive behavior of its members are concerted action (*i.e.*, an agreement) and may violate Section 1 of the Sherman Act. *See* Ex. A at 1, 14, 18–19. This tenet of antitrust law plainly applies to the market division policy enforced by FIFA with the agreement of its members, which—like the NCAA—is a "sprawling enterprise" supported by a "thicket of associations and rules." *Id.* at 7.

  As the *Alston* decision makes clear, the NCAA is the membership-based governing body for collegiate sports and is organized into three divisions. *Id.* These three divisions are comprised of various conferences which, in turn, include "about 1,100 colleges and universities" that actually or potentially compete with each other. *Id.* Each member conference and school is "subject to NCAA-issued-and-enforced" rules, including the athlete compensation rules challenged in *Alston*, which prohibited each NCAA-affiliated school from providing athletes with compensation above the NCAA-set limit. *Id.* at 8, 14. The Court in *Alston* thus recognized that the NCAA "and its members have agreed to compensation limits on student athletes" and "the NCAA and its conferences enforce these limits by punishing violations." *Id.* at 8.

  FIFA's structure of rules and policies applied to its members is, for purposes of assessing concerted action under the Sherman Act, indistinguishable from the structure of rules and policies applied by the NCAA to its members. FIFA is the membership-based governing body for soccer and is organized into six regional Confederations. Am. Compl. ¶¶ 25, 28. These six



Confederations are comprised of various National Associations which, in turn, include the professional soccer leagues and/or teams that actually or potentially compete with one another. *Id.* ¶¶ 25, 29. FIFA has admitted that, like the NCAA's role in collegiate sports, FIFA is in the business of "making rules and regulations for football worldwide." FIFA Mot. at 2–3 (identifying FIFA Council as a FIFA "governing bod[y]" that "represent[s]" FIFA's membership). Each FIFA-affiliated Confederation, National Association, league and team is subject to these FIFA-issued and -enforced rules and policies (just as each member conference and school is subject to NCAA-issued and -enforced rules and policies). *See id.* (citing FIFA Statutes); Am. Compl. ¶ 34 (same).

Finally, just like the NCAA members, which must agree to abide by all NCAA rules or face discipline for not doing so (Ex. A at 8), each FIFA member and affiliate must abide by the FIFA market division policy that was adopted by the "representative[]" FIFA Council in direct response to Relevent's efforts to host an official season La Liga game in the U.S.[1] As the Supreme Court recognized in *Alston*, a defendant sports organization may not simply "relabel" its rules restricting the competitive behavior of its members as innocuous guidance to "declare it 'immune from §1 scrutiny.'" *See* Ex. A at 29 (quoting *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 199 n.7 (2010)).

Relevent appreciates the Court's time and attention to this matter.

Respectfully submitted,

*/s/ Jeffrey L. Kessler*
Jeffrey L. Kessler

cc:     All Counsel of Record (via ECF)

---

[1] On October 26, 2018, the FIFA Council issued the following statements in a press release:

> Following a request for guidance from the Spanish FA, US Soccer and CONCACAF, the FIFA Council discussed La Liga's proposal to host an official 2018/19 regular season league match outside of Spain (in Miami).
>
> Consistent with the opinion expressed by the Football Stakeholders Committee, the Council emphasised [sic] the sporting principle that official league matches must be played within the territory of the respective member association.

*FIFA Council makes key decisions for the future of football development*, FIFA.com (Oct. 26, 2018) https://www.fifa.com/about-fifa/who-we-are/news/fifa-council-makes-key-decisions-for-the-future-offootball-development (quoted by Am. Compl. ¶ 117 & n.33).