June 2, 2023

**VIA ECF**
Hon. Valerie E. Caproni
United States District Court
40 Foley Square, Room 240
New York, NY 100007

      **Re:**     *Relevent Sports, LLC. v. FIFA et al.*, No. 19-cv-8359 (VEC)

Dear Judge Caproni:

      In accordance with the Court's order, ECF No. 105, the parties submit this joint letter proposing next steps for the above-referenced litigation.

**Plaintiff's Position**:  In the nearly four years since Relevent commenced this action, there has still not been a single page of discovery exchanged.  With the Second Circuit now making clear that Relevent has plausibly alleged an antitrust conspiracy, there is no basis for further delay. Indeed, as each day passes, Relevent—which is seeking injunctive relief—continues to suffer substantial prejudice from FIFA's unlawful market division policy.  Yet, Defendants seek an indefinite stay while the parties engage in further motion to dismiss briefing.  The Court should direct Defendants to Answer the Amended Complaint and promptly proceed to merits discovery.

      While Relevent believes it will ultimately succeed on the merits, to avoid the expense of litigation, several weeks ago, Relevent offered to pause this proceeding if there was a reasonable prospect of settlement.  But Defendants dismissed Relevent's settlement proposal as "a non-starter" and have not engaged in substantive discussions of what a settlement might look like. Relevent is left to conclude that a resolution is unlikely—or at least, not imminent—and thus, there is no reason for a stay.  Accordingly, even if the Court entertains further motion-to-dismiss arguments, full merits discovery should immediately proceed.

      ***Discovery Should Promptly Commence***.  Promptly proceeding to discovery is not only consistent with the Court's practice but with common practice in this district.  *See* Civ. Case Mgmt. Plan and Sched. Order at ¶ 5; *Bennett v. Cuomo*, 22-CV-7846 VSB, 2023 WL 2021560, at *1 (S.D.N.Y. Feb. 15, 2023) ("discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed") (quotations omitted).  In evaluating whether to stay discovery pending a motion to dismiss, "courts typically consider several factors . . . including: (1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay."  *Bennett*, at *2.  Each weighs heavily in favor of proceeding to discovery now.

      *First*, as discussed below, Defendants' remaining arguments to dismiss this action are unlikely to succeed.  Each of Defendants' contentions are primarily disputes of fact, which cannot support dismissal on the pleadings.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  And Defendants waived their right to assert their new arguments by failing to include them in their initial motions to dismiss.  Fed. R. Civ. P. 12(h).  *Second*, Relevent anticipates that discovery will

be narrowly focused on the antitrust issues presented by this case; it will be limited to the discrete topics surrounding the promulgation, enforcement, and purpose of the FIFA Policy. *Third*, Relevent—which is seeking injunctive relief—has already withstood several years of delay while this Court considered Defendants' prior motions to dismiss and the Second Circuit considered Relevent's appeal. Further delay of discovery would compound that harm and continue to deprive U.S. fans of live, in-person top-tier official season soccer games. By contrast, discovery would impose a minimal burden on Defendants FIFA and USSF, which are multi-billion- and multi-million-dollar organizations, respectively. Nor is bifurcated discovery appropriate. Jurisdictional and merits discovery will substantially overlap. Requiring multiple rounds of document collections and depositions from the same people on the same topics would be highly inefficient.

On May 24, Relevent proposed to Defendants a full case schedule, including that fact discovery would promptly commence and conclude on December 8, 2023, which is slightly longer than the Court's standard discovery schedule given the international component and complexity of this case. Defendants declined to discuss a discovery schedule, contending instead that discovery should be stayed while the parties engage in further motion to dismiss briefing. The Court should schedule a Pretrial Conference and order that merits discovery promptly commence.

**Discovery Should Proceed Even if Additional Briefing Is Permitted.** The Second Circuit denied Defendants' primary arguments to dismiss this action. It "conclude[d] that FIFA is subject to personal jurisdiction in this case," *Relevent Sports, LLC v. U.S. Soccer Fed'n, Inc.*, 61 F.4th 299, 305 (2d Cir. 2023), and that Relevent plausibly alleged concerted action supporting an antitrust conspiracy.[1] Certain arguments in Defendants' motions to dismiss were not addressed: that (1) Relevent has not alleged a plausible relevant market;[2] (2) Relevent has not pleaded that the FIFA Policy causes anticompetitive effects;[3] (3) Relevent is not an efficient enforcer of the antitrust laws;[4] and (4) Relevent's claims against USSF are prohibited by a 2016 settlement agreement.[5] These arguments would be more efficiently addressed after discovery, as they hinge on facts or expert evidence. Moreover, as set forth below, none is likely to succeed.

