**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RELEVENT SPORTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FÉDÉRATION INTERNATIONALE DE FOOTBALL ASSOCIATION and UNITED STATES SOCCER FEDERATION, INC.,<br><br>Defendants. | No. 1:19-cv-8359 (VEC) |

**FIFA'S MEMORANDUM OF LAW IN SUPPORT OF ITS
RENEWED MOTION TO DISMISS THE AMENDED COMPLAINT**

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
H. Christopher Boehning
Andrew C. Finch
Daniel A. Crane
Robert J. O'Loughlin
Tiana Voegelin
1285 Avenue of the Americas
New York, New York  10019-6064
Tel:  (212) 373-3000
Fax:  (212) 757-3990
Email:  cboehning@paulweiss.com
        afinch@paulweiss.com
        dcrane@paulweiss.com
        roloughlin@paulweiss.com
        tvoegelin@paulweiss.com

*Attorneys for Defendant FIFA*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 2

    A.    Underlying Facts ...................................................................................................... 3

    B.    Relevent's Shifting Allegations ............................................................................... 4

    C.    Jurisdictional Allegations Against FIFA ................................................................. 5

ARGUMENT .......................................................................................................................... 7

I.      Relevent's Claims Against FIFA, a Swiss Non-Profit, Should Be Dismissed for
       Lack of Personal Jurisdiction. ....................................................................................... 7

    A.    Legal Standard ......................................................................................................... 7

    B.    There Is No Statutory Basis for Jurisdiction Over FIFA. ....................................... 8

            1.    There Is No Forum-Specific Conduct Sufficient to Satisfy New
                 York's Long-Arm Statute. ............................................................................. 8

            2.    Section 12 of the Clayton Act Does Not Support Personal
                 Jurisdiction over FIFA. ............................................................................... 11

    C.    Exercising Jurisdiction over FIFA Would Be Inconsistent with Due
       Process. .................................................................................................................. 14

            1.    The Court Lacks General Jurisdiction over FIFA. ...................................... 14

            2.    The Court Lacks Specific Jurisdiction over FIFA for Purposes of
                 Plaintiff's Antitrust Claim. .......................................................................... 15

II.    Relevent's Claim Against FIFA Is Barred by Its Covenant Not to Sue USSF, as
      FIFA Is a Third-Party Beneficiary of That Agreement. ............................................... 17

III.   Relevent's Antitrust Claim Should Be Dismissed Under Rule 12(b)(6). ..................... 18

    A.    Legal Standard ....................................................................................................... 19

    B.    Plaintiff Does Not Adequately Allege a Rule of Reason Claim. ........................... 19

            1.    The Amended Complaint Does Not Adequately Allege a Relevant
                 Product and Geographic Market. ................................................................. 20

            2.    The Amended Complaint Fails Adequately to Allege
                 Anticompetitive Effects. .............................................................................. 23

CONCLUSION ..................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aluminum Warehousing Antitrust Litig.*,
 2015 WL 6472656 (S.D.N.Y. Oct. 23, 2015) ............................................................8

*Ohio* v. *American Express Co.*,
 138 S. Ct. 2274 (2018) ............................................................................................24

*American Needle, Inc.* v. *NFL*,
 560 U.S. 183 (2010) .................................................................................................19

*Aquiline Capital Partners LLC* v. *FinArch LLC*,
 861 F. Supp. 2d 378 (S.D.N.Y. 2012) .....................................................................15

*Best Van Lines, Inc.* v. *Walker*,
 490 F.3d 239 (2d Cir. 2007) .......................................................................................9

*Black* v. *Dain*,
 2018 WL 11447342 (E.D.N.Y. Sept. 17, 2018) .......................................................15

*Board of Educ. of Northport-East Northport Union Free Sch. Dist.* v. *Long Island
 Power Auth.*,
 130 A.D.3d 953 (2d Dep't 2015) ..............................................................................18

*Byun* v. *Amuro*,
 2011 WL 10895122 (S.D.N.Y. Sept. 6, 2011) .........................................................15

*Charles Schwab Corp.* v. *Bank of America Corp.*,
 883 F.3d 68 (2d Cir. 2018) ..........................................................................7, 8, 9, 16

*City of Long Beach* v. *Total Gas & Power N. Am., Inc.*,
 465 F. Supp. 3d 416 (S.D.N.Y. 2020) ......................................................................13

*City of New York* v. *Grp. Health Inc.*,
 649 F.3d 151 (2d Cir. 2011) .....................................................................................20

*Coast to Coast Energy, Inc.* v. *Gasarch*,
 149 A.D.3d 485 (1st Dep't 2017) ...............................................................................9

*Concord Associates, L.P.* v. *Entertainment Properties Trust*,
 817 F.3d 46 (2d Cir. 2016) ...................................................................................20, 21

*Daimler AG* v. *Bauman*,
 571 U.S. 117 (2014) .................................................................................................14

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Daniel* v. *Am. Bd. Of Emergency Med.*,
   428 F.3d 408 (2d Cir. 2005)..................................................................12, 13

*Dentons U.S. LLP* v. *Republic of Guinea*,
   208 F. Supp. 3d 330 (D.D.C. 2016) ...............................................................13

*DSMC, Inc.* v. *Convera Corp.*,
   273 F. Supp. 2d 14 (D.D.C. 2002) ..................................................................8

*Gucci America, Inc.* v. *Weixing Li*,
   768 F.3d 122 (2d Cir. 2014)..........................................................................16

*Hallmark Cards, Inc.* v. *Monitor Clipper Partners, LLC*,
   757 F. Supp. 2d 904 (W.D. Mo. 2010) ...........................................................7

*Harlow* v. *Children's Hosp.*,
   432 F.3d 50 (1st Cir. 2005)...........................................................................15

*India.Com, Inc.* v. *Dalal*,
   412 F.3d 315 (2d Cir. 2005)..........................................................................18

*Jacobs* v. *Tempur-Pedic Int'l, Inc.*,
   626 F.3d 1327 (11th Cir. 2010) ....................................................................24

*Jeanty* v. *Newburgh Beacon Bus Corp.*,
   2018 WL 6047832 (S.D.N.Y. Nov. 19, 2018)................................................4

*Kingsepp* v. *Wesleyan Univ.*,
   763 F. Supp. 22 (S.D.N.Y. 1991)..................................................................12

*Kresberg* v. *International Paper Co.*,
   149 F.2d 911 (2d Cir. 1945)..........................................................................12

*Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013)............................................................................8

*Liga Nacional Futbol Profesional* v. *Real Federacion Española de Futbol*,
   Mercantile Court No. 12 of Madrid (Mar. 6, 2020)........................................3

*Logan Prods., Inc.* v. *Optibase, Inc.*,
   103 F.3d 49 (7th Cir. 1996) ..........................................................................15

*MacDermid Printing Sols. LLC* v. *Cortron Corp.*,
   833 F.3d 172 (2d Cir. 2016)..........................................................................24

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Major League Baseball Props., Inc.* v. *Salvino, Inc.*,
    542 F.3d 290 (2d Cir. 2008) ................................................................................... 19

*Mehr* v. *FIFA*,
    115 F. Supp. 3d 1035 (N.D. Cal. 2015) ..................................................... 11, 14, 16

*Mendel* v. *Henry Phipps Plaza West, Inc.*,
    6 N.Y.3d 783 (2006) .............................................................................................. 18

*Metro. Intercollegiate Basketball Ass'n* v. *NCAA*,
    339 F. Supp. 2d 545 (S.D.N.Y. 2004) .................................................................... 19

*Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ..................................................................................... 15

*Nanomedicon, LLC* v. *Research Found. of State Univ. of N.Y.*,
    112 A.D.3d 594 (2d Dep't 2013) ........................................................................... 18

*NCAA* v. *Alston*,
    141 S. Ct. 2141 (2021) ................................................................................ 2, 19, 25

