# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RELEVENT SPORTS, LLC,

                Plaintiff,

        v.

FÉDÉRATION INTERNATIONALE DE
FOOTBALL ASSOCIATION and UNITED
STATES SOCCER FEDERATION, INC.,

                Defendants.

Case No. 1:19-cv-08359-VEC

**ORAL ARGUMENT
REQUESTED**

---

## PLAINTIFF RELEVENT SPORTS, LLC'S MEMORANDUM OF LAW IN
## OPPOSITION TO FIFA'S MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................ 1

SUMMARY OF MATERIAL FACTUAL ALLEGATIONS ........................................ 2

    A.    The Parties' Roles In Professional Soccer In The U.S. ......................................... 2

    B.    Relevent's Efforts To Host Official Season Soccer Games In The U.S. Are Blocked By The FIFA Market Division Policy That Was Adopted In Response To Those Proposed Games. .................................................................. 3

PROCEDURAL HISTORY ................................................................................... 4

LEGAL STANDARDS .......................................................................................... 5

ARGUMENT ........................................................................................................ 6

I.      IT IS LAW OF THE CASE THAT THE FAC ESTABLISHES PRIMA FACIE PERSONAL JURISDICTION OVER FIFA. ...................................... 6

II.     THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER FIFA ON SEVERAL ALTERNATIVE GROUNDS. ...................................... 11

    A.    New York's Long-Arm Statute Authorizes Jurisdiction Over FIFA. .................. 11

    B.    The Second Circuit's *Schwab* Conspiracy Theory Of Jurisdiction Also Provides This Court With Personal Jurisdiction Over FIFA. ............................... 12

    C.    This Court Also Has Personal Jurisdiction Over FIFA Under Section 12 of the Clayton Act. ......................................................................................... 14

          1.    FIFA Is A "Corporation" Under The Clayton Act. .................................... 15

          2.    Venue Is Proper In This District Under The Clayton Act. ......................... 18

III.    THE 2016 RELEASE AND COVENANT NOT TO SUE DO NOT BAR RELEVENT'S ANTITRUST CLAIMS AGAINST FIFA. .............................. 20

    A.    FIFA Is Not A Party Or A Third-Party Beneficiary Of The Settlement. ............. 20

    B.    Even If FIFA Were Found To Be Covered, Relevent's Antitrust Claim Would Not Be Barred By The Settlement. ........................................................ 23

IV.    THE FAC PLAUSIBLY ALLEGES THAT THE FIFA POLICY IS AN UNREASONABLE RESTRAINT OF TRADE NO MATTER WHAT STANDARD—PER SE, QUICK LOOK, OR FULL-BLOWN RULE OF REASON—IS APPLIED. ........................................................................... 24

CONCLUSION .................................................................................................. 25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009)..................................................................21

*Allianz Glob. Invs. GMBH v. Bank of Am. Corp.*,
   457 F. Supp. 3d 401 (S.D.N.Y. 2020)........................................................5, 13, 14

*In re Aluminum Warehousing Antitrust Litig.*,
   2015 WL 6472656 (S.D.N.Y. Oct. 23, 2015) .......................................................7

*Am. Hotel Int'l Grp. Inc. v. OneBeacon Ins. Co.*,
   611 F. Supp. 2d 373 (S.D.N.Y. 2009)..............................................................6, 7

*Amusement Indus. v. Stern*,
   2010 WL 2976199 (S.D.N.Y. July 26, 2010) .....................................................22

*Anderson News, LLC v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012)..................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................2, 6

*Assoc'd Press v. United States*,
   326 U.S. 1 (1945)...............................................................................................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................2, 6, 24

*Bridgeport Music, Inc. v. Universal Music Grp., Inc.*,
   440 F. Supp. 2d 342 (S.D.N.Y. 2006)................................................................20

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018).....................................................................10, 11, 12

*Chicago Pro. Sports Ltd. P'ship v. NBA*,
   95 F.3d 593 (7th Cir. 1996) ...............................................................................25

*City of Almaty v. Sater*,
   2019 WL 6681560 (S.D.N.Y. Dec. 6, 2019) ......................................................20

*Concord Assocs., LP v. Ent. Props. Tr.*,
   817 F.3d 46 (2d Cir. 2016)..................................................................................25

*Contant v. Bank of Am. Corp.*,
    385 F. Supp. 3d 284 (S.D.N.Y. 2019) ............................................................13, 14

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005) ..........................................................................18, 19

*Debary v. Harrah's Operating Co., Inc.*,
    465 F. Supp. 2d 250 (S.D.N.Y. 2006) ................................................................21

*Dentons U.S. LLP v. Republic of Guinea*,
    208 F. Supp. 3d 330 (D.D.C. 2016) ...................................................................16

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
    722 F.3d 81 (2d Cir. 2013) ..................................................................... *passim*

*DSMC, Inc. v. Convera Corp.*,
    273 F. Supp. 2d 14 (D.D.C. 2002) .......................................................................8

*Expoconsul Int'l, Inc. v. A/E Sys., Inc.*,
    711 F. Supp. 730 (S.D.N.Y. 1989) .....................................................................20

*Exxon Mobil Corp. v. Schneiderman*,
    316 F. Supp. 3d 679 (S.D.N.Y. 2018) ..................................................................5

*Garza v. Marine Transp. Lines, Inc.*,
    861 F.2d 23 (2d Cir. 1988) .................................................................................23

*Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*,
    757 F. Supp. 2d 904 (W.D. Mo. 2010) .............................................................7, 8

*Harrington Glob. Opportunity Fund v. CIBC World Mkts. Corp.*,
    2023 WL 6316252 (S.D.N.Y. Sept. 28, 2023) ...................................................9, 10

*Indian Head, Inc. v. Allied Tube & Conduit Corp.*,
    560 F. Supp. 730 (S.D.N.Y. 1983) .....................................................................20

*Jund v. Hempstead*,
    941 F.2d 1271 (2d Cir. 1991) ..............................................................................16

*King v. Habib Bank Ltd.*,
    2022 WL 4537849 (S.D.N.Y. Sept. 28, 2022) .......................................................9

*Kingsepp v. Wesleyan Univ.*,
    763 F. Supp. 22 (S.D.N.Y. 1991) .................................................................15, 16

*Law v. NCAA*,
    134 F.3d 1010 (10th Cir. 1998) ..........................................................................25

iii

*In re Lernout & Hauspie Secs. Litig.*,
  230 F. Supp. 2d 152 (D. Mass. 2002) ..................................................................16

*Liga Nacional Futbol Profesional v. Real Federacion Española de Futbol*,
  Mercantile Court No. 12 of Madrid (Mar. 6, 2020) .............................................3

*Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*,
  332 F. Supp. 280 (S.D.N.Y. 1971) ................................................................18, 19

*NCAA v. Bd. of Regents of Univ. of Okla.*,
  468 U.S. 85 (1984) ..............................................................................................25

*Perks v. TD Bank, N.A.*,
  444 F. Supp. 3d 635 (S.D.N.Y. 2020) ..................................................................5

*In re Platinum & Palladium Antitrust Litig.*,
  449 F. Supp. 3d 290 (S.D.N.Y. 2020), *aff'd in part,* 61 F.4th 272 (2d Cir.
  2023) ...............................................................................................................12, 13

*Porina v. Marward Shipping Co.*,
  521 F.3d 122 (2d Cir. 2008) ....................................................................8, 10, 14

*In re Project Orange Assocs., LLC*,
  431 B.R. 363 (Bankr. S.D.N.Y. 2010) .................................................................16

*Redzepagic v. Hammer*,
  2017 WL 780809 (S.D.N.Y. Feb. 27, 2017) ........................................................22

*Relevent Sports, LLC v. USSF*,
  61 F.4th 299 (2d Cir. 2023) ......................................................................... *passim*

