UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RELEVENT SPORTS, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>FÉDÉRATION INTERNATIONALE DE FOOTBALL ASSOCIATION and UNITED STATES SOCCER FEDERATION, INC.,<br><br>      Defendants. | Civil Action No. 19-cv-8359 (VEC)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT UNITED STATES SOCCER FEDERATION, INC.'S REPLY IN SUPPORT OF ITS SECOND MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 2

    A. The Release And The Covenant Independently Bar Relevent's Claim ............................................................................................................... 2

        1. The Release Forecloses A Claim Based On The Theory Of Concerted Action Sustained By The Second Circuit ................................ 2

        2. The Covenant Not To Sue Bars Relevent's Claim .................................... 3

    B. Relevent Cannot Avoid A Full Rule Of Reason Analysis ..................................... 5

    C. Relevent Fails To Plead A Rule Of Reason Claim ................................................ 7

        1. Relevent Fails To Plead A Relevant Market .............................................. 7

        2. Relevent Fails To Plead Anticompetitive Effects ..................................... 8

    D. Relevent Lacks Antitrust Standing ......................................................................... 9

    E. Under The Second Circuit's Reasoning, Relevent's Challenge To The Alleged Policy's Enforcement Is Foreclosed By *Copperweld* ...................... 10

III. CONCLUSION .............................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*American Needle, Inc. v. NFL*,
  560 U.S. 183 (2010) ..................................................................................................7, 10

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005) ................................................................................................3

*Chicago Pro. Sports Ltd. P'ship v. NBA*,
  95 F.3d 593 (7th Cir. 1996) ..........................................................................................7, 10

*Concord Assocs., L.P. v. Ent. Props. Tr.*,
  817 F.3d 46 (2d Cir. 2016) ..................................................................................................8

*Full Draw Prods. v. Easton Sports, Inc.*,
  182 F.3d 745 (10th Cir. 1999) .............................................................................................6

*G.K.A. Beverage Corp. v. Honickman*,
  55 F.3d 762 (2d Cir. 1995) ..................................................................................................9

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*,
  711 F.3d 68 (2d Cir. 2013) ............................................................................................9, 10

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) .............................................................................................8

*In re Aluminum Warehousing Antitrust Litig.*,
  2015 WL 6472656 (S.D.N.Y. Oct. 23, 2015) ...................................................................10

*In re Aluminum Warehousing Antitrust Litig.*,
  833 F.3d 151 (2d Cir. 2016) ................................................................................................9

*In re Mylan N.V. Sec. Litig.*,
  2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) ....................................................................9

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*,
  713 F. Supp. 2d 286 (S.D.N.Y. 2010) .................................................................................6

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
  626 F.3d 1327 (11th Cir. 2010) ...........................................................................................9

*Madison Square Garden, L.P. v. NHL*,
  2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) .....................................................................5

*MLB Props., Inc. v. Salvino, Inc.*,
  542 F.3d 290 (2d Cir. 2008) ................................................................................................7

*NCAA v. Alston*,
  141 S. Ct. 2141 (2021) .........................................................................................................7

*NCAA v. Bd. of Regents of the Univ. of Okla.*,
  468 U.S. 85 (1984) ...............................................................................................................7

*New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*,
  352 F.3d 599 (2d Cir. 2003) ................................................................................................3

*O'Grady v. BlueCrest Cap. Mgmt. LLP*,
  646 F. App'x 2 (2d Cir. 2016) ...........................................................................................10

*Pub. Citizen, Inc. v. U.S. Dep't of Health and Hum. Servs.*,
  332 F.3d 654 (D.C. Cir. 2003) ............................................................................................4

*Relevent Sports, LLC v. United States Soccer Fed'n, Inc.*,
  61 F.4th 299 (2d Cir. 2023) ...............................................................................2, 3, 6, 10

*Rivers v. New York Jets*,
  460 F. Supp. 1233 (E.D. Mo. 1978) ...................................................................................5

*Sw. Sugar & Molasses Co. v. River Terminals Corp.*,
  360 U.S. 411 (1959) .............................................................................................................5

*United States v. Topco Assocs., Inc.*,
  405 U.S. 596 (1972) .............................................................................................................6

*US Airways, Inc. v. Sabre Holdings Corp.*,
  105 F. Supp. 3d 265 (S.D.N.Y. 2015) ................................................................................5

*VKK Corp. v. NFL*,
  244 F.3d 114 (2d Cir. 2001) ................................................................................................5