*Relevant Market*. As USSF acknowledged, the analysis of a relevant antitrust market is "deeply fact-intensive." USSF Mot. at 18 (quoting *Todd v. Exxon Corp*, 275 F.3d 191, 199–200 (2d Cir. 2001)). As a result, "courts hesitate to grant motions to dismiss for failure to plead a relevant [] market." *Todd*, 275 F.3d at 199–200. Moreover, an analysis of the relevant market is not required if the Court concludes that the FIFA market division policy is subject to *per se* or "quick look" review. *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents*, 468 U.S. 85, 100, 109 (1984). But to the extent Relevent needed to plead a relevant market, it plausibly alleged a market of top-tier men's professional soccer league games in the United States, which is more than sufficient to survive a motion to dismiss. Relevent Mem. of Law in Opp. to Mots. to Dismiss 38–42, ECF No. 77 ("Relevent Opp."). Among other things, the alleged geographic market follows the contours of the FIFA Policy, which divides markets by country, and the alleged product market

---

[1] By ruling that FIFA is subject to jurisdiction, the Second Circuit also rendered moot USSF's contention that the case should be dismissed because FIFA is an indispensable, but absent, party.

[2] USSF Mem. of Law ISO Mot. to Dismiss Am. Compl. at 18–22, ECF No. 66 ("USSF Mot."); FIFA Mem of Law ISO Mot. to Dismiss Am Compl. at 20–23, ECF No. 69 ("FIFA Mot.").

[3] USSF Mot. at 22–23; FIFA Mot. at 23–25.

[4] USSF Mot. at 22, n7.

[5] USSF Mot. at 24–25.

is consistent with a substantial body of caselaw accepting market definitions for specific sports properties. *Id.* Defendants' factual disputes with Relevent's alleged relevant market therefore cannot be resolved on the pleadings, and do not provide grounds for a stay of discovery.

*Anticompetitive Effects*. Similarly, whether a plaintiff can demonstrate anticompetitive effects is "fact-intensive," *Caruso Mgmt. Co. v. Int'l Council of Shopping Ctrs.*, 403 F. Supp. 3d 191, 202 (S.D.N.Y. 2019), and thus, should not be resolved on a motion to dismiss. Here, Relevent alleged, *inter alia*, that the FIFA Policy prohibited official season games from being played in the United States, which, absent the Policy, would have been played. Relevent Opp. at 42–43. These allegations of decreased output in the United States by virtue of the FIFA market division policy are unequivocally anticompetitive effects. *E.g.*, *U.S. v. Am. Express Co.*, 838 F.3d 179, 194 (2016) ("Examples of actual anticompetitive effects include reduced output, decreased quality, and supracompetitive pricing."). Defendants' allegations of contrary facts cannot overcome Relevent's plausible allegations and, in any event, cannot justify further delay in this action.

*Efficient Enforcer*. USSF contended that "Relevent is not an 'efficient enforcer' of the antitrust laws" and that "leagues, clubs, and players" would be better plaintiffs. USSF Mot. at 22 n.7. But Relevent is a direct participant in the restrained market for top-tier official season men's professional soccer games in the United States. And direct market participants are presumptively efficient antitrust enforcers. Relevent Opp. at 48–49 (citations omitted).

*Settlement Agreement*. USSF also contends that Relevent's antitrust claim is precluded under a 2016 settlement agreement. USSF Mot. at 24-25. As an initial matter, USSF's assertion is belied by the plain language of the agreement, which only precludes Relevent from "challenging [USSF's] jurisdiction over International Games." USSF Mot. at 24 (quoting settlement agreement). But Relevent makes no such challenge; it acknowledges USSF's jurisdiction. Relevent Opp. at 49 (quoting Am. Compl. ¶ 54). Instead, Relevent challenges the FIFA market division policy and USSF's agreement to exercise its acknowledged jurisdiction in a manner contrary to U.S. antitrust law. *Id.* at 49–50 (citing Am. Compl. ¶ 157). But even if the language of the settlement agreement applied to this antitrust action, that provision would be unenforceable to shield USSF's post-settlement antitrust violations as a matter of public policy. *Id.* at 50 (quoting *In re Am. Express Merchs.' Litig.*, 634 F.3d 187, 197 (2d Cir. 2011) ("a firm principle of antitrust law [is] that an agreement which in practice acts as a waiver of future liability under the federal antitrust statutes is void as a matter of public policy")). Here, Relevent challenges USSF's implementation and enforcement of the FIFA Policy, which USSF requested, and was announced in 2018—two years after the settlement agreement. Moreover, the 2016 settlement agreement does not extend to FIFA, which, on its own, is sufficient to warrant discovery at this stage.