*O'Bannon* v. *NCAA*,
    802 F.3d 1049 (9th Cir. 2015) ............................................................................... 19

*In re Parmalat Sec. Litig.*,
    594 F. Supp. 2d 444 (S.D.N.Y. 2009) .................................................................... 13

*Pecoraro* v. *Sky Ranch for Boys, Inc.*,
    340 F.3d 558 (8th Cir. 2003) ................................................................................. 15

*PepsiCo, Inc.* v. *Coca-Cola Co.*,
    315 F.3d 101 (2d Cir. 2002) ................................................................................... 23

*Relevent Sports* v. *U.S. Soccer Fed'n*,
    61 F.4th 299 (2d Cir. 2023) .......................................................................... *passim*

*Santamaria* v. *Hilton Worldwide, Inc.*,
    2020 WL 2036724 (S.D.N.Y. Apr. 28, 2020) .......................................................... 8

*In re SSA Bonds Antitrust Litig.*,
    420 F. Supp. 3d 219 (S.D.N.Y. 2019) .................................................................... 13

*Stein* v. *Horwitz*,
    191 F.3d 448, 1999 WL 710355 (4th Cir. Sept. 13, 1999) ..................................... 15

## TABLE OF AUTHORITIES
### (Continued)

<u>Page(s)</u>

*Sullivan* v. *Barclays PLC*,
  2017 WL 685570 (S.D.N.Y. Feb. 21, 2017)..................................................................16

*Taormina* v. *Thrifty Car Rental*,
  2016 WL 7392214 (S.D.N.Y. Dec. 21, 2016) ..............................................................19

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)......................................................................................8, 15

*Theatre Party Associates, Inc.* v. *Shubert Organization, Inc.*,
  695 F. Supp. 150 (S.D.N.Y. 1988)................................................................................21

*Tip Top Farms, Inc.* v. *Dairylea Co-op, Inc.*,
  114 A.D.2d 12 (2d Dep't 1985)....................................................................................10

*United States* v. *Visa USA, Inc.*,
  344 F.3d 229 (2d Cir. 2003).........................................................................................24

*Walden* v. *Fiore*,
  571 U.S. 277 (2014)......................................................................................................15

*Winkler-Koch Eng'g Co.* v. *Universal Oil Prods. Co. (Del.)*,
  70 F. Supp. 77 (S.D.N.Y. 1946)....................................................................................13

*World Skating Fed'n* v. *Int'l Skating Union*,
  357 F. Supp. 2d 661 (S.D.N.Y. 2005)...........................................................................12

**Statutes**

15 U.S.C. § 22.................................................................................................................12, 13

36 U.S.C. § 220501 *et seq.*..................................................................................................10

Clayton Act Section 12 ......................................................................................... *passim*

Sherman Act Section 1......................................................................................... *passim*

**Other Authorities**

N.Y. C.P.L.R. 302(a) ..........................................................................................................8, 15

Fed. R. Civ. P. 4(k)(1)(A) ...................................................................................................15

Fed. R. Evid. 201 ..............................................................................................................3, 4

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

<u>Page(s)</u>

Fed. R. Civ. P. 12(b)(2)........................................................................................................1, 7, 8

Fed. R. Civ. P. 12(b)(6)........................................................................................................18, 19

Defendant Fédération Internationale de Football Association ("FIFA"), by and through its undersigned counsel, hereby submits this memorandum of law in support of its renewed motion to dismiss the Amended Complaint (Dkt. 57) ("AC") of Plaintiff Relevent Sports, LLC ("Plaintiff" or "Relevent").

## PRELIMINARY STATEMENT

The Second Circuit, in reversing this Court's prior order granting Defendants' motions to dismiss, decided only two discrete issues, neither of which have any bearing on other fatal deficiencies that were not previously reached by this Court or considered by the Second Circuit on appeal.

The Second Circuit's determination that FIFA is subject to personal jurisdiction rested exclusively on the Second Circuit's finding that Relevent pleaded sufficient allegations to infer that Defendant U.S. Soccer Federation ("USSF") acted as an agent of FIFA.  Critically, however, the allegations in the Amended Complaint that the Second Circuit relied upon for this finding are demonstrably false.  Pursuant to Rule 12(b)(2), FIFA now submits new sworn evidence establishing that, contrary to Relevent's allegations, USSF does *not* act as FIFA's agent.  The Second Circuit did not determine that there are any other bases for personal jurisdiction beyond USSF's purported (and now disproved) agency, and indeed there are none.  FIFA should therefore be dismissed from this case.

The Second Circuit's other holding concerned the sufficiency of Relevent's allegations of an antitrust conspiracy, but relied on a recasting of Plaintiff's claim that implicates other key issues that this Court did not previously need to reach and that were, as a result, not addressed by the Second Circuit.  Contrary to representations made in this Court, and thus contrary to Defendants' and the Court's understanding of Relevent's claims, Relevent informed the Second Circuit that its antitrust case is a direct challenge to the legality of a FIFA rule that Relevent

(incorrectly) asserts prohibits out-of-territory regular season matches. Accepting this as Relevent's claim, the Second Circuit held that such a challenge to the FIFA rule, at this pleading stage, adequately alleged concerted action under Section 1 of the Sherman Act. But Relevent's reimagination of its claims entails two material—and fatal—consequences for its case.

*First*, Relevent's new theory directly attacks USSF's jurisdiction over international games, making clear that Relevent's claims are barred by its 2016 covenant not to pursue that exact challenge. FIFA joins in the arguments made in USSF's separate brief, and explains here how FIFA may also enforce the covenant as a third-party beneficiary of the USSF/Relevent agreement.

*Second*, Relevent's recasting of its claim as a direct attack on a supposed FIFA rule makes crystal clear that Relevent's antitrust claims must be evaluated under the rule of reason. *See NCAA* v. *Alston*, 141 S. Ct. 2141 (2021) (holding that challenges to rules of athletic associations must be analyzed under rule of reason). Relevent therefore must adequately allege the ingredients of a rule of reason claim, including the existence of relevant product and geographic markets and anticompetitive effects. As explained in Defendants' prior briefing, Relevent has not adequately alleged either of those now-indispensable elements. The Court dismissed Plaintiff's claim without reaching either of these two arguments in its prior decision, and the Second Circuit therefore did not consider them on appeal.

For the reasons below, the Amended Complaint should be dismissed on these grounds that were not previously addressed by this Court or the Second Circuit.

## BACKGROUND[1]

The Court summarized the Complaint's and Amended Complaint's allegations in

---

[1] This factual summary rests on the allegations in the Amended Complaint, documents incorporated by reference therein—some of which are attached to the accompanying declaration of H. Christopher Boehning (each cited as "Ex. __")—the accompanying declarations of Sunil Gulati, Don Garber, Emilio Garcia Silvero, and Thomas King, and facts subject to judicial notice.

its opinions on the prior motions to dismiss.  (*See* Dkt. 47; Dkt. 96).  As the Court is already familiar with the background of this matter, FIFA provides only a brief statement of the background facts and procedural history for purposes of this renewed motion to dismiss.

### A.    Underlying Facts

In 2018, Relevent sought to stage an official regular season game between two teams from La Liga—Spain's top-level men's professional league—in Miami.  (AC ¶¶ 19, 111, 121.)  Pursuant to FIFA's rules to host such a match, Relevent was first required to seek approval from the relevant federations, including both USSF and Real Federación Española de Fútbol ("RFEF"), and the confederations in which those federations operate—CONCACAF and UEFA.  (AC ¶ 111.)  These organizations sought clarification from the FIFA Council regarding FIFA's rules around such a match. FIFA's rules do not flatly prohibit out-of-territory matches.  Rather, the rules provide a process for approval of such matches, and some have been approved and played.[2]  However, responding to *this particular request* regarding *this particular match*, and following a meeting of the FIFA Council, FIFA issued a press release "emphasis[ing] the sporting principle that official league matches must be played within the territory of the respective member association" (the "2018 Press Release," Ex. B).