*Santamaria v. Hilton Worldwide, Inc.*,
  2020 WL 2036724 (SDNY Apr. 28, 2020) ............................................................7

*Shamrock Power Sales, LLC v. Scherer KM*,
  2015 WL 5730339 (S.D.N.Y. Sept. 30, 2015) ......................................................7

*Spinelli v. NFL*,
  903 F.3d 185 (2d Cir. 2018) ................................................................................22

*In re SSA Bonds Antitrust Litig.*,
  420 F. Supp. 3d 219 (S.D.N.Y. 2019) .................................................................18

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
  425 F.3d 119 (2d Cir. 2005) ...........................................................................20, 21

*In re Terrorist Attacks on Sept. 11, 2011*,
  714 F.3d 659 (2d. Cir. 2013) ................................................................................7

*Theatre Party Assocs., Inc. v. Shubert Org., Inc.*,
    695 F. Supp. 150 (S.D.N.Y. 1988) ................................................................25

*Trejos Hermanos Sucesores S.A. v. Verizon Comm'ns Inc.*,
    2023 WL 24237 (S.D.N.Y. Jan. 3, 2023) ........................................................7

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*,
    988 F. Supp. 367 (S.D.N.Y. 1997) ..........................................................20, 22

*United States v. Nat'l City Lines*,
    334 U.S. 573 (1948).......................................................................................15

*United States v. Scophony Corp.*,
    333 U.S. 795 (1948).......................................................................................15

*United States v. Uccio*,
    940 F.2d 753 (2d Cir. 1991).............................................................................6

*World Skating Fed'n v. Int'l Skating Union*,
    357 F. Supp. 2d 661 (S.D.N.Y. 2005)...........................................................17

## Statutes

15 U.S.C. § 1 ........................................................................................... *passim*

15 U.S.C. § 22 ......................................................................................... *passim*

Swiss Code Art. 75a...........................................................................................16

N.Y. C.P.L.R. § 302(a)(1)..................................................................................11

## Other Authorities

2 Moore's Fed. Prac. Civil § 12.31 (2022) .......................................................10

Plaintiff Relevent Sports, LLC ("Relevent") submits this Opposition to Defendant Fédération Internationale de Football Association's ("FIFA") second motion to dismiss the First Amended Complaint ("FAC"),[1] ECF No. 122 ("FIFA Mot.").

## PRELIMINARY STATEMENT

Dissatisfied with the Second Circuit's decision that it is subject to personal jurisdiction and then being denied rehearing on the matter, FIFA attempts to reargue this issue in its renewed motion to dismiss. This is wholly improper. It is the law of the case that jurisdiction over FIFA has been facially established on the pleadings. Further, if FIFA wishes to make an additional factual challenge to personal jurisdiction, it only can do so after full discovery on this issue. This is not news to FIFA. At the status conference before this Court, FIFA asked for a bifurcation of jurisdictional and merits discovery so that it could first pursue a factual attack on personal jurisdiction. But the Court rejected that request. *See* Scheduling Order, ECF No. 110; Tr. of July 20, 2023 Hr'g, ECF No. 111. The result is that there is no basis for FIFA to challenge personal jurisdiction now. It must first complete discovery, as ordered by the Court, and then, if it wishes, file a motion factually challenging personal jurisdiction after Relevent has the opportunity to conduct both document and deposition discovery on this issue.

The rest of FIFA's motion seeks to piggyback on USSF's arguments, contending that Relevent's antitrust claim is barred by the 2016 covenant not to sue, to which FIFA is not a party, or, alternatively, that Relevent fails to state a Section 1 violation. Neither argument has merit. FIFA is not a third-party beneficiary to the covenant between Relevent and USSF, and, even if it were, that covenant does not preclude Relevent's antitrust claims. Nor can there be any genuine

---

[1] Capitalized terms, acronyms and abbreviations herein have the same meaning as set forth in the FAC. Unless otherwise indicated, emphasis is added and internal citations and quotation marks are omitted throughout.

dispute that Relevent has plausibly alleged that FIFA's horizontal market division policy is a Section 1 violation under the per se rule, quick look analysis, or the full-blown rule of reason.

<u>**SUMMARY OF MATERIAL FACTUAL ALLEGATIONS**</u>

On this motion to dismiss, the following FAC allegations must be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).[2]

**A.    The Parties' Roles In Professional Soccer In The U.S.**

Headquartered in this District, Relevent is one of the preeminent soccer event promoters in the world. *See, e.g.*, FAC ¶¶ 16-18.  Having successfully hosted and promoted scores of exhibition games between foreign top-tier professional soccer teams, Relevent sought a FIFA sanction from USSF to bring official season games—those that count towards the participating teams' official league or tournament records—to the U.S. *Id.* ¶¶ 19-23, 111.  Absent such a sanction, it is impossible to promote soccer games in the U.S. because FIFA rules prohibit all of the top soccer leagues and their players from participating in unsanctioned games. *Id.* ¶¶ 11, 21, 37, 116.

New York non-profit corporation USSF, the designated FIFA National Association in the U.S., is authorized to act on FIFA's behalf to sanction, or refuse to sanction, professional soccer games played in the U.S. *Id.* ¶¶ 69-70.  Through its Bylaws, USSF and its members agree to adhere to all FIFA rules and policies "to the extent permitted by governing law." *Id.* ¶ 35 & n.12.

FIFA maintains an active presence in the governance of professional soccer in the U.S. (including in this District) both through the actions of USSF and through its direct licensing of Match Agents to promote FIFA sanctioned games. *Id.* ¶¶ 52-65.  For example, FIFA licensed

---

[2] Relevent recognizes that the Court is familiar with the material factual allegations relevant to this matter, and respectfully incorporates by reference the full recitation of the factual background contained in Relevent's February 5, 2021 Memorandum of Law in Opposition to Defendants FIFA's and USSF's Motions to Dismiss the Amended Complaint (ECF No. 77), at 2-6.  Relevent repeats here only the key facts that are central to FIFA's arguments.

former Relevent employee Charlie Stillitano and three other Match Agents in this District to promote sanctioned FIFA competitions. *Id.* ¶¶ 56-58. A licensed Match Agent is required to organize any foreign professional soccer league game to be played in the United States and sanctioned by USSF as the National Association of FIFA in the United States. *Id.* ¶ 56.

### B. Relevent's Efforts To Host Official Season Soccer Games In The U.S. Are Blocked By The FIFA Market Division Policy That Was Adopted In Response To Those Proposed Games.

Concerned that USSF's economic partner, MLS, would face competition from foreign official season games in the U.S., USSF sought FIFA's agreement to adopt a policy that would bar Relevent or any other promoter from promoting such games in this country.[3] *Id.* ¶¶ 71, 114. USSF officials used their roles in FIFA's decision-making bodies to persuade the FIFA Council, in 2018, to adopt the FIFA geographic market division policy, which prohibits FIFA members, and their leagues and teams, from playing official season games outside of their allocated territories. *Id.* ¶¶ 37-51, 114-17. This FIFA Policy, adopted in 2018, constituted concerted action directed at the United States in general and at Relevent in this District. It has the anticompetitive effect of protecting MLS's monopoly in the market for men's top-tier official season professional soccer league games in the United States, as well as the monopoly position of other top tier professional soccer leagues in their home countries. *Id.* ¶¶ 20, 89, 101, 163.