*Volvo N. Am. Corp. v. Men's Int'l. Pro. Tennis Council*,
  857 F.2d 55 (2d Cir. 1988) ..................................................................................................9

*Xerox Corp. v. Media Scis., Inc.*,
  609 F. Supp. 2d 319 (S.D.N.Y. 2009) ................................................................................4

**OTHER AUTHORITIES**

*Jurisdiction*, Merriam-Webster Online, https://www.merriam-
  webster.com/dictionary/jurisdiction ...................................................................................4

## I.  INTRODUCTION

Relevent continues to make it up as it goes along.  Its current theory bears no resemblance to the Amended Complaint's allegations or the Second Circuit's decision.  The contours of Relevent's claim appear to only exist in the minds of its counsel, and morph every time Defendants identify another legal flaw warranting dismissal.  U.S. Soccer should not be forced to shoot at a moving target, or play whack-a-mole with Relevent's ever-changing allegations.

Relevent essentially argues in its Opposition that because it prevailed on limited issues on appeal, it can skip past all other grounds for dismissal of its Sherman Act claim.  In taking this position, Relevent asks this Court to ignore the plain language and import of the Second Circuit's decision to the extent they are problematic for Relevent.  But Relevent does not get to pick and choose which aspects of its pleadings or the Second Circuit's decision must be followed.  Though the Second Circuit's concerted action ruling may have temporarily revived Relevent's case, the opinion underscores that Relevent's claim is legally infirm for other, non-related reasons.[1]

To start, the Second Circuit's decision establishes that Relevent in a 2016 settlement agreement with U.S. Soccer relinquished the very type of claim it now presses.  Relevent contends that because the settlement agreement's release and covenant not to sue were executed in 2016, they could not "apply to Relevent's antitrust challenge to the 2018 FIFA policy."  Opp'n at 7.  But in doing so, Relevent wrongly asks this Court to ignore the Second Circuit's explicit holding that "the adoption of the policy, *combined with the member leagues' prior agreement, by joining FIFA, to adhere to its policies*, constitutes an agreement on the part of all—whether they voted in favor

---

[1] As noted in U.S. Soccer's Second Motion to Dismiss the Amended Complaint, Docket No. 130 ("MTD") at 3, on August 4, 2023, U.S. Soccer petitioned the United States Supreme Court for a *writ of certiorari*.  On November 13, 2023, the Supreme Court issued an order inviting the Solicitor General to file a brief in the matter expressing the views of the United States.  U.S. Soccer anticipates the Supreme Court may determine whether it will hear the case by June.  Should the Supreme Court grant the *writ of certiorari*, a stay of this case would be appropriate as the Court's ultimate decision could end this case.  Accordingly, and in the interest of efficiency, U.S. Soccer respectfully requests that this Court refrain from ruling on its pending motion to dismiss until after the Supreme Court makes its *certiorari* decision.

of the policy or not—to adhere to the announced restriction on competition." *Relevent Sports, LLC v. United States Soccer Fed'n, Inc.*, 61 F.4th 299, 307 (2d Cir. 2023) (emphasis added). Relevent further fails to meaningfully engage with the unambiguous provisions of the release and covenant, or the indisputable factual circumstances that warrant their enforcement.

Relevent's Section 1 claim also fails on the merits. In trying to avoid the many deficiencies in its case, Relevent ended up pleading a relevant market and anticompetitive effects theory that are at odds with its overall claim. There is no basis in precedent for this Court to forgo full rule of reason analysis of Relevent's ever-shifting claim. Relevent also cannot rely on harm to its league and team business partners to show an antitrust injury; its attempt to do so confirms it is not an efficient enforcer of those injuries. And Relevent fails to explain how U.S. Soccer can purportedly simultaneously be FIFA's agent for purposes of personal jurisdiction when it allegedly enforces a policy but not be part of a single entity for purposes of a Section 1 claim. This Court should decline Relevent's invitation to accept the Second Circuit's decision only when it benefits Relevent and otherwise deem the opinion's language irrelevant.

**II.   ARGUMENT**

    **A.   <u>The Release And The Covenant Independently Bar Relevent's Claim</u>**

        1.   <u>The Release Forecloses A Claim Based On The Theory Of Concerted Action Sustained By The Second Circuit</u>

Relevent does not dispute that U.S. Soccer's agreement to join FIFA and adhere to its rules "relat[es] to or aris[es] out of [U.S. Soccer]'s authority to sanction International Games." Dkt. 34-6 at 4. Nor could it. Relevent pleads that U.S. Soccer "is vested with the exclusive authority to sanction" International Games *because* it is a FIFA-member National Association that has agreed to adhere to FIFA's rules, including FIFA Council policies and FIFA Statutes such as Article 73. Am. Compl. ¶ 54; *id.* at ¶ 33.