*Defendants' New Arguments*. Defendants also raise new arguments for dismissal, on the basis that "[p]roceedings before the Second Circuit altered this case." They assert that Relevent's Complaint alleged a "far-ranging global conspiracy" but on appeal narrowed its assertions to allege that the conspiracy is the FIFA Policy itself. As the Second Circuit recounted, "Relevent attacks the 2018 Policy directly as anticompetitive," as the Complaint alleged that "[t]he FIFA geographic market division policy was, and is, [] a horizontal division of geographic markets agreement." *Relevent*, 61 F.4th at 308 (quoting Am. Compl.). In other words, the Second Circuit did not alter Relevent's Complaint allegations challenging the FIFA Policy.

3

Moreover, because Defendants' new arguments were available when they filed their motions to dismiss, they are precluded from first asserting them now. Fed. R. Civ. P. 12(g)(2) (A party may not file "another motion under [Rule 12(b)] raising a defense or objection that was available to the party but omitted from its earlier motion"). For example, the Amended Complaint alleged that USSF "act[s] on behalf of FIFA" with respect to the challenged market division policy. Am Compl. ¶54, 55, 57. But Defendants did not to assert a *Copperweld* defense based on the theory that USSF and FIFA are a single entity because USSF acted on FIFA's behalf. And even if Defendants were entitled to raise their new arguments now, each is again premised on disputes of fact, which are inappropriate for resolution on a motion to dismiss. *Iqbal*, 556 U.S at 678.

In short, even if Defendants are permitted to brief their remaining or new 12(b)(6) arguments, discovery should proceed to avoid further prejudice to Relevent.

**Defendants' Position:** Proceedings before the Second Circuit altered this case from the one the Court dismissed on July 20, 2021. In this Court, Relevent alleged a far-ranging global conspiracy amongst all leagues, federations and confederations. That changed in the Second Circuit where, based on Relevent's representation, the appellate court held that the alleged anticompetitive agreement that Relevent is challenging directly is the 2018 FIFA Council press release. *See Relevent Sports, LLC* v. *U.S. Soccer Federation, Inc.*, 61 F.4th 299, 303 (2d Cir. 2023) Defendants respectfully submit that this shift raises numerous potential issues that should be addressed before this matter proceeds to costly and burdensome discovery. As FIFA's counsel made clear before the Second Circuit, the 2018 press release is not a FIFA Rule or Regulation, and does not prohibit all official league matches from taking place outside the league's home territory. *See* Br. of Appellee FIFA at 10, *Relevent Sports, LLC* v. *U.S. Soccer Federation Inc.*, No. 21-2088-cv (2d Cir. Nov. 12, 2021), ECF No. 72. That means that Relevent's complaint, to the extent it seeks forward-looking injunctive relief, is moot.

Notably absent from Relevent's proposal in this letter, and contrary to its current position demanding that this case proceed immediately to discovery, is the fact that Relevent's counsel has suggested a pause in the litigation to allow for discussions between the parties to attempt to resolve this matter. As Defendants made clear during a meet and confer on May 30, 2023, while Defendants continue to view Relevent's allegations in this case as meritless and intend to forcefully defend against the claims, to avoid the burdens of litigation on the parties and the Court, Defendants are open to discussing a potential path forward with Relevent. Defendants agree with Relevent that the most efficient way to proceed would be for the Court to grant a temporary stay in this litigation to allow the parties to explore a resolution of this matter, and respectfully suggest that given other obligations, including the upcoming Women's World Cup in Australia and New Zealand, a stay of 90 days would provide the critical stakeholders sufficient time for productive conversations.

If the parties are unable to resolve the matter on their own, Defendants submit that the next step would be to permit Defendants to submit further motions to dismiss that address issues that either come out of the Second Circuit's decision or were not reached by the Court in its prior opinion. Those issues include, for instance, whether Relevent's claims: (1) allege a cognizable injury or anticompetitive effects (*see* FIFA Mot. to Dismiss at 23–25 (ECF 69); USSF Mot. to Dismiss at 22–23 (ECF 66)); (2) can be maintained given that no one affiliated with U.S. Soccer