Completely independent from the 2018 Press Release, the Spanish federation, RFEF, refused to consent to moving the match from Spain to Miami.  La Liga sued RFEF in Spain over that issue, and lost.  *See  Liga Nacional Futbol Profesional*  v. *Real Federacion Española de Futbol*, Mercantile Court No. 12 of Madrid (Mar. 6, 2020), Ex. A.[3]  Accordingly, the match that

---

[2]    Indeed, Relevent admits that it has hosted several "friendly" competitions among foreign professional soccer clubs in the United States.  (AC ¶¶ 17–18.)  Plaintiff also concedes that many other international soccer matches, including matches between national teams, take place in the United States.  (AC ¶ 95.)

[3]    The Court may take judicial notice of this decision and its effect on this case, even though it is not pleaded in the Amended Complaint.  Federal Rule of Evidence 201 permits the Court, "at any stage of the proceeding," including on a motion to dismiss, to take judicial notice of facts that are "not subject to reasonable dispute" and that "can

is the supposed centerpiece of Plaintiff's complaint could never have happened in the United States, entirely apart from any action by FIFA or USSF.

In March 2019, Plaintiff submitted an application to USSF to host in Miami a regular season league game between two teams from Ecuador's top professional league.  (AC ¶¶ 123–25.)  USSF denied this application without any action from FIFA.  (AC ¶¶ 128–30.)

### B.    Relevent's Shifting Allegations

Relevent brought this action in September 2019 against USSF, asserting claims under Section 1 of the Sherman Act and for tortious interference, on a theory that USSF conspired with FIFA to adopt the 2018 Press Release, which Relevent alleged prohibits clubs in domestic soccer leagues from playing regular-season matches in foreign countries.  It alleged that the conspiracy was motivated by USSF's desire to avoid competition between La Liga and Major League Soccer ("MLS," the top-tier U.S. men's professional football league).  (*See* AC ¶ 122.)

After the Court dismissed the initial Complaint (*see* Dkt. 47), Relevent filed the Amended Complaint, asserting the same operative theories and adding FIFA as a defendant for the Section 1 claim.  This Court again dismissed the Amended Complaint.  (*See* Dkt. 96.) Understanding that the gravamen of Relevent's Amended Complaint was an alleged global conspiracy to restrain trade between FIFA and its leagues, federations, and confederations, the Court first found that Relevent had failed to allege an unlawful vertical agreement between FIFA and its National Associations.  (Dkt. 96 at 9–12.)  The Court then found that Plaintiff had failed to allege an unlawful horizontal agreement among the "FIFA-affiliated top-tier men's professional

---

be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b), (d).   Here, FIFA asks the Court to take judicial notice of the outcome of La Liga's lawsuit against RFEF—*i.e.*, that the Spanish courts ruled in RFEF's favor—not the facts alleged in those proceedings.  Judicial notice of such information is proper on a motion to dismiss.  *See, e.g.*, *Jeanty* v. *Newburgh Beacon Bus Corp.*, 2018 WL 6047832, at *4 (S.D.N.Y. Nov. 19, 2018).

soccer leagues and their teams" to "geographically allocate the markets in which they are permitted to stage official season games, including in the U.S. market."  (Dkt. 96 at 12–21.)  As these two findings were sufficient to dismiss the case in its entirety, the Court expressly declined to consider any other grounds for dismissal raised by Defendants.  (Dkt. 96 at 6 n.6.)

On appeal, Relevent presented a dramatically different theory of the case than it presented to this Court.  Whereas before this Court Relevent had argued that it was challenging a global conspiracy to restrain trade consisting of hundreds of teams and leagues, in the Second Circuit it changed course and instead argued that the 2018 Press Release itself constituted an anticompetitive geographic market division, and that USSF—as a FIFA member—was liable for agreeing *ex ante* to be bound by FIFA's rules.   The Second Circuit accepted this new theory as being sufficiently encompassed in the Amended Complaint's convoluted allegations, and found it sufficient to state a claim under Section 1 of the Sherman Act.  *Relevent Sports* v. *U.S. Soccer Fed'n*, 61 F.4th 299, 307–10 (2d Cir. 2023).

## C.   Jurisdictional Allegations Against FIFA

On the jurisdictional question, the Second Circuit concluded that "[o]n the record before [it]"—*i.e.*, based *solely* on the allegations in the Amended Complaint, and without the benefit of a factual record—FIFA was subject to personal jurisdiction in New York because USSF purportedly acted as FIFA's agent (an issue that this Court had not needed to reach).  *Relevent Sports*, 61 F.4th at 305–06.  The Second Circuit also did not reach any of Plaintiffs' other theories of personal jurisdiction beyond agency.

The Amended Complaint reviewed by the Second Circuit provides various allegations intended to support Plaintiff's assertion of jurisdiction over FIFA.  Relevent claims, "on information and belief," that FIFA engaged in contract negotiations with two national television broadcasters in this District at an unspecified point in time; FIFA is not alleged to have

any ongoing performance obligations in this District under these agreements, nor are those broadcasts alleged to relate to this litigation.  (AC ¶ 62.)  Similarly, Relevent speculates that FIFA employees may have had meetings or telephone calls with a New York-based banker (about matters having nothing to do with the allegations here).  (AC ¶ 65.)  Relevent also alleges that FIFA visited this District while selecting the U.S. as one of the host countries for the 2026 World Cup, and while considering New York as one of the "host cities."  (AC ¶¶ 63–64.)  In addition, an unspecified portion of $3 million in annual development funds earmarked for the United States allegedly flows to this District, although Plaintiff does not identify any activities related to those funds that FIFA conducted in this District.  (AC ¶ 61.)  Relevent also alleges that USSF's representatives on the FIFA Council and the FIFA Stakeholders Committee conducted unspecified "business" in New York in their roles on those committees.  (*See* AC ¶¶ 40, 45.)

The Second Circuit did not address the majority of those allegations, instead relying only on a subset concerning the supposed role of various actors as FIFA's agents operating in this District.  Specifically, the Court relied on Relevent's allegations that certain persons and entities engaged in conduct "on behalf of" FIFA in the U.S., including USSF (*see* AC ¶¶ 54–55, 60, 70) and match agents licensed by FIFA (*see* AC ¶¶ 56–59).  These allegations were inconsistent with others in the Amended Complaint, which made clear that these actors do not represent FIFA's interests, such as Relevent's allegations that USSF is a "separate economic actor" from FIFA, (AC ¶ 161), and that Relevent's own match agent, Mr. Stillitano, was "employed by Relevent"—not FIFA.  (AC ¶¶ 56–57.)  Nonetheless, based on Relevent's assertions that FIFA had authorized USSF "to act on its behalf" in various matters, including to "sanction and hold games in this District," (AC ¶ 84), the Second Circuit found personal jurisdiction sufficiently alleged on a theory that USSF acted as FIFA's agent.  *Relevent Sports*, 61 F.4th at 305–06.

## <u>ARGUMENT</u>

I.     **Relevent's Claims Against FIFA, a Swiss Non-Profit, Should Be Dismissed for Lack of Personal Jurisdiction.**

The Second Circuit's decision that FIFA is subject to personal jurisdiction in New York is contingent on an express caveat:  it was decided exclusively "[o]n the record before [it]"— *i.e.*, the allegations in the Amended Complaint, which the Second Circuit was required to accept as true.  *Relevent Sports*, 61 F.4th at 305–06.  Based solely on that record, the Second Circuit found that Plaintiff had adequately pleaded that USSF was acting as FIFA's agent in the U.S. and in New York, and that because USSF took actions as FIFA's agent, FIFA was subject to personal jurisdiction.  *Id.*[4]

The Second Circuit's analysis is controlling *only* as to the allegations in the Amended Complaint standing alone.  FIFA may now present evidence disproving Relevent's allegations and demonstrating that it is not subject to personal jurisdiction in this District.  *See*, *e.g.*, *Hallmark Cards, Inc.* v. *Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 911–12 (W.D. Mo. 2010) (rejecting argument that "the issue of personal jurisdiction has already been resolved" and granting successive motion to dismiss for lack of jurisdiction based on a record that "has been developed further").  Here, the declarations submitted by FIFA now establish that USSF is not FIFA's agent, and thus FIFA is not subject to personal jurisdiction under the theory adopted by the Second Circuit.  FIFA also renews its motion to dismiss other theories of personal jurisdiction advanced by Relevent, which were not reached by the Second Circuit.