USSF Board Member and MLS Commissioner Don Garber, and then-USSF President Carlos Cordeiro, were members of the FIFA Stakeholders Committee, which agreed to recommend

---

[3] FIFA introduced a factual dispute concerning the LaLiga game between FC Barcelona and Girona FC, the hosting of which Relevent had secured through agreement with LaLiga. FAC ¶ 111. FIFA argues that this game was ultimately barred because of the decision in *Liga Nacional Futbol Profesional v. Real Federacion Española de Futbol*, and therefore "could never have happened in the United States, entirely apart from any action by FIFA or USSF." FIFA Mot. at 3-4 (citing Mercantile Court No. 12 of Madrid (Mar. 6, 2020)). FIFA's statement blatantly disregards the basis of the Spanish court's holding. The court found that, *given the FIFA rules on International Match Regulation*, it was reasonable for RFEF to refuse to permit moving the match from Spain to Miami. *Id.* at 13. In other words, the refusal was expressly attributed to the FIFA policy challenged by Relevent in the FAC.

that the FIFA Council adopt the horizontal geographic market division policy.  *Id.* ¶¶ 42-45.

Garber regularly conducted FIFA Stakeholders Committee business from his office at MLS

headquarters in this District.  *Id.* ¶ 45.  At the FIFA Stakeholders Committee's urging, the FIFA

Council adopted the market division policy in 2018.  *Id.* ¶ 117.  Former USSF President and MLS

executive Sunil Gulati participated in the FIFA Council's consideration and adoption of the market

division policy.  *Id.* ¶¶ 38-40.  Gulati resides in this District and regularly conducted FIFA Council

business here.  *Id.* ¶ 40.  As a condition of their FIFA affiliation, each National Association

(including USSF) and its member leagues and teams agreed to adhere to the market division policy,

which had anticompetitive effects on Relevent doing business in this District.  *Id*. ¶¶ 2-6, 98.

## PROCEDURAL HISTORY

Relevent filed its initial complaint against USSF on September 9, 2019, and USSF moved

to dismiss.  ECF Nos. 2, 33.  On July 20, 2020, the Court dismissed Relevent's antitrust claim

without prejudice, holding that additional factual allegations were needed to support the claimed

agreement to restrain trade.  ECF No. 47 at 12-18.  The Court also held that FIFA had to be joined

as a defendant in order to enjoin USSF's enforcement of the FIFA policy.  *Id*. at 15 n.12.  On

September 14, 2020, Relevent filed the FAC, adding new conspiracy and jurisdictional allegations

and joining FIFA as a defendant.  ECF No. 57.  Defendants moved to dismiss the FAC for failing

to state a claim, and FIFA also moved on the basis that the FAC failed to plead sufficient facts to

establish personal jurisdiction over FIFA.  ECF Nos. 66, 69.  Relevent opposed.  ECF No. 77.  On

July 23, 2021, the Court granted Defendants' motions to dismiss for failing to plead concerted

action; the Court did not decide FIFA's jurisdictional motion.  ECF No. 98.

Relevent appealed the dismissal.  ECF No. 100.  On March 7, 2023, after briefing and

argument, the Second Circuit held that Relevent had sufficiently alleged a violation of Section 1

of the Sherman Act against both FIFA and USSF by challenging the FIFA market division policy.

ECF Nos. 104, 104-1.  The Second Circuit further held that the FAC facially established personal

jurisdiction over FIFA, finding that its allegations, taken as true, established that USSF acted as

FIFA's agent in this District to implement FIFA rules, including the market division policy.  ECF

No. 104-1 at 11.  This case was then remanded to this Court for further proceedings.  *Id*. at 25.

On April 4, 2023, FIFA filed a petition for panel rehearing of the Second Circuit's

jurisdictional ruling, which was denied.  *Relevent Sports, LLC v. USSF*, Case No. 21-2088, ECF

Nos. 146, 153 (2d Cir.).  FIFA did not seek Supreme Court review.  On remand, FIFA proposed

"that discovery should be phased, beginning with limited jurisdictional discovery."  ECF No. 106.

The Court rejected FIFA's proposal.  On December 11, 2023, Defendants again moved to dismiss

the FAC.  ECF Nos. 122, 130.

## LEGAL STANDARDS

At the pleading stage, Relevent "need only make a prima facie showing" of jurisdiction

over FIFA.  *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 696 (S.D.N.Y. 2018)

(Caproni, J.).  "[A] prima facie showing suffices, *notwithstanding any controverting presentation*

*by the moving party*, to defeat the motion."  *Allianz Glob. Invs. GMBH v. Bank of Am. Corp.*, 457

F. Supp. 3d 401, 407 (S.D.N.Y. 2020) (emphasis in original); *see also Dorchester Fin. Sec., Inc.*

*v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (quoting *Allianz* and finding the plaintiff made

a prima facie showing of jurisdiction).  On a 12(b)(2) motion, "[t]he Court will construe all

pleadings and affidavits in the light most favorable to the plaintiff and resolve all doubts in the

plaintiff's favor."  *Exxon Mobil*, 316 F. Supp. 3d at 696.

To state a claim against FIFA, the FAC need only contain "allegations sufficient to raise

an entitlement to relief above the speculative level," *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635,

639 (S.D.N.Y. 2020) (Caproni, J.), i.e., "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement," *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where such factual allegations are made, "[a] court ruling on a [12(b)(6)] motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Anderson News*, 680 F.3d at 185.

When an appellate court rules on an issue, "it is the appellate court's decision that is law of the case." *Am. Hotel Int'l Grp. Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 378 (S.D.N.Y. 2009). Such rulings are binding on the parties and must be followed by the district court. *Id.*

## ARGUMENT

### I.    IT IS LAW OF THE CASE THAT THE FAC ESTABLISHES PRIMA FACIE PERSONAL JURISDICTION OVER FIFA.

FIFA's latest motion to challenge personal jurisdiction under the FAC must be rejected out of hand, as it attempts to relitigate binding law of the case. The Second Circuit unequivocally held that Relevent's "allegations establish, at the pleading stage," that "FIFA is subject to personal jurisdiction in this case" and that "FIFA also has the minimum contacts with New York necessary to satisfy constitutional due process principles." *Relevent Sports, LLC v. USSF*, 61 F.4th 299, 305-06 (2d Cir. 2023) ("*Relevent II*"). FIFA petitioned for panel rehearing to challenge this determination (ECF No. 146) but was denied. *Relevent Sports, LLC v. USSF*, Case No. 21-2088, ECF No. 153 (2d Cir. Apr. 20, 2023).

The Second Circuit's rulings on this jurisdiction issue are binding law of the case. On remand, this Court may not question those rulings. *See United States v. Uccio*, 940 F.2d 753, 757

(2d Cir. 1991) ("When an appellate court has once decided an issue, the trial court, at a later state in the litigation, is under a duty to follow the appellate court's ruling on that issue."); *OneBeacon Ins. Co.*, 611 F. Supp. at 378.  Accordingly, FIFA cannot ask this Court to reconsider whether the FAC facially pleads sufficient facts to establish personal jurisdiction over FIFA.  That issue has been resolved by the Court of Appeals.