To avoid the release, Relevent contends that it exclusively targets conduct that "did not

2

begin *until 2018*." Opp'n at 7. That is incorrect. The Second Circuit's holding relied on the FIFA Council's "adoption of the policy" in 2018 *and* U.S. Soccer's "prior agreement, by joining FIFA, to adhere to its policies." *Relevent*, 61 F.4th at 307; Am. Compl. ¶ 33. The Second Circuit's decision is clear that U.S. Soccer's "prior agreement" to join FIFA is integral to Relevent's claim, and that agreement undisputedly predates the 2016 release. *See* Am. Compl. ¶ 31.

Relevent says it is "the law of the case that the challenged concerted action began in 2018" because the Second Circuit stated that the 2018 press release's promulgation constitutes "'direct evidence of an agreement.'" Opp'n at 8 (citation omitted). This argument is misguided. "The law of the case 'does not extend to issues an appellate court did not address.'" *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 606 (2d Cir. 2003). The key, and only, merits issue on appeal was whether Relevent plausibly pleaded an agreement—not whether "the challenged concerted action began" after the 2016 release. Opp'n at 8. Moreover, the Second Circuit explained that the "agreement on the part of all" underpinning Relevent's conspiracy theory depends on members' "prior agreement[s]" to join FIFA. *Relevent*, 61 F.4th at 307.

Relevent also argues that it challenges post-2016 conduct because Article 73 was "dormant." Opp'n at 7-8. But because Relevent relies on the "terms and effect" of the FIFA Statutes to establish concerted action, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005), Relevent is not free to disregard FIFA Statutes that undercut its claim, *see* Am. Compl. ¶ 34 (FIFA members must "comply fully with the Statutes . . . at any time"). This suit challenges U.S. Soccer's alleged adherence to Article 73's restrictions on the locations of International Games. Dkt. 34-2, Art. 73; Am. Compl. ¶ 117 ("emphasi[zing]" a "sporting principle"). Because Article 73 predates the 2016 release, Relevent's claim is barred for this additional reason.

2.  The Covenant Not To Sue Bars Relevent's Claim

Relevent also cannot sidestep the covenant not to sue. Relevent first argues that this action

3

does not "challeng[e]" U.S. Soccer's "jurisdiction over International Games." Opp'n at 9 (citation omitted). But again, the Amended Complaint says otherwise. Relevent seeks injunctive relief requiring U.S. Soccer to "cease withholding the sanctioning of official season games" and "to cease exercising [its] sanctioning authority to restrict the output of official season games." Am. Compl. ¶ 194. This requested relief would alter U.S. Soccer's "power or right to exercise authority" to sanction matches. *Jurisdiction*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/jurisdiction. This is not simply a challenge to a "misuse" of jurisdiction. Opp'n at 9. Rather, Relevent aims to deprive U.S. Soccer of authority to deny Relevent's applications to host official season games. This type of claim is barred by the covenant.

Relevent next contends that the covenant's language is "more limited" than the release's. Opp'n at 9-10. This argument fails. To be sure, the two provisions use "different language." *Id.* at 10. But Relevent does not define "'jurisdiction over,'" let alone cite authority suggesting that the term is "narrower" than "'authority to sanction.'" *Id.* at 10 (citation omitted). That is because, as noted, "jurisdiction" and "authority" are synonymous. Here, the "use of slightly different words" to describe U.S. Soccer's authority over International Games simply shows that the settlement agreement "employed a modestly varied vocabulary to express similar meanings." *Pub. Citizen, Inc. v. U.S. Dep't of Health and Hum. Servs.*, 332 F.3d 654, 665 (D.C. Cir. 2003). Both provisions bar Relevent's claim.

Turning from text to policy, Relevent argues that waivers of antitrust liability are disfavored. *See* Opp'n at 10-12. But that policy must be balanced with the competing policy "favor[ing] the settlement of disputes"—including antitrust claims. *Xerox Corp. v. Media Scis., Inc.*, 609 F. Supp. 2d 319, 326-27 (S.D.N.Y. 2009).