actually voted on the alleged policy that Relevent is directly challenging; (3) have properly defined a relevant market (*see* FIFA Mot. to Dismiss at 20–23 (ECF 69); USSF Mot. to Dismiss at 18–22 (ECF 66)); (4) are barred by Relevent's 2016 settlement agreement and covenant not to sue (*see* Ex. 8 to USSF Mot. to Dismiss (ECF 67-8)); and (5) are viable under the Supreme Court's decision in *Copperweld v. Independence Tube*, 467 U.S. 752 (1984), in light of the Second Circuit's holding that Relevent has alleged U.S. Soccer "is FIFA's agent", *see Relevent Sports*, 61 F. 4th at 305. While Relevent seeks to use its submission in this letter to advance substantive arguments on the merits of these issues (with which, suffice to say, Defendants disagree), Defendants believe that the proper way to debate the merits is through fully briefed motion practice, not a short status letter. Defendants submit that motions to dismiss addressing these, and any other such issues, can be submitted within 30 days of the resumption of the case following the termination of the proposed stay.

In the event any part of the case remains after a decision by this Court on the renewed motions to dismiss, Defendants will be prepared to work with Relevent in good faith to set a schedule for discovery through trial.[6] Contrary to Relevent's assertion above, Defendants have not "ignored" Relevent's proposed schedule or "refused to engage in any substantive discussions on a discovery schedule." Rather, Defendants are well aware of Relevent's proposal and simply disagree about how the case should proceed.As part of any schedule, FIFA proposes that discovery should be phased, beginning with limited jurisdictional discovery. The Second Circuit was clear in its opinion that it found Relevent's allegations of personal jurisdiction over FIFA sufficient only because the parties were "at the pleading stage." (Op. at 11.) Here, each of the core allegations in the Amended Complaint relied upon by the Second Circuit is demonstrably false—falsity that can be confirmed with minimal discovery. USSF is not, and never has been, FIFA's agent; USSF did not engage in any forum-specific conduct in New York related to the allegations of the Amended Complaint; and, as noted above, the two alleged actors—Messrs. Gulati and Garber—did not vote, whether from New York or elsewhere, on the alleged policy that Relevent is challenging. In short, this Court's earlier conclusion that this Court cannot exercise personal jurisdiction over FIFA was correct. Accordingly, before engaging in full-blown merits discovery, the parties should first resolve the threshold question of whether FIFA is subject to personal jurisdiction, which can be easily and finally determined with limited document and deposition discovery, followed by FIFA filing a motion to dismiss. Limited discovery on the core jurisdictional allegations to determine Defendant's contacts with the forum is far less burdensome than a full merits discovery, and there will be key differences between the two phases. For instance, merits discovery will require seeking evidence about events that happened outside the U.S., as opposed to jurisdictional discovery which will focus on FIFA's contacts with the U.S. Furthermore, merits discovery will involve expert work that will require significant time and resources and have no bearing on or overlap with the question of personal jurisdiction. Only once the Court determines whether FIFA is subject to the Court's jurisdiction should the parties be required to engage in the costly exercise of merits and expert discovery in this complex antitrust matter.

---

[6] With respect to document discovery from FIFA, which, as Relevent alleges in its Amended Complaint is an "association registered in the Commercial Register of the Canton of Zurich," the parties' proposed discovery schedule will need to build in time for the issuance of Letters of Request under the Hague Evidence Convention due to certain blocking statutes in Switzerland.

Respectfully submitted,

| | |
|---|---|
| */s/ Jeffrey L. Kessler* | */s/ H. Christopher Boehning* |
| Jeffrey L. Kessler | H. Christopher Boehning |
| Jonathan J. Amoona | Andrew C. Finch |
| Angela A. Smedley | **PAUL, WEISS, RIFKIND, WHARTON &** |
| Adam I. Dale | **GARRISON LLP** |
| **WINSTON & STRAWN LLP** | 1285 Avenue of the Americas |
| 200 Park Avenue | New York, New York 10019 |
| New York, New York 10166 | Tel: (212) 373-3000 |
| Tel: (212) 294-6700 | Fax: (212) 757-3990 |
| Fax: (212) 294-4700 | cboehning@paulweiss.com |
| jkessler@winston.com | afinch@paulweiss.com |
| jamoona@winston.com | |
| asmedley@winston.com | *Counsel for Defendant FIFA* |
| aidale@winston.com | |

*Counsel for Relevent Sports, LLC*

*/s/ Christopher S. Yates*
Christopher S. Yates (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600
Fax: (415) 395-8095
chris.yates@lw.com

Lawrence E. Buterman
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, New York 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
lawrence.buterman@lw.com

*Counsel for Defendant United States Soccer Federation*