### A.     **Legal Standard**

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the

---

[4]    The Second Circuit did not address Plaintiff's alternative purported basis for jurisdiction under Section 12 of the Clayton Act.  It also did not address Plaintiff's arguments regarding its theory of "conspiracy jurisdiction" under *Charles Schwab Corp.* v. *Bank of America Corp.*, 883 F.3d 68 (2d Cir. 2018).

plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Santamaria* v. *Hilton Worldwide, Inc.*, 2020 WL 2036724, at *2 (S.D.N.Y. Apr. 28, 2020) (Caproni, J.) (quotation marks omitted).  In determining whether a plaintiff has met its burden, a court need not "accept as true a legal conclusion couched as factual allegation," or "draw argumentative inferences in the plaintiff's favor." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  For purposes of a Rule 12(b)(2) motion, the Court may "look beyond the pleadings to affidavits and supporting materials submitted by the parties." *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 6472656, at *2 (S.D.N.Y. Oct. 23, 2015); *accord Santamaria*,  2020 WL 2036724 at *3 n.3.  Allegations rebutted by declarations and other supporting documents are not entitled to a presumption of truth. *See DSMC, Inc.* v. *Convera Corp.*, 273 F. Supp. 2d 14, 20 (D.D.C. 2002) ("For purposes of determining jurisdiction, facts asserted by the plaintiff in his Complaint will be presumed to be true unless directly contradicted by affidavit.").

"A plaintiff must have a state-law statutory basis for jurisdiction and demonstrate that the exercise of personal jurisdiction comports with due process." *Charles Schwab Corp.* v. *Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).  Plaintiff establishes neither.

**B.      There Is No Statutory Basis for Jurisdiction Over FIFA.**

**1.      There Is No Forum-Specific Conduct Sufficient to Satisfy New York's Long-Arm Statute.**

Both the Amended Complaint, (AC ¶ 85), and Second Circuit's opinion, *Relevent Sports*, 61 F.4th at 305, cite New York's long-arm statute, C.P.L.R. 302(a)(1), as the basis for jurisdiction over FIFA.  This statute "provides in relevant part that 'a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state,'" as to any cause of action arising from such a transaction or contract.  *Licci ex rel. Licci* v. *Lebanese*

*Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (alterations in original) (quoting N.Y. C.P.L.R. 302(a)(1)).  A "suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."  *Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quotation marks omitted).  "A connection that is merely coincidental is insufficient to support jurisdiction."  *Id.* at 249 (quotation marks omitted).

   The Second Circuit's conclusion that FIFA is subject to personal jurisdiction in New York was not based on FIFA's own conduct in the state related to the 2018 Press Release— there is none—but rather relied on Relevent's bare allegations that suggested USSF acted as FIFA's agent.  On the basis of those allegations, the Second Circuit found that *USSF's* New York-specific contacts and actions subjected FIFA to personal jurisdiction for purposes of a facial challenge to the 2018 Press Release.  *See Relevent Sports*, 61 F.4th at 305.  Evidence that was not before the Second Circuit disproves that conclusion.

   To establish an agency relationship between FIFA and USSF for purposes of New York's long-arm statute, Plaintiff must show that USSF engaged in actions in New York "for the benefit of and with the knowledge and consent" of FIFA and that FIFA "exercised some control" over USSF.  *Coast to Coast Energy, Inc.* v. *Gasarch*, 149 A.D.3d 485, 486–87 (1st Dep't 2017) (quoting *Kreutter* v. *McFadden Oil Corp.*, 522 N.E.2d 40, 44 (N.Y. 1988)); *accord Charles Schwab*, 883 F.3d at 85 (citing *Grove Press, Inc.* v. *Angleton*, 649 F.2d 121, 122 (2d Cir. 1981)).

   Contrary to Relevent's allegations in the Amended Complaint that FIFA "authorizes USSF . . . to act on its behalf to sanction professional soccer leagues in the U.S. and this District," and that FIFA authorized USSF's "refusal to sanction the official season games sought to be promoted by Relevent," *Relevent Sports*, 61 F.4th at 305 (quoting AC ¶ 84), the truth

is that USSF is not, and has never been, FIFA's agent, and does not act on behalf of FIFA.

As set forth in the supporting declarations of former USSF President Sunil Gulati, and of Emilio Garcia Silvero, FIFA's Chief Legal and Compliance Officer, USSF is not authorized to act on behalf of FIFA.  (*See* Gulati Decl. ¶¶ 6–7; Garcia Decl. ¶ 9.)   Moreover, as Mr. Garcia explains, while USSF generally is required to follow FIFA's rules so long as they do not conflict with U.S. law, FIFA is not able to control USSF's actions.  (Garcia Decl. ¶ 10.)  FIFA does not have any power to control the composition of USSF's board or appoint its officers.  (*Id.* ¶ 11.) Indeed, both Mr. Gulati and Don Garber, who is currently a Director of USSF and the Commissioner of MLS, attest that they have never been authorized to act as agents of FIFA.  (*See* Gulati Decl. ¶ 8; Garber Decl. ¶ 2.)  USSF therefore is free to approve whatever matches it wants within the boundaries of FIFA's rules.  In this regard, USSF acts independently of FIFA and on its *own* behalf—not FIFA's—subject only to the possibility that FIFA might reject USSF's independent determination.  Indeed, under the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501 *et seq*., in order to have been certified as the national governing body for soccer in the U.S., USSF was required to demonstrate that it is "autonomous in the governance of its sport" and "is free from outside restraint." 36 U.S.C. § 220522.  Simply put, FIFA did not direct USSF's actions related to the events in this matter.[5]  And a finding that USSF acts as FIFA's agent would place USSF in violation of the Ted Stevens Olympic and Amateur Sports Act.

Furthermore, even if (contrary to the facts and the law) USSF were FIFA's agent,

---

[5] On the flip side, one of the "[p]rimary characteristics of an agent-principal relationship [is] that the agent is placed in a position to affect or alter the legal relations between the principal and third parties in matters within the scope of the agency." *Tip Top Farms, Inc.* v. *Dairylea Co-op, Inc.*, 114 A.D.2d 12, 22 (2d Dep't 1985) (citing *L. Smirlock Realty Corp.* v. *Title Guarantee Co.*, 70 A.D.2d 455, 464 (2d Dep't 1979)).  As set forth in the supporting declaration of Mr. Garcia, USSF does not have the power to enter into contracts on FIFA's behalf or otherwise bind FIFA.  (Garcia Decl. ¶ 9; *see also* Garber Decl. ¶ 2 ("I am not, and never have been authorized to, enter into contracts on FIFA's behalf, bind FIFA, alter the legal relations between FIFA and any third parties, or make any statements on FIFA's behalf.").)  This further disproves any suggestion that USSF is FIFA's agent.

Relevent's allegations concerning USSF's supposed actions *in New York* related to the promulgation of the 2018 Press Release—which rely on the purported conduct of Mr. Gulati and Mr. Garber—have now been disproven.  As set forth in the supporting declarations of Mr. Gulati, who was on the FIFA Council at the time the 2018 Press Release was issued, and Mr. Garber, who was not on the FIFA Council, neither voted on the issues reflected in the 2018 Press Release, whether from New York or elsewhere, and USSF therefore took no action to implement the 2018 Press Release (which was issued following a meeting of the FIFA Council in Kigali, Rwanda) in New York.  (*See* Gulati Decl. ¶¶ 4–5; Garber Decl. ¶ 3–4.)   Thus, the Amended Complaint's repeated allegations that FIFA "authorize[d] USSF, a New York entity, to act on its behalf," (AC ¶ 84), is beside the point—absent specific allegations of actions taken in New York in connection with the claims at issue here, the logical inference is that USSF would have acted where it is headquartered:  in Chicago (*see* AC ¶ 66).