FIFA tries to evade the Second Circuit's ruling by impermissibly adding new "facts" to the record at the pleading stage.  *See* Decls. of Sunil Gulati, Don Garber, Thomas King, Emilio Garcio Silvero, ECF Nos. 123-26; FIFA Mot., *passim*.[4]  It submits "new sworn evidence" purportedly to prove that the allegations supporting Defendants' agency relationship "are demonstrably false." FIFA Mot. at 1.  And it contends the law allows that "FIFA may now present evidence disproving Relevent's allegations" to overcome the Second Circuit's jurisdictional ruling.  *Id*. at 7.  In support of this approach, FIFA cites a single, out-of-circuit case in which—unlike here—the parties had already engaged in *some* bilateral discovery, including requests for production, interrogatories, and the exchange of discovery from a related arbitration.  *Id.* (citing *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 913 (W.D. Mo. 2010)).[5]  These distinctions refute

---

[4] Relevent disputes that these declarations contain "facts" at all; they instead advance legal conclusions, including that FIFA is not able to "control" USSF's actions (Garcia Decl. ¶ 10), that USSF is not "authorized" to act on behalf of FIFA (Gulati Decl. ¶¶ 6-7; Garcia Decl. ¶ 9), and that certain directors of USSF have never been authorized to act as "agents of FIFA" (Gulati Decl. ¶ 8; Garber Decl. ¶ 2).  *See* FIFA Mot. at 10.  FIFA's attempts to introduce such legal conclusions through its declarants are inappropriate and cannot be used to contradict Relevent's well-pled jurisdictional allegations, nor what is now the law of the case.  *See Trejos Hermanos Sucesores S.A. v. Verizon Comm'ns Inc.*, 2023 WL 24237, at *1 (S.D.N.Y. Jan. 3, 2023) ("Where a declaration contains both lay testimony and impermissible expert or legal testimony, courts may preclude the latter[.]"); *see also Shamrock Power Sales, LLC v. Scherer KM*, 2015 WL 5730339, at *18-19 (S.D.N.Y. Sept. 30, 2015) (striking declarations for improper legal conclusions); *see also Relevent II*, 61 F.4th at 305.

[5] FIFA's other citations (at 7-8) to support looking beyond the pleadings offer it no support in *this* action, as those cases either did not consider contrary factual submissions from defendants (*In re Terrorist Attacks on Sept. 11, 2011*, 714 F.3d 659, 673 (2d. Cir. 2013)); applied the same standards as cited herein (*id.* at 673 ("If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.")); found no prima facie showing had been made (*In re Aluminum Warehousing Antitrust Litig*., 2015 WL 6472656, at *2 (S.D.N.Y. Oct. 23, 2015); *Santamaria v. Hilton Worldwide, Inc.*, 2020 WL 2036724, at *2 (SDNY Apr. 28, 2020)); or are out-of-circuit outlier

the proposition that FIFA may defeat Relevent's prima facie jurisdictional allegations, already

found by the Second Circuit to be sufficient, if it "develop[s]" the record "further." *Hallmark*, 757

F. Supp. 2d at 912.  This is a distortion of the law.

While a defendant may mount a factual challenge to personal jurisdiction, such a challenge

can only be considered after a full opportunity to conduct jurisdictional discovery.  As the Second

Circuit has explained, the personal jurisdiction determination "varies depending on the procedural

posture of the litigation." *Dorchester*, 722 F.3d at 84.  Here, because the case is still at the pleading

stage and discovery has not been taken on jurisdictional issues, Relevent "may defeat the motion

by pleading in good faith, legally sufficient allegations of jurisdiction." *Id.* at 84-85 ("If the

defendant is content to challenge only the sufficiency of the plaintiff's factual allegation, in effect

demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its

factual allegations constitute a *prima facie* showing of jurisdiction.").  Indeed, when a district court

"relies on pleadings and affidavits, and does not conduct a full-blown evidentiary hearing," the

court must "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving

***all*** doubts in their favor." *Id*. at 85; *see also Porina v. Marward Shipping Co.*, 521 F.3d 122, 126

(2d Cir. 2008).  Relevent's prima facie showing of personal jurisdiction over FIFA has been

resolved as the law of the case by the Second Circuit, and it may not now be questioned by FIFA

through the submission of self-serving "fact" declarations without discovery.

But FIFA already knows this.  That is why FIFA proposed that the Court permit personal

jurisdiction discovery to go forward before merits discovery commenced.  ECF No. 106.  At the

subsequent status conference, however, the Court considered the substantial overlap between

personal jurisdiction and merits discovery and rejected FIFA's proposal.  Tr. of July 20, 2023 Hr'g,

---

cases that themselves cite to yet another jurisdiction to find support for the cited proposition (*DSMC, Inc. v. Convera Corp*., 273 F. Supp. 2d 14, 20 (D.D.C. 2002)).

ECF No. 111 at 10:13-11:11.  The Court directed that merits and jurisdictional discovery proceed simultaneously.  *Id.*  The parties are at the early stages of that process, with no documents yet produced and no depositions taken.  *See* Feb. 2024 Joint Monthly Status Report, ECF No. 139.

At the current stage, this Court cannot consider any of the new jurisdictional evidence presented by FIFA before Relevent has the opportunity to take discovery and have an evidentiary hearing on this issue.  *See Harrington Glob. Opportunity Fund v. CIBC World Mkts. Corp.*, 2023 WL 6316252, at *3 (S.D.N.Y. Sept. 28, 2023) (emphasis in original) (declining to consider Canadian defendants' "evidence to dispute the fact or extent of their trades on U.S. exchanges" because, "until an evidentiary hearing is held, a prima facie showing suffices, *notwithstanding any controverting presentation by the moving party*, to defeat the motion").  Indeed, where a prima facie showing has been made, it is legal error to consider such jurisdictional evidence prior to discovery and a full evidentiary hearing, even in a case where the defendant "offer[s] an overwhelming amount of 'direct, highly specific testimonial evidence' to show that it had no contacts with [the plaintiff] and the United States and that the documents submitted by [the plaintiff] were forgeries, none of which [evidence] [the plaintiff] . . . sufficiently refuted." *Dorchester,* 722 F.3d at 84.  In *Dorchester*, even though the Second Circuit agreed that the defendant's jurisdictional evidence tended to show that the documents the plaintiff's prima facie showing relied on were forgeries, the court nonetheless held that, "in the absence of an evidentiary hearing, it was error for the district court to resolve that factual dispute in [the defendant's] favor." *Id*. at 86; *see also, e.g.*, *King v. Habib Bank Ltd.*, 2022 WL 4537849, at *3 (S.D.N.Y. Sept. 28, 2022) (denying motion to dismiss because prima facie jurisdictional case had been made and declarations disputing that the defendants had processed transactions through New York "[we]re properly considered at a later stage of the proceedings").

Because this Court has already recognized that jurisdictional discovery in this case is intertwined with merits discovery (*see* Scheduling Order, ECF No. 110; Tr. of July 20, 2023 Hr'g, ECF No. 111), any factual challenge by FIFA to personal jurisdiction must be deferred until after the close of discovery.  As the Second Circuit has observed, although "[a]n evidentiary hearing to settle the matter of personal jurisdiction is appropriate when the jurisdictional facts are not entwined with the facts as to merits issues," where, as here, the issues are intertwined, "it is usually preferable that the prima facie method be followed, and the jurisdictional determination be made at trial" or on summary judgment.  *Harrington*, 2023 WL 6316252, at *3 (citing 2 Moore's Fed. Prac. Civil § 12.31 (2022)); *see also Dorchester*, 722 F.3d at 87.

Here, as the Court has observed, there is substantial overlap between the fact issues going to the merits and the fact issues relating to personal jurisdiction over FIFA.  This is especially true because Relevent is asserting personal jurisdiction over FIFA not just on the agency grounds that the Second Circuit has already found sufficient on the pleadings, but also on the alternative grounds raised in Relevent's prior opposition to Defendants' motions to dismiss, which include conspiracy jurisdiction under *Schwab*.  *See* Opp'n to Defs.' Mot. to Dismiss, ECF No. 77 at 8-24.  The facts relating to conspiracy jurisdiction, as discussed below, overlap substantially with the facts relating to the merits of Relevent's antitrust conspiracy claim.  The same witnesses will be involved (e.g., the participants in the conspiratorial discussions) and the same documents will be relevant (those showing the scope and intent of the conspiracy).  For all these reasons, the Court correctly found that discovery should not be bifurcated.  It thus follows that such issues cannot be considered now, prior to any jurisdictional discovery and a full evidentiary hearing on these issues.  *See Dorchester*, 722 F.3d at 84-86; *Porina*, 521 F.3d at 126 n.4.