Relevent asserts that covenants can only bar antitrust claims if they are "expressly limited" by references to "antitrust claims," specified "limit[s] in duration," or exclusive application to

4

"past conduct." Opp'n at 11-12. This argument misunderstands the public policy inquiry. Rather than ask whether a covenant fits into a particular mold, courts must examine the "unique factual circumstances" surrounding a covenant. *US Airways, Inc. v. Sabre Holdings Corp.*, 105 F. Supp. 3d 265, 279 (S.D.N.Y. 2015); *Sw. Sugar & Molasses Co. v. River Terminals Corp.*, 360 U.S. 411, 421 (1959). Here, as in *US Airways*, the covenant does not bar claims against U.S. Soccer "for all conduct into eternity"; instead, it prospectively limits challenges related to three types of "conduct." 105 F. Supp. 3d at 279; *see also Rivers v. New York Jets*, 460 F. Supp. 1233, 1235-36 (E.D. Mo. 1978) (covenant barred antitrust claim regarding type of contract). The covenant was central to an agreement meant to facilitate future "International Games promoted by Relevent," Dkt. 34-6 at 4-5, and should be given its intended prospective effect.

Relevent also suggests that a covenant cannot bar an antitrust claim that "involv[es] future conduct." Opp'n at 11-12. But even if a covenant could not apply to *purely* post-settlement conduct, *Madison Square Garden, L.P. v. NHL*, 2008 WL 4547518, at *9 (S.D.N.Y. Oct. 10, 2008), a settling party can forgo claims against a defendant "for engaging in a conspiracy that is later alleged to have continued after" a settlement, *VKK Corp. v. NFL*, 244 F.3d 114, 126 (2d Cir. 2001). Indeed, the covenant in *Madison Square Garden* barred an antitrust claim targeting "continued adherence to a pre-release restraint" in the form of "enforcement of pre-existing policies" and an "extension" of an agreement. 2008 WL 4547518, at *6, *8 (emphasis omitted). Here, the covenant bars Relevent's claim challenging U.S. Soccer's enforcement of Article 73 and that pre-existing rule's application in 2018. *See id.*; MTD at 5-6.

      **B.**    <u>**Relevent Cannot Avoid A Full Rule Of Reason Analysis**</u>

Relevent contends that its Section 1 claim must be analyzed as a *per se* claim or under the abbreviated "quick look" rule of reason. Opp'n at 12-17. Neither standard applies here.

Relevent's assertion that the Amended Complaint states a *per se* claim is meritless. This

Court need not credit conclusory allegations regarding a "market division agreement" that is unlawful "*per se*." Am. Compl. ¶ 169; *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 713 F. Supp. 2d 286, 299 (S.D.N.Y. 2010).  Relevent also argues that the Second Circuit has "already recognized" that the *per se* rule applies.  Opp'n at 14.  But again, Relevent disregards the Second Circuit's decision when its language operates to Relevent's detriment.  In fact, the opinion "express[ed] no view" on whether the alleged agreement was "'unlawful,'" much less how that question should be analyzed.  *Relevent*, 61 F.4th at 306 n.5 (citation omitted).

The Amended Complaint's own allegations also conflict with Relevent's *per se* theory. *First*, Relevent asserts that it is only "pursuing" a horizontal theory, not a "vertical" theory. Opp'n at 2, 13-15.  But the rule of reason still applies because Relevent does not—and cannot—allege that U.S. Soccer and FIFA are "competitors at the same level of the market structure." *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972); Am. Compl. ¶¶ 24-34; MTD at 10.[2]

*Second*, Relevent argues the *per se* rule applies to "restraints unconnected to any procompetitive sports league objective." Opp'n at 14-15.  This argument is meritless.  Requiring the playing of official season games in a league's home country ensures that teams play with home-field advantage in front of their local fans.  Relevent cannot plead a *per se* claim by ignoring this common-sense effect on competition.  Relevent's inapposite *per se* cases underscore the point. Relevent's string-cite, Opp'n at 15, begins with a case involving sporting goods sellers, not a sports league, *Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 748 (10th Cir. 1999), and ends with a series of non-binding decisions that predate the Supreme Court's instruction that the rule of

---

[2] In its "Claims For Relief," Relevent asserts that the only reason why foreign league regular season matches did not go forward in the U.S. was "because the horizontal geographic market division agreement enforced by USSF and FIFA has blocked it." Am. Compl. ¶ 167.  But the next paragraph makes clear that the alleged vertical agreement between U.S. Soccer and FIFA imposed the market division on leagues and teams. *Id.* at ¶ 168.  By abandoning its vertical theory, Relevent specifically withdrew its claim that U.S. Soccer "act[ed] as the vertical facilitator[] and enforcer[] of the market division agreement that is then imposed upon the foreign leagues and their teams." *Id.*

reason applies to "league sports" because they "can only be carried out jointly," *NCAA v. Bd. of Regents of the Univ. of Okla.*, 468 U.S. 85, 101 (1984) (citation omitted).