These facts were not available to the Second Circuit and disprove the entire basis for its determination of personal jurisdiction through agency.  And there is no other basis under New York's long-arm statute to impose personal jurisdiction over FIFA here.  Again, there is no allegation, and the Second Circuit did not find, that FIFA itself undertook any action in New York related to the 2018 Press Release.  FIFA's only alleged contacts with New York are not related to the subject matter of this action, and thus cannot establish personal jurisdiction over FIFA in this case.  *See Mehr* v. *FIFA*, 115 F. Supp. 3d 1035, 1052 (N.D. Cal. 2015) (rejecting jurisdiction over FIFA based on "contacts of a commercial nature that are unrelated to claims" at issue).

### 2.   Section 12 of the Clayton Act Does Not Support Personal Jurisdiction over FIFA.

As an alternative, the Amended Complaint asserts personal jurisdiction over FIFA under Section 12 of the Clayton Act, 15 U.S.C. § 22.  (AC ¶ 85.)  The Second Circuit did not reach

this basis for jurisdiction in its decision, and for the reasons set forth in FIFA's prior motion to dismiss, Relevent's invocation of this statute is unavailing here.

While Section 12 of the Clayton Act authorizes "worldwide" service of process, it does so only in cases filed consistent with Section 12's venue provision. *Daniel* v. *Am. Bd. Of Emergency Med.*, 428 F.3d 408, 427 (2d Cir. 2005). That venue provision is limited to suits against "a corporation," 15 U.S.C. § 22, a requirement that "has been narrowly construed" to apply only to traditional corporations and not to voluntary associations. *Kingsepp* v. *Wesleyan Univ.*, 763 F. Supp. 22, 25 (S.D.N.Y. 1991) (collecting cases).

A court in this District has already held that Swiss non-profit "associations" or "vereins"—precisely the same type of entity as FIFA (AC ¶ 24)—are not "corporations" subject to personal jurisdiction under Section 12 of the Clayton Act. *World Skating Fed'n* v. *Int'l Skating Union*, 357 F. Supp. 2d 661, 664 (S.D.N.Y. 2005). Indeed, the *World Skating* case represents a straightforward application of long-settled precedent. In *Kresberg* v. *International Paper Co.*, 149 F.2d 911 (2d Cir. 1945), the Second Circuit held that the International Hydro-Electric System—a Massachusetts trust that shared many features of a corporation, including the ability to sue and be sued in its own name, a board of directors, limited liability, and shareholders who earned dividends and exercised voting rights—was only a "quasi-corporation," not a "corporation" for purposes of a jurisdictional statute. *Id.* at 912–13. In *Kingsepp*, a court in this District applied the same reasoning when considering Section 12 of the Clayton Act, and similarly concluded that a trust with separate legal personality was not a corporation. 763 F. Supp. at 25–26 & n.1. Like the entities in *Kresberg* and *Kingsepp*, and as *World Skating Federation* held, a Swiss verein is not a "corporation," it is merely *like* a corporation in some respects: While a verein has some of the features of a corporation (separate legal personality and limited liability), it lacks other critical

features (such as shareholders and management by a board of directors).[6]  In fact, "verein" does

not translate to "corporation," but rather means an "association, society, club or union."  *In re*

*Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 447 n.5 (S.D.N.Y. 2009).

      Even if FIFA were a "corporation," it would not be subject to Section 12's venue

provision, which applies only if the defendant is an "inhabitant" of the judicial district where suit

is brought, is "found" there, or "transacts business" there.  15 U.S.C. § 22.  FIFA meets none of

these requirements.  FIFA—a non-profit association headquartered in and formed under the laws

of Switzerland (AC ¶ 24; Garcia Decl. ¶ 3 (incorporating by reference Dkt. 70))—is plainly not an

"inhabitant" of this District.  *See In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 230 n.4

(S.D.N.Y. 2019) ("For a corporation, 'inhabitant' means its place of incorporation.").  FIFA also

is not "found" here:  that would require "proof of continuous local activities," *id.* at 230 n.5

(quotation marks omitted), such as having an office in the district from which the corporation's

employees conduct business, *see*, *e.g.*, *Winkler-Koch Eng'g Co.* v. *Universal Oil Prods. Co. (Del.)*,

70 F. Supp. 77, 84 (S.D.N.Y. 1946).  There is no allegation FIFA has an office, or otherwise

conducts "continuous" business, in this District.

      FIFA also does not "transact[] business" in this District, a phrase that refers to "the

practical, everyday business or commercial concept of doing business or carrying on business of

any substantial character."  *Daniel*, 428 F.3d at 428 (quoting *United States* v. *Scophony Corp. of*

*Am.*, 333 U.S. 795, 807 (1948)).  "This requires some amount of business continuity and certainly

more than a few isolated and peripheral contacts with the particular judicial district."  *City of Long*

*Beach* v. *Total Gas & Power N. Am., Inc.*, 465 F. Supp. 3d 416, 433 (S.D.N.Y. 2020) (quotation

---

[6]    U.S. courts have further noted that a Swiss association lacks any "exact legal counterpart in the United States" and is only "somewhat akin to an incorporated membership association."  *Dentons U.S. LLP* v. *Republic of Guinea*, 208 F. Supp. 3d 330, 344 (D.D.C. 2016) (quotation marks omitted).

omitted).   Relevent's allegations do not meet this test, as they consist of occasional, fleeting business activities by FIFA in this District, which are facially insufficient to support venue under Section 12 of the Clayton Act.[7]  (*See* AC ¶¶ 61–65.)

### C.   Exercising Jurisdiction over FIFA Would Be Inconsistent with Due Process.

Even if Plaintiff had satisfied one of the purported statutory bases for jurisdiction over FIFA, personal jurisdiction would offend due process because FIFA lacks "minimum contacts" with New York and the United States as a whole.  FIFA's alleged forum contacts thus do not support either general jurisdiction (*i.e.*, jurisdiction over FIFA for purposes of any suit) or specific jurisdiction (*i.e.*, jurisdiction over FIFA for purposes of this suit).  The Second Circuit's contrary conclusion was based exclusively on a theory of agency that has now been disproven. *Relevent Sports*, 61 F.4th at 306 (due process satisfied by "the same alleged contacts that subject[ed] FIFA to New York's long-arm statute").

### 1.   The Court Lacks General Jurisdiction over FIFA.

The Court plainly lacks general jurisdiction over FIFA.  General jurisdiction over an entity is typically proper only where it is headquartered or where it is organized.  *Daimler AG* v. *Bauman*, 571 U.S. 117, 137–39 (2014).  Only in an "exceptional case" can an entity be considered "at home" in another location.  *Id.* at 139 n.19.  FIFA is a Swiss non-profit headquartered in Zurich. (Garcia Decl. ¶ 3 (incorporating by reference Dkt. 70); *see also id.* ¶ 6.)  Relevent alleges nothing to suggest this is an "exceptional case" where FIFA can be considered "at home" in New York or the United States.  Thus, general jurisdiction is lacking.  *See Mehr*, 115 F. Supp. 3d at 1048.[8]

---

[7]   While FIFA's activities in the U.S. have increased in volume in recent years in preparation for hosting the World Cup in 2026, that is of no moment for jurisdiction under Section 12 of the Clayton Act, which requires the defendant to have been "transacting business" in the district at the time the complaint was served.  *See Agra Chem. Distrib. Co.* v. *Marion Labs., Inc.*, 523 F. Supp. 699, 702 (W.D.N.Y. 1981).