II.     **THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER FIFA ON SEVERAL ALTERNATIVE GROUNDS.**

At this point, there should be no jurisdictional point left to argue.  However, for the Court's convenience, the following is an overview of each basis for personal jurisdiction over FIFA that Relevent has asserted.  These bases confirm that discovery must take place, followed by an evidentiary hearing or trial, before any fact-based challenge to jurisdiction can be adjudicated.

A.     **New York's Long-Arm Statute Authorizes Jurisdiction Over FIFA.**

As the Second Circuit has already determined, the FAC demonstrates, prima facie, that New York's long-arm statute permits this Court to exercise personal jurisdiction over FIFA. *Relevent II*, 61 F.4th at 305.  New York's long-arm statute allows the "exercise [of] personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1).  The FAC establishes jurisdiction over FIFA because it plausibly alleges that either FIFA or its agent, USSF, engaged in far more than a single transaction in New York related to Relevent's antitrust claim.  FAC ¶¶ 54-57, 60, 62-65.  The Second Circuit specifically found that the FAC plausibly alleges that "USSF . . . is FIFA's agent and transacts substantial business on behalf of FIFA in New York. . . . These allegations establish, at the pleading stage, that USSF 'acted in New York for the benefit of, with the knowledge and consent of, and under some control by' FIFA." *Relevent II*, 61 F.4th at 305 (citing *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018)).  Because USSF's actions subjected USSF to personal jurisdiction in New York, "[t]hat USSF undertook those actions as FIFA's agent is thus sufficient to subject FIFA to personal jurisdiction in New York as well." *Id.*

FIFA seeks to challenge this determination with self-serving declarations and selected documents.  FIFA Mot. at 7; Gulati Decl., ECF No. 123; Garber Decl., ECF No. 124.  But even if FIFA could introduce such contested facts at this stage, which it cannot in light of Relevent's prima

11

facie jurisdictional showing, its declarations fail to address all of the USSF and FIFA contacts in this District that have been alleged. *See, e.g.*, FAC ¶¶ 56-59 (licensing of match agents); 62 (broadcasting agreements with New York-based FOX and NBCUniversal). Moreover, where the declarations do address specific allegations, they do nothing but raise impermissible factual disputes. *Compare* FAC ¶ 61 (alleging that a portion of funding provided by FIFA has "been dispensed to promote soccer in this District") *with* King Decl. ¶ 6 ("the provision of these funds does not give FIFA control over the operations of USSF"). For the reasons stated above, such factual challenges cannot be made until a full evidentiary hearing on these issues has been held.

**B.    The Second Circuit's *Schwab* Conspiracy Theory Of Jurisdiction Also Provides This Court With Personal Jurisdiction Over FIFA.**

Putting aside FIFA's disputes with the Second Circuit's agency determination, FIFA's only response to Relevent's alternative ground for the Court's jurisdiction over FIFA under the *Schwab* conspiracy doctrine is to factually challenge the FAC allegations that USSF acted "in furtherance of the conspiracy." FIFA Mot. at 16-17 (citing FIFA's own "evidence" of Gulati's and Garber's non-involvement in the conspiracy). As with FIFA's other factual disputes regarding the Court's jurisdiction, this too must await an evidentiary hearing as a prima facie basis for jurisdiction has been pled. *Dorchester,* 722 F.3d at 84-86. The *Schwab* conspiracy doctrine establishes personal jurisdiction where: "(1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Schwab*, 883 F.3d at 87. The test is "extraordinarily broad" and may be established, prima facie, by the allegations in the FAC. *See In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 325-26 (S.D.N.Y. 2020), *aff'd in part*, 61 F.4th 272 (2d Cir. 2023). Indeed, the conspiracy jurisdiction test is broader than the agency jurisdiction the Second Circuit already found was adequately pled here: while the issue of

control has been held to be relevant for establishing agency for jurisdictional purposes, "[courts] have squarely rejected that limitation on conspiracy jurisdiction." *Platinum*, 61 F.4th at 272.

It is therefore apparent that, to decide conspiracy jurisdiction in this case, the Court would need to determine numerous fact issues concerning the scope of the alleged conspiracy and the conspiratorial actions engaged in, in this District, by USSF as FIFA's co-conspirator or by FIFA itself. The FIFA declarations do not address these conspiracy issues, which will require both the completion of fact discovery and a full hearing or trial to resolve. As this Court knows, this District regularly exercises conspiracy jurisdiction over foreign entities alleged to have participated in an antitrust conspiracy impacting U.S. commerce. *E.g.*, *Allianz*, 457 F. Supp. 3d at 409; *Platinum*, 61 F.4th at 274; *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 296 (S.D.N.Y. 2019).

The FAC plausibly alleges that USSF (a New York corporation) took specific, repeated, and overt actions in New York to carry out the market division conspiracy with FIFA by blocking promoters, including Relevent (a New York company), from hosting or promoting official season games anywhere in the U.S. *E.g.*, FAC ¶¶ 111-17, 123-34. Indeed, USSF referenced its agreement to follow the FIFA policy numerous times, including in a New York state court filing, to justify its refusal to permit Relevent to promote official season soccer games in the U.S.[6] *Id.* ¶¶ 124-34.

The FAC also alleges that, as part of the alleged conspiracy, USSF regularly acts on behalf of FIFA to authorize soccer games and collect fees in New York, including for at least six games played in this District since 2013. *Id.* ¶¶ 55-60, 84; *contra* FIFA Mot. at 16. And USSF Board members Garber and Gulati—as FIFA Stakeholders Committee and Council members, respectively—are alleged to have conducted FIFA business in this District as part of the

---

[6] USSF's invocation of its agreement to follow the FIFA policy further negates FIFA's disputed assertion that "FIFA is not able to control USSF's actions." FIFA Mot. at 10 (citing Garcia Decl. ¶ 10). USSF's explanation that it "was required to follow FIFA's requirements" demonstrates the control FIFA exercises over USSF. *See Relevent Sports, LLC v. USSF*, Index No. 154104/2019, NYSCEF 48 (Sup. Ct. May 17, 2019), at 24.

conspiracy. *Id.* ¶¶ 38-51, 77-78, 84.  Specifically, it is alleged that Garber and Gulati participated in promulgating and supporting the adoption and implementation of the 2018 market division policy through their work in this District, which policy was applied to prohibit Relevent, in this District, from promoting any official season games.  *Id.*  The Garber and Gulati Declarations do not address or dispute these facts (FIFA Mot. at 17)—instead drawing the legal conclusion that they did not "take any action on behalf of FIFA" (Gulati Decl ¶ 9; Garber Decl. ¶ 5)—which will require discovery and a trial to resolve.  *See, e.g.*, *Porina*, 521 F.3d at 126.

Moreover, the FAC plausibly alleges that FIFA has not only been aware of USSF's in-forum overt acts in furtherance of the alleged conspiracy, but also consulted with and provided "guidance" to USSF on how to implement the market division policy in this District with respect to Relevent.  *E.g.*, FAC ¶¶ 117, 130.  This concerted action by FIFA and USSF in this District to implement the market division policy against Relevent is dispositive of the Court's jurisdiction over FIFA, as even a foreign defendant's mere "aware[ness] of [its] co-conspirator[']s in-forum overt acts" is enough to establish jurisdiction under the conspiracy doctrine.  *Contant*, 385 F. Supp. 3d at 292-93, 295; *Allianz*, 457 F. Supp. 3d at 412.  Here, it is alleged that FIFA was well aware it was instructing USSF to enforce the market division policy by denying a sanction for any foreign men's top-tier official season games that Relevent sought to organize or promote in the U.S., from its New York headquarters.  FAC ¶¶ 111-18, 123-30.  If FIFA wants to dispute these facts it can only do so after discovery at an evidentiary hearing or trial.