Relevent argues that *American Needle, Inc. v. NFL*, 560 U.S. 183 (2010), and a consistent line of precedent analyze alleged restraints involving league sports under the rule of reason because those cases concerned "internal sports league rule[s]." Opp'n at 15. Relevent's "internal sports league rule" exception is a distinction invented by Relevent's counsel, not the Supreme Court or the Second Circuit. In any event, the alleged policy would affect a league's "operations" and competitive balance by requiring that official season home games occur at home. *Id.* This purported policy may "[r]egulat[e] league sports" in each of FIFA's member countries, but would still be a "textbook example of when the rule of reason applies." MTD at 10-11 (citation omitted).

For similar reasons, "quick look" review is inappropriate. This standard applies to restraints that are "obviously incapable of harming competition" or that "obviously threaten to reduce output and raise prices." *NCAA v. Alston*, 141 S. Ct. 2141, 2155-56 (2021). Neither exists here: Relevent asserts that the alleged policy restricts output, but it also has facially plausible procompetitive effects for teams and their fans. Quick-look review is therefore unwarranted.[3]

### C.   Relevent Fails To Plead A Rule Of Reason Claim

The Amended Complaint's failure to allege a relevant market and anticompetitive effects is fatal to Relevent's rule of reason claim. In arguing otherwise, Relevent leans heavily on this case's procedural posture. Opp'n at 17. But the Rule 12(b)(6) standard cannot save complaints—such as this one—that fail to allege a cognizable relevant market or anticompetitive effects.

#### 1.   Relevent Fails To Plead A Relevant Market

U.S. Soccer's opening brief explained that either a local geographic market for the product

---

[3] Indeed, Relevent's own cases undercut its argument by rejecting "quick look" treatment for sports-league restrictions that lack an "intuitively obvious" anticompetitive effect. *MLB Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 331 (2d Cir. 2008); *Chicago Pro. Sports Ltd. P'ship v. NBA*, 95 F.3d 593, 601 (7th Cir. 1996).

of match tickets or a global geographic market for the product of match broadcasts might be rational, but Relevent's alleged national market for the product of match tickets is irrationally and implausibly mismatched. MTD at 12-13. Relevent calls this argument a "contradiction" and claims it merely shows a factual dispute about the plausibility of Relevent's geographic market. Opp'n at 18. Relevent is wrong. That Relevent could have pleaded two different, more defensible geographic market definitions does not shield the implausible third option it chose from pleading-stage scrutiny. And none of Relevent's allegations reconciles this mismatch. Whether U.S. Soccer has nationwide governance responsibilities and match-sanctioning authority, *id.*, is irrelevant to the question of where "effective competition" for "the relevant product" happens. *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 52-53 (2d Cir. 2016) (citations omitted). That competition either occurs locally or globally, not nationwide.

As to its product market, Relevent argues that no other matches have the same "high stakes" and "incentive to play teams' top players" as "official season top-tier men's professional soccer league games." Opp'n 19; Am. Compl. ¶¶ 94-96. But asserting that a product "is in some way unique is insufficient." *Concord*, 817 F.3d at 54 (citation omitted). National Team games, tournament games in the Champion's League, or games in Relevent's own tournament display the same characteristics Relevent says are unique to official season games. *See* MTD at 13-14. Indeed, Relevent alleges its exhibition games and matches were more popular than official season games in the United States. Am. Compl. ¶¶ 17-18. Relevent cannot rely on conclusory assertions about the "preferences of sports fans," Opp'n at 19, to gerrymander a product market "to meet their litigation needs." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018).

2.  <u>Relevent Fails To Plead Anticompetitive Effects</u>

Relevent fails to properly plead anticompetitive effects. Relevent again contends that this element is too "fact-bound" to analyze at this stage. Opp'n at 20-21. But a plaintiff cannot satisfy

8

this requirement with conclusory assertions of an adverse effect on competition. *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1340 (11th Cir. 2010); *In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *15 (S.D.N.Y. Mar. 28, 2018). Conclusory allegations of "reduced output" and reduced "quality" are all that Relevent offers. Am. Compl. ¶¶ 98, 171. Those assertions are implausible. After all, the matches at issue went forward—just not in the United States and without Relevent profiting from them. That is not an adverse effect on *competition*. MTD at 15.