[8]   After the Complaint in this action was filed, FIFA established two entities in Delaware:  one in connection with its ongoing activities to plan the 2026 World Cup, and one to house its legal and compliance department, which

> **2.    The Court Lacks Specific Jurisdiction over FIFA for Purposes of Plaintiff's Antitrust Claim.**

Specific jurisdiction is also lacking.   Specific jurisdiction exists where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *In re Terrorist Attacks*, 714 F.3d at 674 (citation omitted).   "[T]he fact that harm in the forum is foreseeable, however, is insufficient for the purpose of establishing specific personal jurisdiction over a defendant." *Id.* Where, as here, the alleged statutory basis of jurisdiction is C.P.L.R. 302(a), courts consider only defendants' contacts with New York for purposes of this analysis.   *See* Fed. R. Civ. P. 4(k)(1)(A); *Aquiline Capital Partners LLC* v. *FinArch LLC*, 861 F. Supp. 2d 378, 390 (S.D.N.Y. 2012).[9]

Relevent's primary basis for jurisdiction is its allegation that FIFA's out-of-forum conduct—namely the 2018 Press Release—had an effect on Relevent at its headquarters in New York.  (*See*, *e.g.*, AC ¶ 53.)  But an effect on Relevent in New York cannot establish specific personal jurisdiction over FIFA.  Specific jurisdiction must rest on a defendant's contacts with the *forum*, not with the *plaintiff.*  *Walden* v. *Fiore*, 571 U.S. 277, 288–91 (2014).

FIFA's other alleged contacts with New York do not support specific jurisdiction

---

is being moved from Zurich to Miami.  (Garcia Decl. ¶¶ 5–6).  The Second Circuit has determined that a court should "examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed."  *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996).  Other courts have similarly found that minimum contacts for general jurisdiction purposes only matter up to the time suit is filed.  *See, e.g.*, *Harlow* v. *Children's Hosp.*, 432 F.3d 50, 64 (1st Cir. 2005); *Pecoraro* v. *Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).  FIFA's post-suit creation of these U.S. affiliates—which in any event are not within New York and do nothing to establish FIFA's minimum contacts with this state—thus does not affect the general personal jurisdiction analysis.

[9]   As with general jurisdiction, *see supra* n.8, there is a consensus among courts that a defendant's contacts occurring after a lawsuit was filed are irrelevant when analyzing specific personal jurisdiction.  *See, e.g.*, *Black* v. *Dain*, 2018 WL 11447342, at *2 (E.D.N.Y. Sept. 17, 2018) ("[N]o lower court in this Circuit or any other court applying New York's long-arm statute has held that post-filing conduct suffices to exercise specific jurisdiction over a party."); *Byun* v. *Amuro*, 2011 WL 10895122, at *1 n.2 (S.D.N.Y. Sept. 6, 2011) ("The Court does not consider these post-litigation purchases, as only pre-litigation contacts with the forum are relevant to the jurisdictional analysis."); *Harlow*, 432 F.3d at 61; *Stein* v. *Horwitz*, 191 F.3d 448, 1999 WL 710355, at *2 (4th Cir. Sept. 13, 1999); *Logan Prods., Inc.* v. *Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996).

because Relevent's claims do not "aris[e] out of or relat[e] to [FIFA's] contacts with the forum." *Gucci America, Inc.* v. *Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014). As noted above, FIFA's limited contacts with New York—like negotiating unrelated contracts (*see* AC ¶¶ 38–65)—do not relate to Relevent's claim regarding the 2018 Press Release. *See Mehr*, 115 F. Supp. 3d at 1052. Other of Relevent's allegations as to FIFA's supposed contacts with New York are readily disproven. For example, Relevent alleges that "between 2016 and 2018, FIFA provided nearly $3 million in funding for soccer development in the U.S." (AC ¶ 61.) But as set forth in the supporting declaration of Thomas King, Associate Secretary General of USSF, the bank account where USSF received these funds is in Chicago, not New York. (King Decl. ¶ 6.)

Some courts have concluded that, where jurisdiction is grounded in Section 12 of the Clayton Act, they should look beyond the forum state to the defendant's "national contacts." *See, e.g.*, *Sullivan* v. *Barclays PLC*, 2017 WL 685570, at *42 (S.D.N.Y. Feb. 21, 2017). Section 12 does not apply because, as explained above, FIFA is not a "corporation." *See supra* Section I.B.2. But even if Section 12 did apply, a national-contacts analysis would not change the result: Relevent has identified no suit-related contacts with the United States outside New York either. While Relevent repeatedly makes bald assertions that FIFA had contacts with the entire United States (*see, e.g.*, AC ¶ 52), these conclusory statements have no value in establishing jurisdiction.

Finally, Relevent's invocation of "conspiracy jurisdiction" also fails. Conspiracy jurisdiction requires a showing that "(1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Charles Schwab*, 883 F.3d at 87. Here, Relevent offered only conclusory assertions that USSF (which is headquartered in Chicago (AC ¶ 66)) engaged in conduct in New York or the United States "in

furtherance" of the conspiracy.  For example, Relevent alleged that Mr. Gulati, "upon information and belief, has regularly conducted business in his role on the FIFA Council from this District." (AC ¶ 40.)  That vague, unsupported allegation does nothing to demonstrate an act by USSF in New York in furtherance of the alleged conspiracy—it says nothing about what "business" Mr. Gulati conducted, and certainly does not allege this "business" was connected to the issuance of the 2018 Press Release.  And the evidence now shows that neither Mr. Gulati nor Mr. Garber voted on the issues in the 2018 Press Release, whether from New York or elsewhere.  (*See* Gulati Decl. ¶¶ 4–5; Garber Decl. ¶¶ 3–4.)   Moreover, neither Mr. Gulati nor Mr. Garber took any action on behalf of FIFA whatsoever—in New York or otherwise—with respect to either Relevent's 2018 or 2019 out-of-territory match applications.  (*See* Gulati Decl. ¶ 9; Garber Decl. ¶ 5.)

## II.   Relevent's Claim Against FIFA Is Barred by Its Covenant Not to Sue USSF, as FIFA Is a Third-Party Beneficiary of That Agreement.

As explained more fully in USSF's Motion to Dismiss, Relevent's antitrust claim should be dismissed because it is barred by a 2016 settlement agreement between Relevent and USSF in which Relevent agreed, in a covenant not to sue, that it would "not assert and shall forever refrain and forbear from commencing . . . any Claim, . . . or proceeding of any kind against [USSF] . . . in any way challenging (x) U.S. Soccer's jurisdiction over International Games[.]" (Dkt. 34-6 (settlement agreement) at Art. 4.) This case, which arises out of USSF's refusal to sanction Relevent's application to stage an official foreign league match in the United States, is a direct challenge to U.S. Soccer's "jurisdiction over International Games" in violation of that covenant. (*See* AC ¶¶ 11, 155.)  Relevent's claim should therefore be dismissed against both USSF and FIFA, which is a third-party beneficiary of the Agreement.  (*See* USSF Dec. 11, 2023 Mot. to Dismiss § III.A; Dkt. 66 at 24–25; Dkt. 33 at 15–19.)

Under New York law, which governs the settlement agreement (*see* Dkt. 34-6 at

Art. 7.g), a party asserting rights as a third-party beneficiary must establish that (1) the contract was intended to provide a benefit to the third party, and (2) that intended benefit is sufficiently immediate to indicate the assumption by the contracting parties of a duty to compensate the third party if the benefit is lost. *Mendel* v. *Henry Phipps Plaza West, Inc.*, 6 N.Y.3d 783 (2006); *Board of Educ. of Northport-East Northport Union Free Sch. Dist.* v. *Long Island Power Auth.*, 130 A.D.3d 953 (2d Dep't 2015); *Nanomedicon, LLC* v. *Research Found. of State Univ. of N.Y.*, 112 A.D.3d 594 (2d Dep't 2013). Courts look to the terms and language of the contract when determining if the parties intended to make it for the benefit of the third party. *India.Com, Inc.* v. *Dalal*, 412 F.3d 315, 321–22 (2d Cir. 2005).