### C.    This Court Also Has Personal Jurisdiction Over FIFA Under Section 12 of the Clayton Act.

FIFA's "new evidence" has no bearing on the fact that the Clayton Act's authorization of worldwide service of process on corporate defendants also provides a statutory basis for personal jurisdiction over FIFA.  *See* 15 U.S.C. § 22.  While FIFA claims that it is exempt from Clayton

Act jurisdiction because it is a Swiss verein, that argument has never been ruled upon by either this Court or the Second Circuit.  If this Court were to conclude, after discovery and an evidentiary hearing, that personal jurisdiction over FIFA had not otherwise been factually established, it would still be appropriate to find jurisdiction over FIFA based on Section 12 of the Clayton Act.

Congress enacted the Clayton Act "to provide broader and more effective relief, both substantively and procedurally, for persons injured by violations of its antitrust policy."  *United States v. Nat'l City Lines*, 334 U.S. 573, 581 (1948).  Section 12, in particular, was designed to "substitut[e] practical, business conceptions for the previous hair-splitting legal technicalities," which had allowed foreign businesses to "come to a district, perpetrate there the injuries outlawed [by the Sherman Act], and then by retreating . . . to [their] headquarters defeat or delay the retribution due"—exactly what FIFA seeks to do here.  *See United States v. Scophony Corp.*, 333 U.S. 795, 808 (1948).  Having transacted business in this District, violated U.S. antitrust laws directed at commerce in this District, and retreated back to its headquarters in Switzerland, FIFA invokes a "hair-splitting legal technicality" to argue that Section 12 should not apply.  Specifically, FIFA argues (at 12-13) that because it is a "Swiss non-profit association," it is not a "corporation" subject to Section 12.  FIFA's argument would, if accepted by this Court, contravene Congress's intent that the Clayton Act be broadly applied to foreign businesses, operating in corporate form, that direct their actions to restrain trade in the U.S. and thereby undermine federal antitrust policy.

### 1.    FIFA Is A "Corporation" Under The Clayton Act.

FIFA attempts to portray itself as a "voluntary association," rather than a "corporation," in order to exempt itself from Section 12 of the Clayton Act.  FIFA Mot. at 12 (citing *Kingsepp v. Wesleyan Univ.*, 763 F. Supp. 22, 25 (S.D.N.Y. 1991)).  But FIFA is not a "voluntary association" (or other "non-corporate" entity) that would fall within the *Kingsepp* exception to Section 12.  *See*

763 F. Supp. at 25.  Rather, FIFA is organized under Article 60 of the Swiss Civil Code (ECF No. 70 ¶ 3), which, by its title, governs a "*corporate* group of persons."[7]

Specifically, FIFA is organized as a corporate entity called a Swiss "verein."  FIFA Mot. at 12.  "Verein" literally translates to "association" in English.[8]  But as a legal entity, a Swiss verein is not an unincorporated "voluntary association" as that concept is understood in the U.S. To the contrary, courts have recognized that, while the Swiss verein "has no precise counterpart in the United States," it "is essentially an incorporated membership association."  *In re Project Orange Assocs., LLC*, 431 B.R. 363, 368 n.2 (Bankr. S.D.N.Y. 2010); *accord Dentons U.S. LLP v. Republic of Guinea*, 208 F. Supp. 3d 330, 344 (D.D.C. 2016); *In re Lernout & Hauspie Secs. Litig.*, 230 F. Supp. 2d 152, 171 (D. Mass. 2002).  Organizational characteristics demonstrate that a verein is the Swiss equivalent of a U.S. corporate entity and should be subject to Section 12.

Like the shareholders of a U.S. corporation, FIFA's members enjoy the benefits of limited liability, while the members of a U.S. voluntary association, by contrast, are jointly and severally liable.  *Compare* Swiss Code Art. 75a (limited liability for Swiss vereins), *with Jund v. Hempstead*, 941 F.2d 1271, 1278 n.1 (2d Cir. 1991) ("all liability [of an unincorporated association] is that of each member individually").  Similarly, like a U.S. corporation, FIFA is a separate entity from its members and can sue and be sued in its own right, while an unincorporated voluntary association in the U.S. is not a separate entity and cannot be sued as such.  *Compare Dentons*, 208 F. Supp. 3d at 344 (Swiss verein "is legally distinct from its members") *with Jund*, 941 F.2d at 1278 n.1 ("unincorporated association has no existence independent of its members"); *see also* FAC ¶ 161.

---

[7] SCHWEIZERISCHES ZIVILGESETZBUCH [ZGB] [CIVIL CODE], Dec. 10, 1907 (rev. Jan. 1, 2019), SR 210, RS 210, art. 60, https://www.fedlex.admin.ch/eli/cc/24/233_245_233/en#art_60 (Eng. trans.) (last visited Feb. 4, 2024).
[8] *Verein*, DICTIONARY.COM, https://www.dictionary.com/browse/verein (last visited Feb. 7, 2024).

FIFA's attempt to reap the benefits of the Swiss equivalent of a corporate form while decrying its corporate status under the Clayton Act should be rejected. Any contrary ruling would neuter both public and private enforcement of the antitrust laws against foreign corporate transgressors. Specifically, a foreign entity seeking corporate protections of limited liability and legal separation, while committing antitrust violations directed at the United States, should not be able to claim that it is immune from personal jurisdiction under the Clayton Act solely because it has chosen a Swiss form of corporate organization. *Cf. Assoc'd Press v. United States*, 326 U.S. 1, 19 (1945) ("[A]rrangements or combinations designed to stifle competition cannot be immunized by adopting a membership device accomplishing that purpose."). This Court should not interpret Section 12 to permit such a result, which would be contrary to the stated intent of Congress to apply this jurisdictional section broadly to cover all corporate antitrust transgressors.

FIFA's claim that the Clayton Act does not authorize personal jurisdiction over a Swiss verein relies on a single district court decision that summarily stated Swiss "associations" were "not 'corporations' subject to Section 12." FIFA Mot. at 12 (citing *World Skating Fed'n v. Int'l Skating Union*, 357 F. Supp. 2d 661, 664 (S.D.N.Y. 2005)). That decision, however, has no persuasive power. First, *World Skating* only addressed the Clayton Act in passing, focusing its jurisdictional analysis on the New York long-arm statute. *See* 357 F. Supp. 2d at 664-67. Second, the *World Skating* court did not consider (as Relevent alleges here) that a Swiss verein is, in fact, a corporate entity under Swiss law, mistakenly believing the defendant was an unincorporated association and that Section 12 could not be applied based solely on alleged corporate "similarities." *See id.* at 664. Relevent does not claim that a verein is merely similar to a corporate entity. It contends that FIFA—as a verein—***is in fact*** a corporate entity under Swiss law. If the Court needs to determine this issue, it would be appropriate to consider at trial the testimony of

foreign legal experts on whether a Swiss verein is, or is not, a corporate form of organization. In any event, this disputed issue cannot be determined against Relevent on the face of the FAC.

### 2.    Venue Is Proper In This District Under The Clayton Act.

In this Circuit, the Clayton Act's grant of personal jurisdiction applies "only to suits where venue is proper" under Section 12, i.e., suits filed in "the judicial district where the corporation is an inhabitant, may be found, or transacts business." *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 230 (S.D.N.Y. 2019) (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005)). Venue is proper if FIFA "transacts business" in this District "of any substantial character"; i.e., "more than a few isolated and peripheral contacts with the particular judicial district." *Id.* FIFA's alleged activities in this District more than satisfy this standard, which "was intentionally added by Congress to broaden venue in anti[]trust cases and to further the sound remedial policy of allowing an aggrieved party a larger number of available forums in which to litigate." *Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 332 F. Supp. 280, 281 (S.D.N.Y. 1971).