### D. Relevent Lacks Antitrust Standing

Relevent argues it has suffered an antitrust injury "by being deprived of the opportunity to promote official season soccer games in the U.S." Opp'n at 21. But Relevent's "business relationship" with the leagues and teams interested in playing official season games abroad does not allow Relevent to assert their injuries as its own. *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 766-67 (2d Cir. 1995); *see* Am. Compl. ¶¶ 19, 88, 123.[4] Because Relevent is not "a participant in the very market that is directly restrained," it lacks an antitrust injury. *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 161 (2d Cir. 2016).

Relevent also contends that it is an efficient enforcer of the antitrust laws because its "business" is to promote soccer games. Opp'n at 22-23. But the fact that Relevent's business has been "incidentally harmed" by the alleged policy does not make it an efficient enforcer. *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 78-79 (2d Cir. 2013). The primary asserted harm is to competition between top-tier men's soccer leagues and teams, who are "other potential plaintiffs" who could challenge the purported policy. *Id.* at 79; Am. Compl. ¶ 86. The indirectness of Relevent's injury and the presence of other obvious potential plaintiffs belie Relevent's

---

[4] *Volvo N. Am. Corp. v. Men's Int'l. Pro. Tennis Council*, 857 F.2d 55 (2d Cir. 1988) is not to the contrary. The *Volvo* plaintiffs pleaded a "submarket for the production of men's professional tennis events." *Id.* at 60. Relevent merely asserts that leagues and teams "work[] in combination with promoters." Am. Compl. ¶ 88.

9

argument that it is an efficient enforcer of the antitrust laws. *See id.* at 78-79.

### E. Under The Second Circuit's Reasoning, Relevent's Challenge To The Alleged Policy's Enforcement Is Foreclosed By *Copperweld*

Relevent embraces the Second Circuit's agency ruling for purposes of personal jurisdiction but claims it is irrelevant to concerted action. Relevent cannot have it both ways.

The Second Circuit held that the "promulgation" of the 2018 press release constituted concerted action by FIFA and U.S. Soccer. *Relevent*, 61 F.4th at 310. But that does not bear on whether U.S. Soccer engaged in concerted action by "enforc[ing]" the policy—the supposed source of Relevent's injury. Opp'n at 3-4. If U.S. Soccer acted "on behalf of FIFA" as its "agent" by "'refus[ing] to sanction the official season games sought to be promoted by Relevent,'" *Relevent*, 61 F.4th at 305; Am. Compl. ¶¶ 54, 84, that is not concerted action. Rather, when an agent acts as "a conduit" for a principal's policy, the agent and the principal are a single entity. *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 6472656, at *15 (S.D.N.Y. Oct. 23, 2015).

Relevent also relies on allegations that FIFA, National Associations, leagues, and teams are separate economic actors. Opp'n at 24-25. But under the single-entity inquiry, whether a sports organization's members are acting as a single entity differs from activity to activity. *See Chicago Pro. Sports*, 95 F.3d at 600; *American Needle*, 560 U.S. at 201. The Second Circuit's statements on agency cannot be squared with Relevent's argument that U.S. Soccer engaged in concerted action by enforcing the alleged policy.[5]

### III. CONCLUSION

The Court should dismiss Relevent's Amended Complaint in its entirety, with prejudice.

---

[5] Relevent also argues that because FIFA and U.S. Soccer "dispute[]" that U.S. Soccer is FIFA's agent, U.S. Soccer cannot raise a single-entity argument. Opp'n at 23-24 & n.14 (citation omitted). But a defendant's "dispute of" an underlying "fact" does not prevent it from obtaining dismissal based on the Amended Complaint's allegations. *O'Grady v. BlueCrest Cap. Mgmt. LLP*, 646 F. App'x 2, 6 n.4 (2d Cir. 2016) (citation omitted).

Dated: February 28, 2024
       New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

/s/ *Lawrence E. Buterman*
Lawrence E. Buterman
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
lawrence.buterman@lw.com

Christopher S. Yates (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600
Fax: (415) 395-8095
chris.yates@lw.com

*Attorneys for Defendant United States Soccer Federation, Inc.*