Here, two provisions suggest that the parties understood that FIFA would also be a beneficiary of the settlement agreement. *First*, Article 1.i recognizes that USSF is "authorized by . . . FIFA to sanction International Games played in the United States." (Dkt. 34-6.) *Second*, in Article 3.a, Relevent provides a release to the "U.S. Soccer Parties," which is defined to include "all persons acting . . . in concert with [USSF]." (*Id.*) The very gravamen of Relevent's antitrust theory here is that FIFA and USSF "acted in concert" to prevent Relevent from organizing matches in the U.S. As a result, by Relevent's own allegations the language of these provisions indicates the parties understood that Relevent's covenant not to "challeng[e]" USSF's "jurisdiction over International Games" would extend to parties beyond Relevent and USSF, and would also protect anyone else alleged to have "acted in concert" with USSF—including, as relevant here, FIFA.

## III.   Relevent's Antitrust Claim Should Be Dismissed Under Rule 12(b)(6).

In its prior motion to dismiss, FIFA raised two arguments as to why the Amended Complaint fails to state a claim against FIFA under Section 1 of the Sherman Act: *first*, that the Amended Complaint does not adequately allege relevant product or geographic markets; and *second*, that the Amended Complaint does not adequately allege any anticompetitive effects.

Neither this Court nor the Second Circuit reached those arguments.  Relevent's reformulation of its theory on appeal and the Second Circuit's disposition of the appeal make all the more clear the importance of deciding those issues before allowing Relevent to proceed with its antitrust claims.

### A.       Legal Standard

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Taormina* v. *Thrifty Car Rental*, 2016 WL 7392214, at *7 (S.D.N.Y. Dec. 21, 2016) (Caproni, J.) (quotation marks omitted).  "A plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  *Id.* (quotation marks omitted).  In addition to considering the complaint itself, the Court may also refer to "documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Id.* (quotation marks omitted).

### B.       Plaintiff Does Not Adequately Allege a Rule of Reason Claim.

Relevent has now made clear that it is not seeking to prove some nefarious secret conspiracy among hundreds of soccer teams and leagues, as originally claimed, but instead is directly challenging a policy promulgated by FIFA.  For decades, all levels of the federal courts have uniformly held that restrictions within sports leagues—including geographic restrictions— are not illegal *per se* but instead must be judged under the rule of reason.  *See*, *e.g.*, *American Needle, Inc.* v. *NFL*, 560 U.S. 183, 202–04 (2010); *O'Bannon* v. *NCAA*, 802 F.3d 1049, 1063 (9th Cir. 2015); *Major League Baseball Props., Inc.* v. *Salvino, Inc.*, 542 F.3d 290, 316–17 (2d Cir. 2008); *Metro. Intercollegiate Basketball Ass'n* v. *NCAA*, 339 F. Supp. 2d 545, 549 (S.D.N.Y. 2004).  The Supreme Court eliminated any possible question that the policies adopted by sporting associations are governed by the rule of reason in *Alston*, 141 S. Ct. at 2155–56, when it applied the rule of reason to the NCAA's policies limiting the compensation member schools could award

to student athletes.  As the Court explained, since "some agreement among rivals" is indispensable to organizing sports (indeed, "some horizontal restraints are essential if the product is to be available at all"), the rules and policies adopted by sporting organizations must be subject to rule of reason analysis that entails "a fact-specific assessment of market power and market structure aimed at assessing the challenged restraint's actual effect on competition." *Id.* at 2155–57 (cleaned up).

Relevent has not pleaded the essential ingredients of a rule of reason claim—a plausible relevant market or anticompetitive effects resulting from the challenged policy.

### 1.    The Amended Complaint Does Not Adequately Allege a Relevant Product and Geographic Market.

Relevent purports to define a relevant market in "men's top-tier official season professional soccer league games in the U.S."  (AC ¶ 86).  But its allegations do not come close to making this transparently gerrymandered market plausible as either a relevant product or geographic market.

"A relevant product market consists of products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." *Concord Associates, L.P.* v. *Entertainment Properties Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quotation marks omitted).  "Thus, in order to survive a motion to dismiss, it is appropriate for a district court to assess whether the plaintiffs' complaint asserts sufficient facts to allege plausibly the existence of both a product and geographic market." *Id.* at 53.  In assessing that issue, the court should consider whether the complaint sufficiently accounts for the plausible substitutes for a proposed relevant product.  *City of New York* v. *Grp. Health Inc.*, 649 F.3d 151, 155–56 (2d Cir. 2011) ("[W]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a

proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient." (citation omitted)).  For one example, the court in *Theatre Party Associates, Inc.* v. *Shubert Organization, Inc.*, 695 F. Supp. 150, 154–55 (S.D.N.Y. 1988), found that the plaintiff's proposed relevant market of "advanced sales of selected tickets to 'theater party hits,'" "failed to explain why other forms of entertainment, namely other Broadway shows, the opera, ballet or even sporting events are not adequate substitute products."  As another example, in *Concord Associates,* 817 F.3d at 52–53, the Second Circuit affirmed dismissal of a complaint that alleged a "Racing/Gaming Market in the Catskills region."  The court took judicial notice of the presence of casinos in Connecticut and Atlantic City and noted that plaintiffs had "conveniently" omitted those substitute locations in narrowly defining a relevant market in the Catskills.  *Id.* at 54.

Here, Relevent's proposed product market fails because it arbitrarily excludes a number of substitutes without any justification whatsoever.  Relevent alleges in conclusory terms that other sports—such as baseball, basketball, gridiron football, and hockey—are not perceived as close substitutes for soccer (AC ¶ 94); that men's and women's national team matches are not perceived as substitutes for professional league games (AC ¶ 95); that lower-tier matches are not perceived as substitutes for top-tier matches (AC ¶ 95); and that "friendly" or exhibition matches are not substitutes for regular-season matches (AC ¶ 96).  But Relevent provides no facts to support those conclusions, and there are obvious reasons why carving up the market in this way would be inappropriate.  In particular, there are a large number of post-season and international matches involving top professional players that occur in the United States and around the world.  In the United States alone, there are frequent matches between the U.S. and Mexican men's and women's national teams, as well as matches between top-tier club teams from different countries, for

example as part of the CONCACAF Champions League.[10]  Historically, some post-season matches in the top-tier Mexican league have also been played in the United States.  (*See* AC ¶ 90.)  Relevent offers no reason to think these high-caliber matches—which are not "friendlies" or exhibition matches—are any less competitive or interesting to U.S. soccer fans than a regular-season match between two foreign clubs would be.  Looking beyond the U.S., there are similar international competitions in other countries, and Relevent offers no reason to think they are not substitutes for domestic regular season matches.[11]  For example, during the 2018–2019 season, FC Barcelona— one of the clubs that Relevent sought to host in a match Miami—played 12 matches against clubs from other countries in the UEFA Champions League, six of them outside of Spain.[12]  An FC Barcelona fan may well view a match between FC Barcelona and an Italian club as a substitute for a match between FC Barcelona and a Spanish club; Relevent alleges nothing to suggest otherwise.

Relevent's attempt to limit the relevant geographic market to the U.S. (AC ¶ 97) is similarly deficient.  MLS, the ostensible beneficiary of USSF and FIFA's conspiracy to exclude foreign competition, includes three Canadian teams (Montreal, Toronto, and Vancouver).[13] Relevent offers no reason why a supposed anticompetitive scheme intended to protect MLS involves a geographic region narrower than the one in which MLS operates. Moreover, the conclusory allegation that matches played outside the United States "do not permit regular attendance by U.S. fans" (AC ¶ 97) is belied by Relevent's own allegations.  In January 2019,

---

[10]   *See Champions League*, CONCACAF, https://www.concacafchampionsleague.com/en/. (Ex. C).