FIFA's claim (at 14) that it only engaged in "occasional, fleeting business activities" in this District is belied by the FAC (¶¶ 56, 62-65) and FIFA's own caselaw. In *Daniel*, the Second Circuit explained that an entity "transacts business in a district when it enforces its standards against constituent organizations through direct, continual supervision of those organizations in the judicial district." 428 F.3d at 429. That is the very type of conduct, in this District, alleged of FIFA here. FAC ¶¶ 114-130.

Specifically, Relevent alleges that FIFA has applied and enforced its geographic market division policy in this District. *Id.* As a FIFA National Association, USSF agreed to "comply fully" with FIFA's rules and regulations "at any time." FAC ¶ 34. And USSF specifically stated that it was applying the FIFA policy as the basis for denying Relevent's requests for a sanction of the official season games Relevent sought to promote. FAC ¶¶ 128-30.

18

Indeed, the FAC alleges that FIFA's enforcement of the market division agreement targeted Relevent in this District.  FAC ¶¶ 111-30.  After Relevent sought to hold an official season LaLiga game in the U.S., USSF brought the issue to the FIFA Council, which responded by adopting and announcing the FIFA policy prohibiting its members from participating in or sanctioning any official season games outside of a league's home territory.  *Id.* ¶¶ 114-17.  The FIFA policy caused FC Barcelona to withdraw from the game and forced Relevent to identify two new teams to play an official season game in the U.S.  *Id.* ¶¶ 121-23.  When Relevent sought a sanction from USSF for this new event, FIFA agreed with USSF that the market division policy prohibited USSF from sanctioning such a game.  *Id.* ¶¶ 124, 129-30.  FIFA's enforcement of the challenged market division policy through USSF, its New York-incorporated member, against Relevent, a New York-headquartered company, constituted "transacting business" in New York under Section 12.  *See Daniel*, 428 F.3d at 429.

If FIFA wants to dispute any of these factual allegations, it may only do so at an evidentiary hearing or trial after fact discovery is completed.  The same is true of the allegations about various other ways in which FIFA transacts business in this District that would establish venue.  The "transacts business" test "does not require that the activities to be counted for venue purposes be among those which are within the subject matter of the suit."  *Auto Brokers*, 332 F. Supp. at 282; *contra* FIFA Mot. at 13-14.  Venue can be established here by the litany of other business activities FIFA has conducted in this District.  For example, FIFA negotiated multi-year broadcasting agreements worth approximately $1 billion in this District with FOX and NBCUniversal (Telemundo), which are headquartered in this District.  FAC ¶ 62.  A "chief indicator of 'transacts business'" is whether the dollar volume of business a defendant conducts in the District "is substantial from the point of view of the average businessman."  *Auto Brokers*, 332 F. Supp. at

282.  If FIFA wants to dispute this allegation, it must first submit to discovery about all of its transactions in this District, after which the Court may determine these fact issues at a trial or evidentiary hearing.  *See Expoconsul Int'l, Inc. v. A/E Sys., Inc.*, 711 F. Supp. 730, 734 (S.D.N.Y. 1989); *Indian Head, Inc. v. Allied Tube & Conduit Corp.*, 560 F. Supp. 730, 732 (S.D.N.Y. 1983).

## III.   THE 2016 RELEASE AND COVENANT NOT TO SUE DO NOT BAR RELEVENT'S ANTITRUST CLAIMS AGAINST FIFA.

This Court need not spend substantial time considering FIFA's frivolous argument that the release and covenant not to sue in the 2016 Settlement Agreement ("Settlement") between Relevent and USSF provide any protection to FIFA, a non-party.  There is nothing in the text of the Settlement that FIFA can cite which would suggest that it was intended to release any claims against FIFA or to make FIFA a third-party beneficiary of that release or covenant not to sue.

To invoke a release of claims of this type, FIFA must satisfy its "burden of demonstrating that [it] has an enforceable right" under the Settlement.  *City of Almaty v. Sater*, 2019 WL 6681560, at *11 (S.D.N.Y. Dec. 6, 2019).  And the Settlement must be "strictly construed against" FIFA as the party relying on it.  *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 440 F. Supp. 2d 342, 345 (S.D.N.Y. 2006).  FIFA has not come close to satisfying this burden.

### A.   FIFA Is Not A Party Or A Third-Party Beneficiary Of The Settlement.

"[I]n order to recover as a third-party beneficiary of a contract," FIFA "must establish that the parties to the contract intended to confer a benefit on [FIFA]."  *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005).  In conducting this analysis, it is "the intention of the promisee"—here, Relevent—that "governs."  *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 988 F. Supp. 367, 371 (S.D.N.Y. 1997).

FIFA does not dispute that it is not a party to the Settlement between Relevent and USSF. Nor does it argue that it was involved in the dispute that was settled by that agreement.  Instead,

FIFA argues that it is a third-party beneficiary of the Settlement because it authorized USSF to sanction International Games.  FIFA Mot. at 17-18.  But, under governing New York law, a third party is an intended beneficiary of an agreement only if "no one other than the third-party can recover if the promisor breaches the contract[,] or the contract language should otherwise clearly evidence an intent to permit enforcement by the third-party."  *Debary v. Harrah's Operating Co., Inc.*, 465 F. Supp. 2d 250, 263-64 (S.D.N.Y. 2006); *see also Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 185 (S.D.N.Y. 2009).  Here, FIFA does not even try to suggest that it is the only party that can recover in the event of a breach of the Settlement by Relevent, as USSF has standing to enforce the release and covenant not to sue.  *See* FIFA Mot. at 17-18.  And neither of the two provisions FIFA cites from the Settlement provides any evidence, let alone "clear evidence," that Relevent intended for FIFA to be a third-party beneficiary—nor does any other language of the Settlement.

"The terms contained in the contract must *clearly* evince an intention to benefit the third person who seeks the protection of the contractual provisions."  *Debary*, 465 F. Supp. 2d at 263.  FIFA cannot meet this requirement.  FIFA cites to a recital in the Settlement that FIFA is the entity that authorizes USSF to sanction International Games played in the U.S.  FIFA Mot. at 18.  But acknowledging such a relationship in a recital is wholly insufficient to indicate a clear intention to confer any third-party beneficiary status on FIFA.  Here, as in *Subaru*, "[c]ontract language referring to third parties as necessary to assist the parties in their performance does not therefore show an intent to render performance for the third party's benefit[.]"  425 F.3d at 126.  Moreover, the Settlement makes *no* reference to FIFA in the covenant not to sue or the release—the two provisions at issue in this case.  *Compare* Settlement (ECF No. 34-6) Art. 1 *with id.* Arts. 3-4.  The mere fact that Relevent and USSF reference FIFA in the recitals "does not evidence an intent to

permit enforcement" by FIFA of the release or the covenant, or any other operative sections of the Settlement. *See Redzepagic v. Hammer*, 2017 WL 780809, at *10 (S.D.N.Y. Feb. 27, 2017).

Nor is FIFA entitled to invoke the release as a "U.S. Soccer Part[y]," or "person[ ] . . . acting in concert with [USSF]" under Article 3.a of the Settlement. *Contra* FIFA Mot. at 18. There is no basis for FIFA to argue that it qualifies as such a person merely because Relevent alleged that FIFA subsequently conspired with USSF to apply the geographic market division policy to Relevent. *See id.* The challenged FIFA policy had nothing to do with the sanctioning fee dispute resolved by the Settlement; and the policy itself was not even in existence until 2018, two years after the Settlement was signed. There is simply no showing that the parties intended for FIFA to be a third-party beneficiary of either the release or the covenant not to sue, as the sanctioning fee dispute resolved by the Settlement only involved the conduct of USSF, not FIFA. The mere fact that USSF is a member, or even an agent, of FIFA is not sufficient to make FIFA a third-party beneficiary of the Settlement, absent evidence that it was the intention of the parties—and specifically Relevent—to do so. *See Amusement Indus. v. Stern*, 2010 WL 2976199, at *8 (S.D.N.Y. July 26, 2010); *United Int'l*, 988 F. Supp. at 372 (even an ownership relationship by a third party, which does not exist between FIFA and USSF, would not be sufficient to confer third-party beneficiary status absent evidence of an intention by the parties to provide for such a benefit).