[11]   *See Champions League*, UEFA, https://www.uefa.com/uefachampionsleague/ (Ex. D); *Europa League*, UEFA, https://www.uefa.com/uefaeuropaleague/     (Ex. E);     *Copa     Liberatadores*,     CONMEBOL, https://conmebollibertadores.com (Ex. F).

[12]   *See Champions League 2018/19: All the Fixtures and Results*, UEFA (June 1, 2019), https://www.uefa.com/ uefachampionsleague/news/0252-0e9902dd97ae-bd3c7b568287-1000--champions-league-2018-19-all-the-fixtures-and-results/ (Ex. G).

[13]   *See Clubs*, Major League Soccer, https://www.mlssoccer.com/clubs/ (Ex. H).

when the Miami match would have occurred, Miami did not have an MLS team.[14]   The closest MLS team was in Orlando, 235 miles away.  If fans were willing to drive that distance to see a match, why would fans living in Southern California or Texas be unwilling to drive to Mexico to attend Mexican matches played within a similar distance of the U.S. border?  Similarly, if fans are willing to travel hundreds or thousands of miles across the country to see domestic league matches, why would they be unwilling to fly to London or Madrid to see a European match?  Relevent has no answer—even though U.S. soccer fans are famous for traveling overseas to watch soccer.[15]

Like the plaintiffs in *Theatre Party Associates* and *Concord Associates*, Relevent has invented a product and geographic market solely to fit its claims, without addressing obvious competitive substitutes.[16]  As a result, its proffered market definitions are fatally flawed and require dismissal of the complaint.  *See PepsiCo, Inc.* v. *Coca-Cola Co*., 315 F.3d 101, 111 (2d Cir. 2002) ("[B]ecause PepsiCo has failed properly to define the relevant market here, there can be no Section 1 violation under a rule of reason analysis.").

### 2.   The Amended Complaint Fails Adequately to Allege Anticompetitive Effects.

Because Relevent has failed adequately to allege a relevant product and geographic

---

[14]   *See About the Club*, Inter Miami CF, https://www.intermiamicf.com/club/about (noting January 29, 2018 announcement that MLS's Miami franchise was "set to begin play in March 2020") (Ex. I).

[15]   *See, e.g.*, Mark Ogden, *U.S. Tops 2018 World Cup Ticket Sales to Fans Outside of Russia*, ESPN (June 12, 2018), https://www.espn.com/soccer/fifa-world-cup/story/3523402/us-tops-2018-world-cup-ticket-sales-to-fans-outside-of-russia (Ex. J); Ben Abramson, *U.S. Is No. 1 at World Cup (in Visiting Fans)*, USA TODAY (June 25, 2014),                https://www.usatoday.com/story/dispatches/2014/06/25/world-cup-traveling-fans-facebook-checkins/11389599/. (Ex. K)

[16]   In its opposition to FIFA's prior motion to dismiss, Relevent attempted to distinguish *Concord Associates* on the grounds that there is a difference between a fan driving an additional 25 miles to another casino outside of the Catskills (the geographic region in that case) and a fan traveling "hundreds, and often thousands, of miles" to attend a sporting event in another country. (Dkt. 77 at 40.)  But Plaintiff itself has defined the geographic market as the entire United States, whose 48 contiguous states stretch over 3,000 miles from east to west and 1,650 miles from north to south. For that geographic market to be plausible, fans must be willing to travel hundreds or thousands of miles to see matches. Yet, if fans are willing to travel across the United States to see soccer, there is no reason—and Relevent offers none—why they would be unwilling to travel to Mexico, Canada, or even London—which is about as close to New York as Miami is to Seattle.

market, it is unnecessary to consider whether it has adequately alleged anticompetitive effects in the relevant market. *Ohio* v. *American Express Co.*, 138 S. Ct. 2274, 2284 (2018).  Nonetheless, it is clear that the Amended Complaint fails on this ground as well.  Anticompetitive effects consist of "reduced output, increased prices, or decreased quality in the relevant market."  *Id.*; *see also MacDermid Printing Sols. LLC* v. *Cortron Corp.,* 833 F.3d 172, 182–83 (2d Cir. 2016) ("[T]here is really only one way to prove an adverse effect on competition under the rule of reason: by showing actual harm to consumers in the relevant market."); *United States* v. *Visa USA, Inc*., 344 F.3d 229, 238 (2d Cir. 2003) (holding that, in a rule of reason case, "the government must demonstrate that within the relevant market, the defendants' actions have had substantial adverse effects on competition, such as increases in price, or decreases in output or quality").  Relevent makes no allegations showing harms of this nature.

In particular, Relevent does not allege that the 2018 Press Release at issue resulted in higher prices.  Rather, the Amended Complaint includes wholly conclusory allegations that the challenged restraint has "reduced output and lowered the quality of games."  (AC ¶ 171; *see also id.* ¶¶ 172, 176).  Such allegations are insufficient:  a court should "not infer competitive injury from price and output data absent some *evidence* that tends to prove that output was restricted or prices were above a competitive level."  *American Express*, 138 S. Ct. at 2288 (emphasis added); *see also Jacobs* v. *Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1340 (11th Cir. 2010) (finding conclusory assertions that the challenged restraint eliminated price competition and reduced output insufficient because they did not permit court to determine how the restraint harmed competition).

Relevent alleges that foreign regular-season matches cannot be played in the United States, but makes no allegation that the 2018 Press Release reduced the overall volume of regular-season matches, or that the net effect of relaxing FIFA's rules regarding playing league matches

outside of the league's domestic territory would be more matches in the United States as opposed to fewer.  *Cf. NCAA*, 468 U.S. 85 (finding that NCAA policy of limiting number of college football games broadcast on television was a naked output reduction that increased prices).  Indeed, given that the very matches at issue in this case were still played at their regular locations after USSF refused to sanction their being played in the U.S., there can be no allegation of decreased output.  Further, Relevent makes no plausible allegations about what the overall effect would be if the 2018 Press Release were changed:  if Spanish clubs could more easily play matches in Miami, MLS clubs could similarly more easily play matches in Mexico, South America, or Europe.  Relevent also does not allege any effect on the number of televised soccer matches in the United States, and any such effect would be utterly implausible because a large number of soccer matches played abroad are available for viewing in the United States.[17]

Ultimately, Relevent's complaint comes down to its assertion that Relevent itself was unable to schedule a few matches in the United States. That assertion does not begin to show actionable harm to competition under the rule of reason.

## CONCLUSION

For the reasons set forth above, FIFA respectfully requests that the Court dismiss the Amended Complaint for lack of personal jurisdiction or, alternatively, for failure to state a claim on which relief can be granted.

---

[17]  *See, e.g.*, Paul Tenorio, *TV Options Sign of Soccer's Growth*, ORLANDO SENTINEL (June 18, 2015) (Ex. L) ("Every single English Premier League game is broadcast on NBC Sports Network. The Serie A and Spanish La Liga can be seen on beIN sports.  Want to catch some German Bundesliga matches? Starting this year, you can just flip on Fox Sports.").

Dated: New York, New York
         December 11, 2023

                              PAUL, WEISS, RIFKIND,
                                WHARTON & GARRISON LLP

                              By: */s/ H. Christopher Boehning*
                                  H. Christopher Boehning
                                  Andrew C. Finch
                                  Daniel A. Crane
                                  Robert J. O'Loughlin
                                  Tiana Voegelin

                              1285 Avenue of the Americas
                              New York, New York  10019-6064
                              Tel:  (212) 373-3000
                              Fax:  (212) 757-3990
                              Email:  cboehning@paulweiss.com
                                      afinch@paulweiss.com
                                      dcrane@paulweiss.com
                                      roloughlin@paulweiss.com
                                      tvoegelin@paulweiss.com

                              *Attorneys for Defendant FIFA*