Moreover, if the Court were to find there is a fact issue concerning FIFA's claim that it is covered by the Settlement, it would require discovery and a full evidentiary hearing or trial to resolve this factual dispute. Any ambiguity concerning whether FIFA comes within the definition of a "US Soccer Part[y]" in the Settlement could only be determined after the consideration of parol evidence, discovery, and a factual hearing or trial. *See, e.g., Spinelli v. NFL*, 903 F.3d 185, 201 (2d Cir. 2018) (reversing district court's dismissal of claims because "discovery and trial"

were needed to consider extrinsic evidence before interpreting ambiguous contract language); *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26-28 (2d Cir. 1988) ("extrinsic evidence bearing on the intentions of the parties must be examined" to interpret ambiguous contractual terms). Simply put, FIFA cannot possibly meet its burden, at the pleading stage, to demonstrate that either the release or the covenant not to sue was intended to cover a third party, like FIFA, who had nothing to do with the sanctioning fee dispute resolved by the Settlement.

**B.    Even If FIFA Were Found To Be Covered, Relevent's Antitrust Claim Would Not Be Barred By The Settlement.**

As demonstrated in Relevent's Opposition to USSF's Motion (filed concurrently herewith, ECF No. 140), any debate about whether FIFA is entitled to invoke the 2016 release or covenant not to sue is academic, as Relevent's antitrust claims are not barred by those provisions for multiple reasons. To begin with, FIFA ignores that Relevent is challenging the 2018 FIFA market division policy, which did not exist at the time of the release and covenant not to sue in 2016. This is fatal to FIFA's argument because the terms of the release do not cover any claims based on future events, and the terms of the covenant not to sue cannot be enforced against future antitrust violations as a matter of public policy. *See* Opp'n to USSF Mot. at 9-11.[9]

Further, the terms of the covenant not to sue only apply to a claim "challenging . . . [USSF's] Jurisdiction over International Games." FIFA Mot. at 17. As demonstrated in Relevent's Opposition to USSF's Motion, the antitrust challenge here is not to USSF's jurisdiction. It instead challenges USSF's and FIFA's participation in the geographic market division policy. Opp'n to USSF Mot. at 9-10. Indeed, a covenant not to bring a claim challenging USSF's jurisdiction, by its terms, does not prohibit any claim against FIFA. The language of the covenant has no plausible application to Relevent's antirust claims against FIFA.

---

[9] Relevent refers the Court to its USSF opposition for a full discussion of these points. Opp'n to USSF Mot. at 6-12.

## IV.   THE FAC PLAUSIBLY ALLEGES THAT THE FIFA POLICY IS AN UNREASONABLE RESTRAINT OF TRADE NO MATTER WHAT STANDARD—PER SE, QUICK LOOK, OR FULL-BLOWN RULE OF REASON—IS APPLIED.

As demonstrated in Relevent's Opposition to USSF's Motion, the FAC alleges facts that plausibly support an agreement between USSF and the other National Associations, implemented by FIFA, to enforce a horizontal, geographic market allocation of men's top-tier official season soccer games amongst their member leagues and teams.  This is precisely the type of horizontal market division agreement that Section 1 of the Sherman Act prohibits.  *See* Opp'n to USSF Mot. at 12-13.  The Second Circuit has already found that the FAC's allegations challenging FIFA's horizontal market division policy provides "enough factual matter (taken as true) to suggest that an agreement was made."  *Relevent II*, 61 F.4th at 308 (quoting *Twombly*, 550 U.S. at 556); *see also* FAC ¶¶ 1, 4-5, 20, 92, 167.  For this reason, FIFA, like USSF, tries to evade liability for this market division agreement by arguing that it is not subject to either per se or quick look condemnation, and that the FAC does not plead sufficient facts to support a full-blown rule of reason claim.  FIFA Mot. at 19-25.  FIFA is wrong.

For the reasons discussed in Relevent's Opposition to USSF's Motion, the horizontal market division agreement alleged in the FAC is one of the categories of restraints the Supreme Court has held to be subject to per se condemnation.  *See* Opp'n to USSF Mot. at 13-16.  The fact that FIFA is a sports *organization* does not give it immunity from all per se rules, as the challenged policy is not the type of sports *league* rule that courts have found to be necessary for the league to operate at all.  *See id.* at 14-15.  Indeed, FIFA is not a sports league, it is a trade association of national federations and soccer leagues that compete economically with each other.  FAC ¶ 29.  There is thus no ground to exempt the challenged geographic market division agreement from per se condemnation.  *See* Opp'n to USSF Mot. at 14-15.

Further, even if less rigorous treatment were required because FIFA is a sports association, the geographic market division policy would, at minimum, be subject to summary condemnation under a quick look analysis.  It is well established that the quick look rule applies to horizontal restraints imposed by sports associations and leagues that, like the FIFA policy, restrain output and directly limit competition.  *See NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 109-10 (1984) (applying quick look analysis to condemn NCAA rules prohibiting its members from competing in the sale of broadcast rights to college football games); *Law v. NCAA*, 134 F.3d 1010, 1020 (10th Cir. 1998) (applying quick look analysis to sports business restraint); *Chicago Pro. Sports Ltd. P'ship v. NBA*, 95 F.3d 593, 600 (7th Cir. 1996) (same); Opp'n to USSF Mot. at 16.

Finally, even if the full rule of reason applied, the FAC would still state a Section 1 claim. While FIFA may disagree with the FAC's allegations of a relevant market,[10] anticompetitive effects, and lack of a procompetitive justification, such disagreements are factual disputes that cannot be resolved on a motion to dismiss.  *See* Opp'n to USSF Mot. at 17-21.  This is especially true here, where the Second Circuit has already found that Relevent has plausibly alleged a horizontal geographic market division (*Relevent II*, 61 F.4th at 310) and the DOJ has warned FIFA and USSF that such an agreement may be a Section 1 violation (DOJ Letter at 2).

## CONCLUSION

For all of the foregoing reasons, FIFA's second motion to dismiss should be denied.

---

[10] For instance, the alleged geographic market bears no resemblance to the gerrymandered market in *Concord Assocs., LP v. Ent. Props. Tr.*, 817 F.3d 46, 53 (2d Cir. 2016); *see* Opp'n to USSF Mot. at 18.  FIFA's points concerning the plausibility of Relevent's defined market are again based in factual disputes.  Relevent does not have to account for FIFA's failure to understand the differences between domestic and international travel, including increased costs, convenience, and language barriers.  *See* FIFA Mot. at 23 n.16.  FIFA's reliance on *Theatre Party* to argue that the alleged product market is too narrow does not fare any better. FIFA Mot. at 21.  There, the plaintiffs' monopolization claim alleged a relevant market that consisted of a single show.  *Theatre Party Assocs., Inc. v. Shubert Org., Inc.*, 695 F. Supp. 150, 154 (S.D.N.Y. 1988).

Dated:  February 7, 2024

Respectfully submitted,

**WINSTON & STRAWN LLP**

*/s/ Jeffrey L. Kessler*
Jeffrey L. Kessler
Jonathan J. Amoona
Angela A. Smedley
Adam I. Dale
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
jkessler@winston.com
jamoona@winston.com
asmedley@winston.com
aidale@winston.com

*Counsel for Relevent Sports, LLC*